D. EDWARD HAYS, #162507
ehays@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
CHAD V. HAES, # 267221
chaes@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Proposed Attorneys for Debtor and Debtor-in-Possession, BRIGHAM G. FIELD

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>BRIGHAM G. FIELD,<br><br><br><br>Debtor. | Case No. 9:20-bk-10622-DS<br><br>Chapter 11<br><br>DEBTOR AND DEBTOR-IN-POSSESION'S INITIAL CHAPTER 11 STATUS REPORT; DECLARATION OF BRIGHAM G. FIELD IN SUPPORT<br><br><u>Hearing:</u><br>Date:     June 23, 2020<br>Time:     11:30 a.m.<br>Ctrm:     201<br>Address:  1415 State Street<br>              Santa Barbara, CA 93101 |

TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY COURT

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

PARTIES:

Debtor and Debtor-in-Possession, BRIGHAM G. FIELD ("Debtor"), files this initial Chapter

11 status report to inform the Court and all parties-in-interest regarding the background of why the

petition was filed and the Debtor's strategy to reorganize his financial affairs ("Status Report"). In

support of the factual background, the declaration of Mr. Field is also attached ("Field Declaration").

/ / /

/ / /

4818-4456-3900, v. 1

## 1.    Summary of Argument

The purpose of Chapter 11 is to allow a debtor to reorganize his financial affairs which may include the liquidation of property to pay creditors. In this case, Debtor is an owner of a custom home located in Malibu on a bluff overlooking the ocean. The home was purchased in 2013 for $16 million. Secured claims currently total approximately $12 million. If sold at market value, Debtor believes there is a strong possibility that all secured and unsecured creditors will be paid in full. The bankruptcy was filed to avoid the irreparable harm that would occur from a scheduled foreclosure sale and to realize this equity for the benefit of creditors. Debtor intends to immediately seek court approval to retain a broker and actively market the property for sale.

## 2.    Background

Debtor and his non-debtor spouse, Colette Pelissier ("Ms. Pelissier"), purchased the property located at 11802 Ellice Street, Malibu, California ("Property") in 2013 for $16 million. Field Decl., ¶ 9. Currently, there are three liens against the Property: (1) first deed of trust in the approximate amount of between $7-9 million in favor of Banc of California[1]; (2) a second deed of trust in the original amount $2.5 million in favor of Genova Capital Inc. ("Genova"); and a $500,000 abstract of judgment recorded against the Property ("Abstract"). A true and correct copy of a preliminary title report ("PTR") as of April 3, 2020, is attached to the Field Declaration as Exhibit "1."

Debtor and Ms. Pelissier have a long and contentious history with Genova (the foreclosing lender) including, but not limited to, various loans that are cross-collateralized with the Debtor's and Ms. Pelissier's business operations. Field Decl., ¶ 11. Ms. Pelissier's business operations include the production and distribution of adult entertainment through Malibu Holdings LLC. Field Decl., ¶ 12. Debtor has not owned or held any interest in Malibu Holdings LLC or its affiliates since March 2016. ¶ 13.

/ / /

/ / /

_____

[1] A formal request for the actual dollar amount has been submitted to the servicer Dovenmuehle Mortgage.

4818-4456-3900, v. 1

1    In November 2019, the Superior Court for the State of California, County of Ventura ("State

2  Court") issued a decision overturning a previous foreclosure of the Property by Geneova. This

3  decision reinstated Debtor's and Ms. Pelissier's right of possession and liquidated Genova's claim

4  secured by the lien that had been foreclosed at $160,000 ("November 2019 State Court Decision").

5  A true and correct copy of the November 2019 State Court Decision is attached to the Field

6  Declaration as Exhibit "2."

7    In its decision, the State Court found that the value of the Property was between $15-$18

8  million subject to liens totaling approximately $12 million. *Id.*, pg. 37. As such, given the

9  communications that were taking place with Genova on the eve of the foreclosure, the State Court

10  found that the $160,000:

11       . . . purchase price of the subject property was grossly inadequate, upholding the foreclosure
         sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a
12       procedural irregularity within the meaning of the [cited case law].
         . . .
13       The court finds that the purchase price at the non-judicial foreclosure sale of the subject
         property was grossly inadequate and that an injustice would result to enforce said sale and
14       evict the Defendants.

15  *Id.*, pg. 37.

16    The State Court granted possession to Debtor and his non-debtor spouse conditioned upon

17  payment in full of the underlying note obligations. *Id.*, pg. 38. The underlying note obligation was in

18  fact paid to Genova, and possession and title was reverted back to the Debtor and his non-debtor

19  spouse. Field Decl., ¶15. A true and correct copy of the cashier's check evidencing payment of the

20  underlying obligation to Genova is attached as Exhibit "3" to the Field Declaration.

21    Separately, defaults occurred on Genova's note secured by the second-in-priority deed of

22  trust. As a result, it commenced new foreclosure proceedings. In April 2019, Genova published a

23  notice of trustee's sale for May 13, 2020, at 11:00 a.m. ("Sale Notice"). A true and correct copy of

24  the Sale Notice is attached to the Field Declaration as Exhibit "4."[2] Rather than let the millions of

25

26

27

28  [2] When Debtor and his counsel of record Marshack Hays LLP began notifying Genova and the foreclosure
    trustee of the bankruptcy filing, Debtor was informed that Genova had changed its name to Vintage Capital
    and required Debtor and Marshack Hays LLP to contact Vintage Capital not Genova. Field Decl., ¶ 19.

4818-4456-3900, v. 1

1  dollars of equity be lost to foreclosure, the Debtor filed this Chapter 11 case on May 12, 2020, to

2  conduct an orderly sale of the Property for the benefit of funding payments to creditors.

3  **3.      Debtor's Chapter 11 and the Bankruptcy Purpose**

4           This is a relatively straight-forward Chapter 11 case. Debtor will be retaining a third-party

5  broker, Mr. Sandro Dazzan ("Mr. Dazzan") of Agency Real Estate to market and sell the Property.

6  Field Decl., ¶ 20. A true and copy of Mr. Dazzan's resume is attached as Exhibit "5" to the Field

7  Declaration. Mr. Dazzan specializes in high-end real estate in Malibu. *Id.*, pg. 48.  Mr. Dazzan's

8  employment application will be promptly filed with the Court. Field Decl., ¶21. Debtor will also be

9  retaining Grobstein Teeple LLP ("GT") to assist in the preparation of the Estate's monthly operating

10 reports, tax returns, and to assist in the capital gains analysis. Field Decl., ¶22.

11          Debtor also intends to immediately file a motion to establish a claims bar date. Field Decl.,

12 ¶ 23. While Debtor believes that it is likely that all creditors will be paid in full through the equity in

13 the Property, such determination cannot be made until all claims are filed against the Estate and the

14 value of the Property is established through marketing efforts. Field Decl., ¶24.

15          In compliance with the Court's Order Setting Hearing on Status of Chapter 11 Case ("Order')

16 filed on May 8, 2020, as Dk. No. 5, Debtor will file a Status Report in compliance with the

17 requirements of said Order prior to the June 23, 2020 Status Hearing. However, in an abundance of

18 caution, the Debtor files this initial Chapter 11 status report to inform the Court and all parties-in-

19 interest regarding the background of why the petition was filed and the Debtor's strategy to

20 reorganize his financial affairs.

21 / / /

22 / / /

23

24

25

26

27

28

4818-4456-3900, v. 1

**4.      Conclusion**

Mr. Field understands that he is a fiduciary for the estate and his duties include administering assets to fund payments to creditors. He is represented by experienced bankruptcy professionals. In fact, his counsel (Marshack Hays LLP) and accountants (Grobstein Teeple) are firms whose practice focus on insolvency law and whose partners include bankruptcy trustees. Debtor looks forward to successfully reorganizing under this Court's supervision.

Dated:  May 18, 2020                              MARSHACK HAYS LLP

                                                                    /s/ D. Edward Hays
                                                    By:_____
                                                              D. EDWARD HAYS
                                                              DAVID A. WOOD
                                                              CHAD V. HAES
                                                              Proposed Attorneys for Debtor-in-Possession,
                                                              BRIGHAM G. FIELD

4818-4456-3900, v. 1

# Declaration of Brigham G. Field

I, BRIGHAM G. FIELD, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am the Debtor in the above-captioned case.

5.      I make this Declaration in support of my initial Chapter 11 status report.

6.      This Chapter 11 was filed for a single purpose, to capture the millions of dollars in equity in real property located at 11802 Ellice, Malibu, California ("Property") prior to a scheduled foreclosure sale on May 13, 2020.

7.      I believe that the Property is worth between $14 and $20 million.

8.      I want to sell the Property, and use the excess proceeds to make a significant distribution (if not paid in full) to all my creditors.

9.      My wife and I purchased the Property in 2013 for approximately $16 million.

10.     I am informed and believe that there are only three (3) liens on the Property: (1) first deed of trust in the approximate amount of $7-$9 million in favor of Banc of California; (2) a second deed of trust in the original amount $2.5 million in favor of Genova Capital Inc. ("Genova"); and a $500,000 abstract of judgment recorded against the Property ("Abstract"). A true and correct copy of a preliminary title report ("PTR") as of April 3, 2020, is attached to the here as Exhibit "1."

11.     Admittedly, my family and Genova have a long and contentious history, including, but not limited to various loans cross collateralized with my wife's business operations.

12.     My wife's business operations include the production and distribution of adult entertainment, via and entity named Malibu Holdings LLC.

13.     I do not own or have any interest in Malibu Holdings LLC or its affiliates since March 2016.

4818-4456-3900, v. 1

14.     A true and correct copy of the November 2019 State Court Decision is attached to the here as Exhibit "2."

15.     The underlying note obligation was paid to Genova in December 2019, and possession and title was reverted back to my wife and myself.

16.     A true and correct copy of the cashier's check evidencing payment of the underlying obligation to Genova is attached here as Exhibit "3."

17.     I am informed and believe that while the title documents have been prepared and submitted to the Ventura County Recorder's Office, due to the COVID-19 pandemic, the underlying title document has not been recorded yet.

18.     In April 2019, Genova then issued a notice of trustee's sale on behalf of the $2.5 million second deed of trust, and noticed a trustee's sale for May 13, 2020, at 11:00 a.m. ("Sale Notice"). A true and correct copy of the Sale Notice is attached to the Field Declaration as Exhibit "4."

19.     Tellingly, when my counsel and I began notifying Genova and the foreclosure trustee regarding the Petition filing, we were informed that Genova had changed its name to Vintage Capital, and required myself and my counsel to contact Vintage Capital not Genova.

20.     I will be retaining a third-party broker, Mr. Dazzan of the Agency Real Estate to market and sell the Property. A true and copy of Mr. Dazzan's resume is attached as Exhibit "5" to the Field Declaration.

21.     Mr. Dazzan's employment application will be filed with this Court in the immediate future

22.     I will also be retaining Grobstein Teeple LLP ("GT") to assist in the preparation of the Estate's monthly operating reports, the Estate tax returns, and to assist in the capital gains analysis when the sale price of the Property is determined.

23.     Contemporaneously with the filing of the employment applications of Mr. Dazzan and GT, my counsel will file with this Court a motion to set a claims bar date.

/ / /

/ / /

CHAPTER 11 STATUS REPORT

4818-4456-3900, v. 1

1   24.    While I believe that it is likely that all creditors will be paid in full through the

2   equity in the Property, such determination cannot be made until all claims are filed against the

3   Estate.

4       I declare under penalty of perjury that the foregoing is true and correct. Executed on May

5   _18_ , 2020 at HENDERSON, NEVADA .

6

7                                                BRIGHAM G. FIELD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHAPTER 11 STATUS REPORT

4818-4456-3900, v. 1

**EXHIBIT 1**

**CLTA Preliminary Report Form**                                    Order Number:  O-SA-6230236
(Rev. 11/06)                                                        Page Number:  1



# First American Title Company

**4 First American Way**
**Santa Ana, CA 92707**
California Department of Insurance License No. 151

Order Number:                        O-SA-6230236 (DTJS)

Title Officer:                       Debbie Tognetti/ Joel Sotto
Phone:                               (714)250-8579
Fax No.:                             (714)481-2956
E-Mail:                              FAHQ-RA-OCTitle3@firstam.com
Owner:                               Genova Cap Inc
Property:                            11802 Ellice Street
                                     Malibu, CA 90265

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

EXHIBIT 1, PAGE 9

Dated as of April 03, 2020 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

    Genova Capital, Inc., a California Corporation

The estate or interest in the land hereinafter described or referred to covered by this Report is:

    A FEE AS TO PARCEL(S) 1, AN EASEMENT AS TO PARCEL(S) 2

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.    General and special taxes and assessments for the fiscal year 2020-2021, a lien not yet due or payable.

2.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

3.    Any easements or servitudes appearing in the public records.
      Affects:        Common Area.

4.    Any and all offers of dedications, conditions, restrictions, easements, notes and/or provisions shown or disclosed by the filed or recorded map referred to in the legal description including but not limited to: PUBLIC UTILITIES and incidental purposes affecting said land.

5.     Abutter's rights of ingress and egress to or from PACIFIC COAST HIGHWAY, have been dedicated or relinquished on the filed Map.

EXHIBIT 1, PAGE 10

Order Number: **O-SA-6230236**
Page Number:  3

6.     An easement for public utilities and incidental purposes in the document recorded November 27, 1940 as Book 628, Page 87 of Official Records.

7.     A waiver of any claims for damages by reason of the location, construction, landscaping or maintenance of a contiguous freeway, highway or roadway, as contained in the document recorded June 17, 1952 as Book 1072, Page 57 of Official Records.

8.     An offer of dedication for wastewater disposal systems and appurtenances thereto, including, but not limited to ingress and egress and incidental purposes, recorded August 29, 2000 as Instrument No. 2000-138435 of Official Records.
       To:               County of Ventura

       The location of the easement cannot be determined from record information.

9.     Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded February 14, 2011 as Instrument No. 2011-24632 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

       Document(s) declaring modifications thereof recorded October 24, 2013 as Instrument No. 2013-00177041 of Official Records.

       A declaration of annexation recorded October 24, 2013 as Instrument No. 2013-00177041 of Official Records but deleting any covenant, condition, or restriction, if any, indicating a preference, limitation, or discrimination based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, handicap, veteran or military status, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, to the extent that such covenants, conditions or restrictions violate applicable state or federal laws. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

10.    The terms and provisions contained in the document entitled "Notice of Election of Alternative Pre-Litigation Procedures for Construction Claims Pursuant to California Civil Code Section 895 ET Seq" recorded May 10, 2011 as Instrument No. 2011-00071876 of Official Records.

11.    An easement for landscape and incidental purposes in the document recorded October 15, 2012 as Instrument No. 2012-183146 of Official Records.

EXHIBIT 1, PAGE 11

Order Number: **O-SA-6230236**
Page Number:  4

12. A deed of trust to secure an original indebtedness of $11,500,000.00 recorded JUNE 12, 2013 as INSTRUMENT NO. 13-106071 OF OFFICIAL RECORDS.

| | |
|---|---|
| Dated: | JUNE 03, 2013 |
| Trustor: | BRIGHAM FIELD AND COLETTE PELISSIER, AKA COLETTE PELISSIER FIELD, HUSBAND AND WIFE, AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP |
| Trustee: | CHICAGO TITLE COMPANY, A CALIFORNIA CORPORATION |
| Beneficiary: | CROWN POINTE ESTATES AT MALIBU, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY |

a. If this deed of trust is to be eliminated in the policy or policies contemplated by this report/commitment, the company will require the following for review prior to the recordation of any documents or the issuance of any policy of title insurance:
  i. Original note and deed of trust.
  ii. Payoff demand statement signed by all present beneficiaries.
  iii. Request for reconveyance or substitution of trustee and full reconveyance must be signed by all present beneficiaries and must be notarized by a First American approved notary.

b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will also require a full copy of the loan servicing agreement executed by all present beneficiaries.

c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will require a certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the Company.

A document recorded SEPTEMBER 26, 2013 as INSTRUMENT NO. 13-163981 of Official Records provides that the deed of trust or the obligation secured thereby has been modified.

According to the public records, the beneficial interest under the deed of trust was assigned to FIRST-CITIZENS BANK & TRUST COMPANY, A NORTH CAROLINA COMMERCIAL BANK by assignment recorded SEPTEMBER 26, 2013 as INSTRUMENT NO. 13-163983 of Official Records.

The effect of a document entitled "RELEASE AND REASSIGNMENT OF COLLATERAL ASSIGNMENT OF DEED OF TRUST AND RELATED LOAN DOCUMENTS", recorded NOVEMBER 25, 2013 as INSTRUMENT NO. 13-191132 of Official Records.

13. A deed of trust to secure an original indebtedness of $9,000,000.00 recorded MARCH 26, 2014 as INSTRUMENT NO. 14-38119 OF OFFICIAL RECORDS.

| | |
|---|---|
| Dated: | MARCH 19, 2014 |
| Trustor: | BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE, AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP |
| Trustee: | FIDELITY NATIONAL TITLE |
| Beneficiary: | BANC OF CALIFORNIA, NATIONAL ASSOCIATION |

A document recorded JANUARY 22, 2020 as INSTRUMENT NO. 20-9175 of Official Records provides that THE WOLF FIRM, A LAW CORPORATION was substituted as trustee under the deed of trust.

A notice of default recorded JANUARY 22, 2020 as INSTRUMENT NO. 20-9176 of Official Records.

EXHIBIT 1, PAGE 12

14.    A deed of trust to secure an original indebtedness of $2,500,000.00 recorded DECEMBER 01, 2016 as
INSTRUMENT NO. 16-178192 OF OFFICIAL RECORDS.

| | |
|---|---|
| Dated: | NOVEMBER 23, 2016 |
| Trustor: | BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS |
| Trustee: | COMMONWEALTH LAND TITLE COMPANY |
| Beneficiary: | GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION |

a.    If this deed of trust is to be eliminated in the policy or policies contemplated by this
report/commitment, the company will require the following for review prior to the recordation of any
documents or the issuance of any policy of title insurance:

   i.    Original note and deed of trust.
   ii.    Payoff demand statement signed by all present beneficiaries.
   iii.    Request for reconveyance or substitution of trustee and full reconveyance must be
signed by all present beneficiaries and must be notarized by a First American approved
notary.

b.    If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will
also require a full copy of the loan servicing agreement executed by all present beneficiaries.

c.    If any of the beneficial interest is presently held by trustees under a trust agreement, we will require
a certification pursuant to Section 18100.5 of the California Probate Code in a form satisfactory to the
Company.

According to the public records, the beneficial interest of 52% INTEREST under the deed of trust was
assigned to ROBERT LEEHMAN DEFINED BENEFIT PENSION PLAN AND TRUST by assignment
recorded JULY 21, 2017 as INSTRUMENT NO. 17-93974 of Official Records.

According to the public records, the beneficial interest of 40% INTEREST under the deed of trust was
assigned to DARICE, LLC by assignment recorded JULY 21, 2017 as INSTRUMENT NO. 17-93975 of
Official Records.

A document recorded CALIFORNIA TD SPECIALISTS as JANUARY 13, 2020 of Official Records
provides that INSTRUMENT NO. 20-4062 was substituted as trustee under the deed of trust.

A notice of default recorded JANUARY 13, 2020 as INSTRUMENT NO. 20-4063 of Official Records.

15.     Notice of pendency of action recorded MARCH 08, 2018 as INSTRUMENT NO. 18-27474 of Official
Records.

| | |
|---|---|
| Court: | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, SANTA MONICA COURTHOUSE |
| Case No.: | SC128336 |
| Plaintiff: | HELENA DEEDS, AN INDIVIDUAL |
| Defendant: | COLETTE PELISSIER AKA COLETTE PELISSIER FIELD, AN INDIVIDUAL; AND BRIGHAM FIELD, AN INDIVIDUAL; MALIBU MEDIA, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; CLICK HERE LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; COLETTE HOLDINGS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; COLETTE PROPERTIES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; COLETTE PRODUCTION, INC.; AND DOES 5 THROUGH 25, INCLUSIVE |
| Purpose: | AFFECTS TITLE TO REAL PROPERTY |

EXHIBIT 1, PAGE 13

16.    Any irregularity in the foreclosure proceedings leading up to the Trustee's Deed recorded AUGUST 16, 2019 as INSTRUMENT NO. 19-94754 of Official Records.

17.    Rights of parties in possession and rights of tenant(s) in the Land, including rights of all parties claiming by, through or under said tenant(s).

We will require an approved declaration signed by the seller/seller's authorized agent and the buyer prior to close of this transaction.

18.    Notice of pendency of action recorded AUGUST 28, 2019 as INSTRUMENT NO. 19-99891 of Official Records.

| | |
|---|---|
| Court: | SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF VENTURA, HALL OF JUSTICE |
| Case No.: | 56-2019-00532393-CU-OR-VTA |
| Plaintiff: | BRIGHAM FIELD, COLETTE PELISSIER |
| Defendant: | GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO AND DOES 1 THROUGH 20, INCLUSIVE |
| Purpose: | AFFECTS TITLE TO REAL PROPERTY |

19.    Any easements and/or servitudes affecting easement parcel(s) 2 herein described.

20.    The new lender, **if any**, for this transaction may be a Non-Institutional Lender. If so, the Company will require the Deed of Trust to be signed before a First American approved notary.

**Prior to the issuance of any policy of title insurance, the Company will require:**

21.    With respect to GENOVA CAPITAL, INC., a corporation:
a. A certificate of good standing of recent date issued by the Secretary of State of the corporation's state of domicile.
b. A certified copy of a resolution of the Board of Directors authorizing the contemplated transaction and designating which corporate officers shall have the power to execute on behalf of the corporation.
c. Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

EXHIBIT 1, PAGE 14

Order Number: **O-SA-6230236**
Page Number: 7

---

## INFORMATIONAL NOTES

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.    General and special taxes and assessments for the fiscal year 2019-2020.

| | |
|---|---|
| First Installment: | $89,833.78, PAID |
| Penalty: | $0.00 |
| Second Installment: | $89,833.78, PAID |
| Penalty: | $0.00 |
| Tax Rate Area: | 71037 |
| A. P. No.: | 700-0-260-065 |

2.    This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence lying within a Planned Unit Development known as 11802 Ellice Street, Malibu, CA.

3.    According to the public records, there has been no conveyance of the land within a period of twenty four months prior to the date of this report, except as follows:

Trustee's Deed from CALIFORNIA TD SPECIALISTS as Trustee to GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION recorded AUGUST 16, 2019 as INSTRUMENT NO. 19-94754 of Official Records. Amount of the unpaid debt together with costs was $160,076.39

NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

EXHIBIT 1, PAGE 15

Order Number:  **O-SA-6230236**
Page Number:  8

## LEGAL DESCRIPTION

Real property in the unincorporated area of the County of Ventura, State of California, described as follows:

PARCEL 1:

LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146, PAGE 19 THROUGH 22 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ONE-EIGHTH OF MINERALS, OIL, PETROLEUM, ASPHALTUM, GAS, COAL AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED NOVEMBER 27, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION AND IS NOT FOR THE USE OF THE GENERAL PUBLIC.

APN: 700-0-260-065

EXHIBIT 1, PAGE 16

Order Number: **O-SA-6230236**
Page Number: 9



EXHIBIT 1, PAGE 17

Order Number: **O-SA-6230236**
Page Number: 10

### *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

EXHIBIT 1, PAGE 18

Order Number: **O-SA-6230236**
Page Number: 11

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

### CLTA STANDARD COVERAGE POLICY – 1990
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c)  resulting in no loss or damage to the insured claimant;

    (d)  attaching or created subsequent to Date of Policy; or

    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a.  building;

    b.  zoning;

    c.  land use;

EXHIBIT 1, PAGE 19

Order Number: **O-SA-6230236**
Page Number: 12

   d.  improvements on the Land;
   e.  land division; and
   f.  environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
   a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c.  that result in no loss to You; or
   d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
   a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.  in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

### 2006 ALTA LOAN POLICY (06-17-06)
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

*First American Title*
Page 12 of 18

Order Number: **O-SA-6230236**
Page Number:  13

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.

### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss

or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

### 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions, or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

EXHIBIT 1, PAGE 21

Order Number: **O-SA-6230236**
Page Number:  14

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.


The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.   (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.   Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.   Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.   Any lien or right to a lien for services, labor or material unless such lien is shown by the Public Records at Date of Policy.
7.   [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.   Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

EXHIBIT 1, PAGE 22

Order Number: **O-SA-6230236**
Page Number: 15

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

 *First American Title*™

## Privacy Notice

**Effective:** January 1, 2020

**Notice Last Updated:** January 1, 2020

This Privacy Notice describes how First American Financial Corporation and its subsidiaries and affiliates (together referred to as "First American," "we," "us," or "our") collect, use, store, and share your information. This Privacy Notice applies to information we receive from you offline only, as well as from third parties. For more information about our privacy practices, please visit https://www.firstam.com/privacy-policy/index.html. The practices described in this Privacy Notice are subject to applicable laws in the places in which we operate.

**What Type Of Information Do We Collect About You?** We collect both **personal** and **non-personal information** about and from you. **Personal information** is non-public information that can be used to directly or indirectly identify or contact you. **Non-personal information** is any other type of information.

**How Do We Collect Your Information?** We collect your **personal** and **non-personal information:** (1) directly from you; (2) automatically when you interact with us; and (3) from third parties, including business parties and affiliates.

**How Do We Use Your Information?** We may use your personal information in a variety of ways, including but not limited to providing the services you have requested, fulfilling your transactions, comply with relevant laws and our policies, and handling a claim. We may use your **non-personal information** for any purpose.

**How Do We Share Your Personal Information?** We do not sell your **personal information** to nonaffiliated third parties. We will only share your **personal information**, including to subsidiaries, affiliates, and to unaffiliated third parties: (1) with your consent; (2) in a business transfer; (3) to service providers; and (4) for legal process and protection. If you have any questions about how First American shares your **personal information**, you may contact us at dataprivacy@firstam.com or toll free at 1-866-718-0097.

**How Do We Secure Your Personal Information?** The security of your **personal information** is important to us. That is why we take commercially reasonable steps to make sure your **personal information** is protected. We use our best efforts to maintain commercially reasonable technical, organizational, and physical safeguards, consistent with applicable law, to protect your **personal information**.

**How Long Do We Keep Your Personal Information?** We keep your **personal information** for as long as necessary in accordance with the purpose for which it was collected, our business needs, and our legal and regulatory obligations.

**Your Choices** We provide you the ability to exercise certain controls and choices regarding our collection, use, storage, and sharing of your **personal information**. In accordance with applicable law, your controls and choices. You can learn more about your choices, and exercise these controls and choices, by sending an email to dataprivacy@firstam.com or toll free at 1-866-718-0097.

**International Jurisdictions**: Our Products are hosted and offered in the United States of America (US), and are subject to US federal, state, and local law. If you are accessing the Products from another country, please be advised that you may be transferring your **personal information** to us in the US, and you consent to that transfer and use of your **personal information** in accordance with this Privacy Notice. You also agree to abide by the applicable laws of applicable US federal, state, and local laws concerning your use of the Products, and your agreements with us.

We may change this Privacy Notice from time to time. Any and all changes to this Privacy Notice will be reflected on this page, and where appropriate provided in person or by another electronic method. **YOUR CONTINUED USE, ACCESS, OR INTERACTION WITH OUR PRODUCTS OR YOUR CONTINUED COMMUNICATIONS WITH US AFTER THIS NOTICE HAS BEEN PROVIDED TO YOU WILL REPRESENT THAT YOU HAVE READ AND UNDERSTOOD THIS PRIVACY NOTICE.**

**Contact Us** dataprivacy@firstam.com or toll free at 1-866-718-0097.

© 2019 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

EXHIBIT 1, PAGE 24

First American Title™

## For California Residents

If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act of 2018 ("CCPA"). All phrases used in this section shall have the same meaning as those phrases are used under California law, including the CCPA.

**Right to Know**. You have a right to request that we disclose the following information to you: (1) the categories of **personal information** we have collected about or from you; (2) the categories of sources from which the **personal information** was collected; (3) the business or commercial purpose for such collection and/or disclosure of your personal information; (4) the categories of third parties with whom we have shared your **personal information**; and (5) the specific pieces of your **personal information** we have collected. To submit a verified request for this information, go to our online privacy policy at www.firstam.com/privacy-policy to submit your request or call toll-free at 1-866-718-0097. You may also designate an authorized agent to submit a request on your behalf by going to our online privacy policy at www.firstam.com/privacy-policy to submit your request or by calling toll-free at 1-866-718-0097 and submitting written proof of such authorization to dataprivacy@firstam.com.

**Right of Deletion**. You also have a right to request that we delete the **personal information** we have collected from you. This right is subject to certain exceptions available under the CCPA and other applicable law. To submit a verified request for deletion, go to our online privacy policy at www.firstam.com/privacy-policy to submit your request or call toll-free at 1-866-718-0097. You may also designate an authorized agent to submit a request on your behalf by going to our online privacy policy at www.firstam.com/privacy-policy to submit your request or by calling toll-free at 1-866-718-0097 and submitting written proof of such authorization to dataprivacy@firstam.com.

**Verification Process**. For either a request to know or delete, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**. We do not sell your personal information to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**. You have a right to exercise your rights under California law, including under the CCPA, without suffering discrimination. Accordingly, First American will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**Collection Notice**. The following is a list of the categories of personal information we may have collected about California residents in the twelve months preceding the date this Privacy Notice was last updated, including the business or commercial purpose for said collection, the categories of sources from which we may have collected the personal information, and the categories of third parties with whom we may have shared the personal information:

| | |
|---|---|
| **Categories of Personal Information Collected** | The categories of personal information we have collected include, but may not be limited to: real name; signature; alias; SSN; physical characteristics or description, including protected characteristics under federal or state law; address; telephone number; passport number; driver's license number; state identification card number; IP address; policy number; file number; employment history; bank account number; credit card number; debit card number; financial account numbers; commercial information; internet or other electronic network activity; geolocation data; audio and visual information; professional or employment information; and inferences drawn from the above categories to create a profile about a consumer. |
| **Categories of Sources** | Categories of sources from which we've collected **personal information** include, but may not be limited to: the consumer directly; public records; governmental entities; non-affiliated third parties; social media networks; affiliated third parties |
| **Business Purpose for Collection** | The business purposes for which we've collected **personal information** include, but may not be limited to: completing a transaction for our Products; verifying eligibility for employment; facilitating employment; performing services on behalf of affiliated and non-affiliated third parties; debugging to identify and repair errors that impair existing intended functionality on our Websites, Applications, or Products; protecting against malicious, deceptive, fraudulent, or illegal activity |

© 2019 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

EXHIBIT 1, PAGE 25

 *First American Title™*

| Categories of Third Parties Shared | The categories of third parties with whom we've shared **personal information** include, but may not be limited to: advertising networks; internet service providers; data analytics providers; service providers; government entities; operating systems and platforms; social media networks; non-affiliated third parties; affiliated third parties |
|---|---|

*Categories of Personal Information We Have Sold In The Past Year.* We have not sold any personal information of California residents to any third party in the twelve months preceding the date this Privacy Notice was last updated.

*Categories of Personal Information Disclosed For A Business Purpose In The Past Year.* The following is a list of the categories of **personal information** of California residents we may have disclosed for a business purpose in the 12 months preceding the date this Privacy Notice was last updated: The categories of personal information we have collected include, but may not be limited to: real name; signature; alias; SSN; physical characteristics or description, including protected characteristics under federal or state law; address; telephone number; passport number; driver's license number; state identification card number; IP address; policy number; file number; employment history; bank account number; credit card number; debit card number; financial account numbers; commercial information; internet or other electronic network activity; geolocation data; audio and visual information; professional or employment information; and inferences drawn from the above categories to create a profile about a consumer.

© 2019 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

| Form 10-PRIVACY19 (1-10-20) | Page 3 of 3 | Privacy Notice (2019 First American Financial Corporation) |
|---|---|---|

**EXHIBIT 2**

VENTURA
SUPERIOR COURT
**FILED**

NOV **1 9** 2019

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____ Deputy

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF VENTURA

GENOVA CAPITAL INC., A CALIFORNIA
CORPORATION,

    Plaintiff,

      vs.

BRIGHAM FIELD, COLETTE PELISSIER;
ALL UNNAMED OCCUPANTS, TENANTS,
AND SUBTENANTS; AND DOES 1-20,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 56-2019-00532526-CU-UD-VTA

**COURT'S STATEMENT OF DECISION
FOLLOWING COURT TRIAL**

### BACKGROUND

The parties in this case waived jury on all issues and agreed to have the court determine

the "tender" issue first. [1]  Any issues regarding alleged irregularities in the nonjudicial

foreclosure sale were to be litigated after the court decided the issue of "tender."  Therefore, the

only issue addressed in the previously issued Statement of Decision was whether unconditional

"tender" was made by Defendants Field or Pelisser prior to the nonjudicial foreclosure sale.  The

---

[1] *"MR. LANCASTER: We've met and conferred. We are both waiving jury trial for the case.
THE COURT: Okay. For all issues on the unlawful detainer case; is that correct?
MR. LANCASTER: Yes. And we want to proceed to try the tender, title issue first.
THE COURT: When we say "all issues," they would include, but be not limited to tender, title,
any alleged defects in the nonjudicial foreclosure sale, right?
MR. LANCASTER: Correct....
THE COURT: Okay. So any and all issues regarding the unlawful detainer matter, according the
parties' agreement, will be tried by way of court trial and all parties have waived their right to a
jury trial on these issues."*
(R.T. from 9/16/19, pp. 30-31.)

-1-

parties dispute whether the resolution of the tender issue adversely to Defendants precludes further litigation of any alleged irregularities or equitable defenses.  At the reconvened court trial, the court permitted the Defendants to introduce additional evidence on asserted equitable defenses and procedural irregularities of the sale.

Genova's claim of right to possession is based on a loan of $125,000.00 secured by a deed of trust signed by both Defendants encumbering the Subject Property (Exs. 1, 202.)  The loan became due in full on June 30, 2017 (Ex. 1.)  "When a trustor defaults on the obligation . . . [the beneficiary] can rely upon the power of sale in the deed of trust and pursue a private sale." (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1502.)  Notice of Field's default under the note was given in writing on March 11, 2019, via email to Field and Pelissier, and Field acknowledged receipt of the email (Ex. 18, ¶2; 9/17 RT 61:16-19, 64:18-24.) Notice of Default under the deed of trust was recorded on April 15, 2019 (Ex. 205.)  Notice of Trustee's Sale was recorded on June 18, 2019 (Ex. 206.)  On August 14, 2019, Plaintiff made a full credit bid for the Subject Property, through the trustee, at the auction and ownership of the Subject Property was conveyed to Plaintiff.  (Ex. 214; 9/19 111:23-112:26.)

"There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee. [Citation.] The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. [Citation.] . . . [¶] *Civil Code* sections 2924 through 2924k . . . govern nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust." (*Biancalana v. T.D. Service Co*. (2013) 56 Cal.4th 807, 813-814.)  Under *Civil Code* 2924h, subdivision (b), the beneficiary under a deed of trust or its assignee is entitled to make a credit bid at the trustee's sale up to the amount of the debt owed. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8

EXHIBIT 2, PAGE 28

Cal.App.5th 23, 45.)  To initiate the foreclosure process, '[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents' must first record a notice of default . . . . After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. [Citations.] [¶] The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11.)  The deed of trust granted to Genova in this case allowed Genova to proceed by nonjudicial foreclosure following the Defendants default. (*Civ. Code* § 2924 et seq.; see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830, 30 Cal. Rptr. 2d 777.)  The following evidence was introduced at trial:  the trustee's deed upon sale (Ex. 214), the notice of trustee's sale (Ex. 206), the notice of default (Ex. 205), the substitution of trustee (Ex. 204), and deed of trust (Ex. 202).

Written notice of the default was provided to both Defendants on March 11, 2019, via e-mail. (Ex. 18 [paragraph 2 in evidence]; 9/17 RT 61:16-20, 64:23-24 .)  The email expressly stated that "this loan is 619 days past due" and that it has "a total amount owing of $146,198.62." (Ex. 18.)  Defendants argue that they did not actually receive the recorded notice of default, and only received the notice of trustee's sale. (Def. Br. at 1.)  *Civil Code* sections 2924 through 2924k do not require actual receipt of any foreclosure notice by a borrower.  "*Civil Code* sections 2924–2924h, *do not require actual receipt by a trustor of a notice of default or notice of sale*. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent." (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746–747 .)  Also, it is of no legal importance that the note was only signed by Field. (*Civ. Code* §§2928, 2890.)  It is undisputed that both Field and Pelissier signed

-3-

EXHIBIT 2, PAGE 29

the deed of trust, which provided for the power of sale, and that the Subject Property was owned

by both Field and Pelissier at the time they signed the deed of trust.  (9/17 RT 44:2-8 [Field:

"Right. Okay. Page 34. This appears to be my signature; and to the best of my knowledge, this

appears to be my wife's signature as well."]; *Id.* 44:17-21 [Field: "I put my initials on pages 1

through 33, and it appears that my wife did the same."]; Ex. 202, at 34 of 36; Answer ¶4.)

## LITIGABLE ISSUES IN AN UNLAWFUL DETAINER PROCEEDING FOLLOWING A NONJUDICIAL FORECLOSURE SALE

The primary issue in an unlawful detainer proceeding such as this one is the Plaintiff's

right to possession. (*Old National Financial Services, Inc. v. Seibert, supra,* 194 Cal.App.3d at p.

465.)  But where, as here, the unlawful detainer action is brought pursuant to CCP section 1161a,

subdivision (b)(3), title is also an issue. This section provides that an unlawful detainer action

may be filed "[w]here the property has been sold in accordance with Section 2924 of the Civil

Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been

duly perfected." (§ 1161a, subd. (b)(3).)  Although issues concerning title are not litigable in a

traditional landlord-tenant eviction under section 1161, they are litigable following a nonjudicial

foreclosure sale under section 1161a:

> " 'Historically a cause of action for unlawful detainer was available only to a
> landlord against his tenant.' " (Gross v. Superior Court (1985) 171 Cal.App.3d
> 265, 271 [217 Cal. Rptr. 284].) The remedy has been expanded by statute to
> additional categories of plaintiffs (see § 1161) and defendants (see § 1161a). The
> purpose of section 1161a was to make clear that one acquiring ownership
> through foreclosure could also evict by a summary procedure. (See Gross v.
> Superior Court, supra, 171 Cal.App.3d at p. 271.)
>
> **In an unlawful detainer action brought pursuant to section 1161a, subdivision
> (b)(3), the plaintiff must show that he or she acquired the property at a
> regularly conducted sale and thereafter "duly perfected" title.** (Evans v.
> Superior Court (1977) 67 Cal.App.3d 162, 169 [136 Cal.Rptr. 596]; see Stephens
> v. Hollis (1987) 196 Cal.App.3d 948, 952 [242 Cal.Rptr. 251].) "[W]here the

EXHIBIT 2, PAGE 30

*plaintiff in the unlawful detainer action is the purchaser at a trustee's sale, he or
she 'need only prove a sale in compliance with the statute and deed of trust,
followed by purchase at such sale, and the defendant may raise objections only on
that phase of the issue of title.'" (Old National Financial Services, Inc. v. Seibert
(1987) 194 Cal.App.3d 460, 465 [239 Cal.Rptr. 728], italics omitted.)* **"The
statute" with which a postforeclosure plaintiff must prove compliance is Civil
Code section 2924.** *(Seidell v. Anglo-California Trust Co. (1942) 55 Cal.App.2d
913, 920 [132 P.2d 12].)"*

*(The Bank of New York Mellon v. Preciado* (2013) 224 Cal.App.4th Supp. 1, 9
(Emphasis added.)

A plaintiff pursuing a postforeclosure action under section 1161a(b)(3) must "prove a

sale in compliance with the statute [*Civ. Code*, § 2924] and deed of trust, followed by purchase at

such sale." (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474; *Cheney v.

Trauzettel* (1937) 9 Cal.2d 158, 160, 69 P.2d 832; see also *Old National Financial Services, Inc.

v. Seibert* (1987) 194 Cal.App.3d 460, 465, 239 Cal. Rptr. 728.)  "[A]n unlawful detainer action

must be brought to evict the trustor (§ 1161a, subd. (b)(3)). The purchaser must show that he/she

acquired the property at a regularly conducted sale in accordance with *Civil Code* section 2924

"and that title under such sale was duly perfected. [Citation.]"  (*Lyons v. Santa Barbara County

Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1505 [181 Cal.Rptr.3d 186].)

## TENDER MUST BE UNCONDITIONAL AND ABSOLUTE IN ORDER TO FORESTALL A NONJUDICIAL FORECLOSURE

A debtor may forestall a foreclosure sale by tendering the amount owed.  The rules

applying to tender apply in the post-foreclosure unlawful detainer context when the defendant

seeks to challenge Plaintiff's title.  (*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972)

27 Cal.App.3d 170, 177 [post-foreclosure unlawful detainer case holding that "[D]efendant's

assertion of plaintiff's noncompliance with Civil Code section 2924 did not raise a triable issue

'because we do not find in the record any offer on the part of [defendant] to pay the full amount

EXHIBIT 2, PAGE 31

of the debt for which the property was given as security.'"]; *Kartheiser v. Superior Court of Los Angeles County* (1959) 174 Cal.App.2d 617, 620 ["in *Bisno* v. *Sax* (Code Civ. Proc., §1908 subd. 2); one of the major issues in that case and in the unlawful detainer action is the sufficiency of the tender made by Bisno, an issue upon which Sax prevailed below."].)

Under *Civil Code* section 2924c, subdivision (a)(1), the trustor or mortgagor may satisfy a loan once foreclosure proceedings have begun by paying the entire amount due, including principal, interest, taxes, assessments, and costs incurred in enforcing the obligation—at any time before entry of the decree of foreclosure. Defendants claim that they made a valid tender offer prior to the nonjudicial foreclosure sale. In order for Defendants to prove their affirmative defense of tender, Defendants must show be a preponderance of the evidence that their alleged tenders were unconditional and absolute. The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445–446 [129 Cal. Rptr. 2d 436].)

"A tender is an unconditional offer to perform an order to extinguish an obligation." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 783 [222 Cal.Rptr.3d 1, citing *Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [98 Cal.Rptr. 414].) Merely stating one is ready, willing, and able to tender payment upon learning what is owed is insufficient tender where the notice of default informs debtor of a minimum amount owed and debtor tendered no payment of at least that amount. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, *supra.*) In *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, the court held that tender conditioned on the creditor relinquishing its claim to a prepayment premium on mortgage which was to be paid by the trustor only if the bankruptcy court determined creditor was entitled to claim the premium, was

EXHIBIT 2, PAGE 32

not a valid tender.  It is a foundational principal in nonjudicial foreclosure law that in order to redeem a property through a valid tender, that "the tender must be absolute," which has been the law of California for over 150 years.  (*McMillan v. Richards* (1858) 9 Cal. 365, 405.)  "[A] tender to be valid must be of full performance (Civ. Code, §1486), and it must be unconditional." (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [citing Civ. Code §1494].)

"[A] tender to be valid must be of full performance [citation], and it must be unconditional." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385; Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra, at p. 783; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15; *Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 782, 78 Cal.Rptr. 761 ["It is well established that a tender must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a refusal to perform"].)  Additionally, """where the rules [concerning tender] are prescribed by statute . . . , the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.""" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439, 129 Cal. Rptr. 2d 436.) "[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." (Id. at p. 439.)

Thus, a defendant's purported tender, filed simultaneously with a counterclaim, was held insufficient where the defendant stated it was "willing to pay [plaintiffs] the amount of our tender" and "if it turns out, after a trial, that we were entitled to a set off, we will seek from their

EXHIBIT 2, PAGE 33

assets to get it back." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385.)

The defendant's offer in *Still* was "qualified and conditional by reason of the counterclaim."

(*Ibid.*) Similarly, a tender was held invalid where a defendant deposited funds in an escrow

account "pending entry of a final District Court order or judgment directing the escrow agent to

pay the tendered funds to [plaintiff] . . . and dismissing this action as moot." (See *Chen v.*

*Allstate Ins. Co.,* 819 F.3d at p. 1146.)

### TENDER, INADEQUACY OF PURCHASE PRICE & PROCEDURAL IRREGULARITES

This court stands by its Tentative and Proposed Statement of Decision which concluded

that the Defendants did not make a valid tender before the foreclosure sale.  However, the

additional text message exchange between Mr. Filed and Mr. Hunter introduced in the second

phase of the trial as exhibit 224, sheds further light on the negotiations between the parties.  On

August 13, the afternoon before the non-judicial foreclosure sale, Defendants were prepared to

drive to the trustee's office in Anaheim to pay the debt.  At 3:05 p.m., Hunter communicated to

Field in a manner which could reasonably lead Field to believe that the sale is being postponed

when he stated:  "I will email you the confirmation.  You will also be able to call and verify."

Thirty minutes later,   at 3:37 p.m., Hunter requests that Field sign a "simple term sheet" before

he postpones.  Recognizing how close the deadline is to paying off the loan, Field states:  "What

will it say?  The TD guys are leaving at 5pm."  This and other exchanges between the parties'

leads the court to believe that absent these last minute negotiations on the afternoon prior to the

foreclosure sale, Defendants would have paid the loan off.  The fact that they were able to obtain

a cashier's check for the full indebtedness shortly after the foreclosure sale confirms funds were

available.

EXHIBIT 2, PAGE 34

The financial dealings between the parties was complex and involved much more than the note at issue.  The parties were involved in good faith last minute negotiations regarding these complex matters.  It is not as though Mr. Hunter was refusing to engage in last minute negotiations.  In fact, it was Mr. Hunter on behalf of Plaintiff who was proposing a last minute alternative to foreclosure.  This understandably delayed Defendants in paying off the note the day prior to the sale.  The court does not believe that Mr. Hunter intentionally led the Defendants to believe a settlement was imminent in order to purchase the property at foreclosure.  However, the effect of Mr. Hunter engaging in these last minute negotiations and sending a complex written counter offer, likely resulted in the Defendants not paying off the note on the day prior to the foreclosure sale.  Under these circumstances, it would be unjust to remove the Defendants from the premises.  Given that the Defendants had sufficient funds to pay the note off on the date of the judicial foreclosure sale, it makes no sense that they would allow their property to be foreclosed upon and thereby lose millions of dollars of equity.  What makes sense is that they got caught up in last minute negotiations and time ran out to pay off the notre.

"Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062, 162 Cal. Rptr. 3d  382.)  The parties dispute whether the above noted exceptions apply in an unlawful detainer proceeding as opposed to a quiet title action or unlimited case.  There is some authority which suggests that inadequacy of purchase price coupled with procedural irregularity and/or unfairness can be raised in an unlawful detainer action.  (*Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 266; *Harth v.*

EXHIBIT 2, PAGE 35

*Baum* (1935) 7 Cal.App.2d 114, 116; *Whitman v. Transtate Title Co.* (1985) 165 Cal. App. 3d 312.) Given the unique circumstances of this case, this court is persuaded that inadequacy of purchase price coupled with procedural irregularity can be raised in this trial.

It is the general rule that a court has the power to vacate a foreclosure sale "where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." (*Bank of America etc. v. Reidy* (1940) 15 Cal.2d 243, 248, 101 P.2d 77.) But "mere inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made. There must in addition be proof of some element of fraud, unfairness, or oppression before the court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief." (*Sargent v. Shumaker* (1924) 193 Cal. 122, 129, 223 P. 464; *BFP v. Resolution Trust Corporation* (1994) 511 U.S. 531, 542, 114 S. Ct. 1757, 128 L. Ed. 2d 556 . . . ['[M]ere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside . . . if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness."'].) As recently stated by one court:

> *Inadequate price, even coupled with procedural irregularity, does not automatically render a trustee's sale subject to attack. "[M]ere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" (6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1284 [102 Cal. Rptr. 2d 711], italics added (6 Angels); see also Sargent v. Shumaker (1924) 193 Cal. 122, 129–130 [223 P. 464] [gross inadequacy in price must be coupled with unfairness or advantage " 'resulting in such gross inadequacy and consequent injury' " to borrower]; Crofoot v. Tarman (1957) 147 Cal. App. 2d 443, 446 [305 P.2d 56] [same].)"*

(*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93 [20 Cal.Rptr.3d 1].)

-10-

EXHIBIT 2, PAGE 36

At the foreclosure sale, Genova paid approximately $ 160,000.00 for the subject property which is valued between 14 million and 20 million dollars.  Plaintiff presented evidence and argument that the property was worth 14 million despite the Defendants having purchased the property in 2013 for 16 million.  Of course, liens on the property must be considered in determining what if any windfall equity Genova obtained.  The only liens on the property are a $9 million first deed of trust, a $2.5 million second deed of trust, and a $500,000 abstract recorded against the property. Using the $14 million valuation offered by Plaintiffs, that leaves $2 million of equity in the property, rendering the purchase price a mere 8% of the value of the property.  In *Whitman*, 175 Cal. at 276, the court found that a $12,960 payment for a $65,000 (i.e., paying 20% the value of the property) was grossly inadequate. Similarly, in *Winbigler*, 175 Cal. at 276, a payment of 10% of the value of the property was found to be grossly inadequate. Even assuming Genova's valuation of 14 million, the purchase price was grossly inadequate. Moreover, the court is persuaded that the value of the home is between 15 and 18 million, meaning that Plaintiff acquired between 2 and 6 million by way of a purchase for approximately $ 160,000.00.  The court finds that the purchase price of the subject property was grossly inadequate, upholding the foreclosure sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a procedural irregularity within the meaning of the above case law.

## CONCLUSION

The court finds that the purchase price at the non-judicial foreclosure sale of the subject property was grossly inadequate and that an injustice would result to enforce said sale and evict the Defendants.  The court is satisfied that the last minute negotiations between the parties resulted in a procedural irregularity sufficient to deny Plaintiff possession of the premises at this

EXHIBIT 2, PAGE 37

time.  The issues addressed in this ruling are better flushed out and addressed in the unlimited

quiet title action.  The court hereby conditionally rules in favor of the Defendants on the issue of

possession of the premises, contingent upon the Defendants paying off the subject note in its

entirety, plus costs.  Said payment and costs to be paid by Defendants to Plaintiff by no later than

December 4, 2019, in order for Defendants to remain in possession of the subject premises.  For

the benefit of any reviewing court, if this court's conditional ruling were reversed, this court's

intent would be to consolidate the unlawful detainer and unlimited quiet title cases and stay entry

of judgment in the unlawful detainer matter until resolution of the unlimited quiet title action.

Counsel for Defendants to submit a proposed judgment consistent with this ruling.


Dated: November _____, 2019

KEVIN G. DENOCE
Judge of the Superior Court

EXHIBIT 2, PAGE 38

**PROOF OF SERVICE**
*CCP § 1012, 1013a (1), (3) & (4)*

STATE OF CALIFORNIA      )
                         )   ss.
COUNTY OF VENTURA        )

Case Number: 56-2019-00532526-CU-UD-VTA
Case Title: Genova Capital Inc. vs. Field

I am employed in the County of Ventura, State of California. I am over the age of 18 years and not a party to the above-entitled action. My business address is 800 S. Victoria Avenue, Ventura, CA 93009. On the date set forth below, I served the within:

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

On the following named party(ies)

Timothy Matthew Ryan                    David Rosen
E-Mail: tryan@theryanfirm.com           E-Mail: drosen@murphyrosen.com
30 Corporate Park, Suite 310            100 Wilshire Boulevard, Suite 1300
Irvine, California 92606                Santa Monica, California 90401-1142


Cristian Arrieta
E-Mail: carrieta@lrmmt.com
300 Esplanade Drive, Suite 850
Oxnard, California 93036

_____ **BY PERSONAL SERVICE**: I caused a copy of said document(s) to be hand delivered to the interested party at the address set forth above on _____ at _____ a.m./p.m.

__x___ **BY MAIL**: I caused such envelope to be deposited in the mail at Ventura, California. I am readily familiar with the court's practice for collection and processing of mail. It is deposited with the U.S. Postal Service on the dated listed below.

and __ **BY FACSIMILE**: I caused a *courtesy copy* of said documents to be sent via facsimile to the interested party at the facsimile number set forth above at _____ from telephone number _____.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on **November 19, 2019**, at Ventura, California.

By: _____
    H. McIntyre, Judicial Secretary

**EXHIBIT 3**

# Wire Transfer Services
Outgoing Wire Transfer Request


**WELLS FARGO**

Today's Date:
11/25/2019

Wells Fargo Reference Number:
█████2275

Banker Name:
SAM DONOHUE

Officer/Portfolio Number:
CN528

Banker Phone:
310/457-8510

Branch Number:
11332

Banker AU:
███745

Banker MAC:
█-010

Outgoing wires can only be sent for Wells Fargo customers. Provide the Customer Copy to the customer ensuring you give them the Wire Transfer Agreement on pages 3 and 4. Note: Wells Fargo Wire Transfer Services will route wires based on correspondent banking relationships. See the Wire Transfer Information for explanations of the Mexican CLABE number, the SWIFT BIC, the International Routing Code ("IRC") , Indian Financial System Code (IFSC) and the International Bank Account Number ("IBAN").

## Originator's Information

Originator Name:
COLETTE PELISSIER

Street Address:
11802 ELLICE ST

Primary ID Type:
PASP

Primary ID Description:
██████████

Address Line 2:

Primary ID St/Ctry/Prov:
US

Primary ID Issue Date:

Primary ID Expiration Date:

Address Line 3:

Secondary ID Type:
PINV

Secondary ID Description:
PIN Validation

City:
MALIBU

State:
CA

Secondary ID State/Country:

Secondary ID Issue Date:

Secondary ID Expiration Date:

ZIP/Postal Code:
90265-2494

Country:
US

Account Name:
COLETTE PROPERTIES, LLC

Home Phone:

Business Phone:
310/570-7950

## Wire Amount and Source of Funds

Create AU:
0010745

Amount (US Dollars):
$163,670.64

Debit Wells Fargo Account:
███████

Bank/COID:
00114

## Beneficiary/Recipient Information (This is the ultimate recipient of the wire transfer funds)

Beneficiary/Recipient Name:
Genova Capital. Inc.

Name/Address Line 1:
27702 Crown Valley Pkwy Bldg C

Beneficiary Account Number/IBAN (Foreign)/CLABE (Mexico):
████████7170

Name/Address Line 2:

Purpose of Wire:
Case No. 56-2019-00532526-CU-UD-VTA 11802
Ellice Street Malibu

Name/Address Line 3:
Ladera Ranch, CA, US

Beneficiary Phone Number:

Additional Instructions:

**Customer Copy**

Page 1 of 4

WTR6603 (9-19 SVP)

Wire Transfer Services Outgoing Wire Transfer Request

**Beneficiary Bank** (This is the financial institution where the beneficiary maintains their account.)

| ABA/RTN | SWIFT/BIC: | Beneficiary Bank Name: |
|---|---|---|
| ███1627 | | JPMORGAN CHASE BANK, NA |

| Beneficiary Bank Address: | City: | State: |
|---|---|---|
| | SEATTLE | WA |

Additional Instructions:

**Wire Fees**

Wells Fargo wire transfer fees will be charged to the Originator's Debit Account. Wells Fargo Wire Transfer Fees are disclosed in your most recent Fee and Information Schedule and related amendments and, if applicable, on the Wells Fargo Combined Disclosure for Outgoing Consumer International Wires. Additional fees from intermediary and beneficiary banks may be charged to international transactions. My signature here indicates agreement to all of the information on this Outgoing Wire Transfer Request and to the terms and conditions of this request. Wells Fargo is authorized to rely on the information on this Request in making the requested funds transfer.

**Customer Signature**

Originator Name

COLETTE PELISSIER

Originator Signature

████████████████    ☐ Submit manually    Date:
                     ☐ Signature not required    11/25/2019

Customer Copy

WTR6603 (9-19 SVP)

EXHIBIT 3, PAGE 41

## Agreement For Outgoing Wire Transfer Requests ("Wire Transfer Agreement")

**Responsibility of Wells Fargo.** The wire transfer described in the Outgoing Wire Transfer Request (Page 1) ("Order") may be sent by wire telegraph, telephone, cable or whatever other transmission method Wells Fargo considers to be reasonable. The wire transfer may be transmitted directly to the Beneficiary Bank (the financial institution designated in the Request as the Beneficiary Bank), or indirectly to the Beneficiary Bank through another bank, government agency, or other third party that Wells Fargo considers to be reasonable. Wells Fargo may utilize any funds transfer system or intermediary bank reasonably selected by Wells Fargo, even if its selection differs from instructions in the request.

**Agent.** Wells Fargo may use agents of its choice to perform any of its obligations.

**Limitation of Liability.** Wells Fargo will be liable for any loss or damage due to the failure, delay, or error of: (1) the method of transmission selected by Wells Fargo, (2) a third party selected by Wells Fargo to receive the Order, or (3) the Beneficiary Bank. IN NO EVENT WILL WELLS FARGO BE LIABLE FOR DAMAGES ARISING DIRECTLY OR INDIRECTLY IF THE ORDER IS EXECUTED BY WELLS FARGO IN GOOD FAITH AND IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT. REGARDLESS OF THE FORM OR NATURE OF ANY CLAIM OR ACTION, IN NO EVENT WILL WELLS FARGO BE LIABLE FOR PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT WELLS FARGO SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Reliance on Information Provided.** You acknowledge that you are responsible for providing Wells Fargo with all information required by the Beneficiary's bank, including the reason for payment, if required. Sending wires without the required information can cause the wire to be delayed, returned, or assessed additional fees. If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary. If a wire transfer request describes a financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.

**International Wire Transfers.** A Payment Order expressed in U.S. Dollars will be sent in U.S. Dollars. Company may request that prior to executing a Payment Order, Wells Fargo convert the amount to be transferred from U.S. Dollars to the currency of a designated foreign government or intergovernmental organization ("Foreign Currency"). Wells Fargo makes money when it converts one currency to another currency for you.  The exchange rate provided to you is set by Wells Fargo in its sole discretion, and it includes a markup over Wells Fargo's cost of sourcing the relevant currency or currencies. The markup may be based on several factors, including without limitation costs incurred, market risks, services rendered, the client relationship, the transaction and our desired return.

The exchange rate Wells Fargo provides to you may be different from exchange rates you see online, in publications, at other banks or other foreign exchange providers.  Also, different customers may receive different exchange rates for transactions that are the same or similar.  The exchange rate may depend on the type of transaction being conducted, the dollar amount, type of currency, the date and time of the exchange and/or the factors noted above.  The foreign exchange market is dynamic, so exchange rates can change rapidly.  If you delay executing a transaction, the exchange rate may change and could even be significantly different.  Wells Fargo reserves the right to refuse to process any request for a foreign exchange transaction. Wells Fargo will not be liable for any failure or delay by any financial institution or other third party in the designated foreign country in executing or failing to execute any Payment Order Wells Fargo transmits to a foreign country.

**Refund.** If the Beneficiary Bank does not pay the Beneficiary specified on the Order, a refund will be made only after Wells Fargo has received confirmation of the effective cancellation of the Order and Wells Fargo is in free possession of the funds debited or earmarked in connection with the Order.  If the transaction is in Foreign Currency, Wells Fargo will not be liable to you for a sum in excess of the value of the Order after it has been converted back to U.S. Dollars at the exchange rate applied by Wells Fargo at the time the cancellation of the Order is confirmed by Wells Fargo.

**Failure to Transfer Proper Amount.** If Wells Fargo is notified that it did not transfer the full amount stated in the Request, Wells Fargo's sole liability will be to promptly execute a second Payment Order in the amount of the stated deficiency. If Wells Fargo executes an instruction in excess of the amount stated in the Request, to the extent that the originator does not receive the benefit of the Order, Wells Fargo will only be liable for any loss of the principal amount transferred in excess of the amount stated in the Request instructions. Additionally, Wells Fargo will be liable for the amount of interest the originator has lost due to the transfer of the excess amount, computed at the then current Federal Funds rate. However, Wells Fargo's liability for loss of interest shall be limited to twenty (20) calendar day's interest. This section sets forth Wells Fargo's complete liability for the order issued under this agreement.

**Finality of orders.** The order will be final and will not be subject to stop payment or recall, except that Wells Fargo may, at the originator's request, make an effort to effect such stop payment or recall. In such case, Wells Fargo will incur no liability for its failure or inability to do so.

**Fees.** In addition to the outgoing wire transfer fee, additional fees may apply. Additional fees can include, but are not limited to: an additional fee for bank initiated transactions, amendment fees, statement fees, fees assessed by beneficiary and intermediary banks, etc. On international outgoing wires, if a SWIFT BIC, IRC, IBAN, or CLABE number is not provided the foreign banks may return the wire or assess a surcharge. Wells Fargo Wire Transfer Fees are disclosed in your most recent Fee and Information Schedule and related amendments.

**Acts of God.** Wells Fargo is excused for delays or failure to execute the Order to the extent that the delay or failure results from a cause beyond the reasonable control of Wells Fargo.

## Wire Transfer Information

**General Information: You can NOT have a bank as the final beneficiary,** unless the wire is a payment to Wells Fargo (i.e.: mortgage, auto loan, etc.). We are required to know who the money is going to, to ensure the funds are not being used to support terrorist or drug activity. We need an account number for the beneficiary OR a complete physical address. No PO Boxes may be used when no account number is provided for the Beneficiary.

**International Wires:** Wires going to foreign countries require different numbers depending on the receiving foreign country. All wire transfer payments destined for Europe should include the SWIFT Bank Identifier Code (SWIFT BIC), International Routing Code (IRC) as applicable, and for participating countries the beneficiary's International Bank Account Number (IBAN). Mexican banks may require a CLABE number in addition to the SWIFT BIC.

1. **SWIFT** Bank Identifier Code (SWIFT BIC). The 8 or 11 character SWIFT BIC is a unique series of alpha numeric characters that help to identify a specific financial institution. The SWIFT BIC should be obtained from the beneficiary. To ensure timely delivery please be sure that International Outgoing wires include the SWIFT BIC where applicable.

2. **International Routing Code (IRC):** Some countries throughout the international banking community have created international routing codes, which are used in combination with the SWIFT BIC to aid in routing the payment through a main office to a branch. Each country has a specific name for their routing code (i.e., Sort Code in the United Kingdom, Canadian Payments Association Routing Numbers in Canada). Your beneficiary must provide the international routing code to facilitate receipt of an international payment. Sending a wire without the IRC number can delay the wire, or the receiving bank may return the wire when this number is not included in the payment instructions, and additional fees may be assessed.

3. **International Bank Account Number (IBAN):** The IBAN varies by country/institution. Warning! Only the bank servicing an account can provide the correct IBAN of that account and must be obtained from the beneficiary. Sending a wire to a participating country without the IBAN can delay the wire, or the receiving bank may return the wire when the IBAN is not included in the payment instructions, and additional fees may be assessed.

Customer Copy

WTR6603 (9-19 SVP)

EXHIBIT 3, PAGE 42

Participating Countries that require an IBAN:

For participating IBAN countries and their requirements, please search for the "IBAN REGISTRY" at swift.com. Once located, search the Table of Contents for the appropriate country, and locate the country-specific requirements.

4. **Indian Financial System Code (IFSC):** Every Indian bank has a unique eleven (11) character alpha numeric code identifying the bank branch to receive the wire transfer.  To ensure timely delivery, please be sure that international outgoing wires include the IFSC where applicable.

5. **Mexico CLABE Account Number:**  Mexican banks may require an 18 digit CLABE account number be added to the Beneficiary instructions to ensure payment. The CLABE number may be required on Mexican Peso (MXN) and USD payments sent to Mexico. The CLABE account number must be obtained from the beneficiary. Wells Fargo does not provide or calculate the CLABE. Sending a wire without a CLABE account number can delay the wire, or the receiving bank may return the wire if the CLABE is not included in the payment instructions, and additional fees may be assessed.

6. **Wells Fargo recommends** that if you do not have a SWIFT BIC, IBAN, IRC, IFSC or Mexican CLABE number, that you contact the beneficiary of the wire.  If the beneficiary does not have the needed information, please have the beneficiary contact their bank to obtain the appropriate information. Sending International wires without the required information can cause the wire to be delayed, returned, or assessed additional fees. For International outgoing wires only:  When sending in foreign currency, please ensure the beneficiary's account accepts the designated foreign currency.

Customer Copy

WTR6603 (9-19 SVP)

**EXHIBIT 4**

RECORDING REQUESTED BY:

**CALIFORNIA TD SPECIALISTS**
Attn: Teri Snyder

WHEN RECORDED MAIL TO:

**CALIFORNIA TD SPECIALISTS**
Attn: Teri Snyder
**8190 EAST KAISER BLVD.**
**ANAHEIM HILLS, CA 92808**

Title Order No.: 05940776
APN: 700-0-260-065

Trustee Sale No.: 84354

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY
Loan No.: 399137076

# NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED <u>11/23/2016</u>. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On <u>5/13/2020</u>  at  <u>11:00 AM</u>,   **CALIFORNIA TD SPECIALISTS, AS TRUSTEE** as the duly appointed Trustee under and pursuant to Deed of Trust recorded on <u>12/1/2016</u> as Instrument No. **20161201-00178192-0** in book **N/A**, page **N/A** of official records in the Office of the Recorder of <u>Ventura</u> County, California, executed by:

BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS

, as Trustor

GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION

, as Beneficiary

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (**payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state).  **At:** At the Main front entrance to the County Government Center Hall of Justice located at 800 South Victoria Avenue, Ventura, CA 93003,

1





EXHIBIT 4, PAGE 44

**Title Order No.:**      05940776
**Trustee Sale No.:**     84354
**Loan No.:**             399137076
**APN:**                  700-0-260-065

### NOTICE OF TRUSTEE'S SALE - continued

**all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein:**  As more fully described on said Deed of Trust.

**The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be:**    11802 ELLICE STREET
MALIBU, CA 90265 .

**The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:**

$3,330,218.98  **(Estimated)**
Accrued interest and additional advances, if any, will increase this figure prior to sale.

**The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.**

**DATE:**  4/16/2020

CALIFORNIA TD SPECIALISTS, AS TRUSTEE, as Trustee
8190 EAST KAISER BLVD., ANAHEIM HILLS, CA  92808
PHONE: 714-283-2180
**FOR TRUSTEE SALE INFORMATION LOG ON TO:** www.stoxposting.com
**CALL:** 844-477-7869

PATRICIO S. INCE', VICE PRESIDENT

**CALIFORNIA TD SPECIALISTS IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

EXHIBIT 4, PAGE 45

| Title Order No.: | 05940776 |
| Trustee Sale No.: | 84354 |
| Loan No.: | 399137076 |
| APN: | 700-0-260-065 |

"**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid on a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of the outstanding lien that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and if applicable, the rescheduled time and date for the sale of this property, you may call 844-477-7869, or visit this Internet Web site www.stoxposting.com, using the file number assigned to this case T.S.# 84354. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale."



3

EXHIBIT 4, PAGE 46

3

P.O. Box 23159
San Diego, CA 92193-3159

IMPORTANT INFORMATION
ENCLOSED



71 96900 2484 0618 0443 6

| Mailed On: | 4/17/2020 |
| Mailing Number: | 0017594-01 |
| Reference Number: | 84354 |

ClientID:  CalTD000341  CE

Helena  Deeds
C/O Dariush G. Adli, Ben Jakovljevic
Adli Law Group, P.C.
444 South Flower St., Suite 3100
Los Angeles, CA  90071

 GenericAddressInsert.doc

Rev. 07/21/2010

EXHIBIT 4, PAGE 47

**EXHIBIT 5**

# Sandro Dazzan

## THE AGENCY, MANAGING PARTNER, MALIBU

424.249.7040
sandro@theagencyre.com

One of Malibu's top agents, Sandro Dazzan joins The Agency as Managing Partner of the Malibu office. Having previously served on the top-producing real estate team at Coldwell Banker Malibu Colony, Sandro has closed over $1 billion in career sales, including Malibu's highest residential sale in 2011 and highest land sale in history.

His rapid path to success caught the attention of Forbes, which featured him on its prestigious "30 Under 30" list. One of those rare individuals who can say he was born and raised in Malibu, among the most coveted addresses on earth, Sandro watched his mother's real estate business flourish from a young age.

After obtaining his bachelor's degree in economics from UCLA in 2005, Sandro made a decision that would change the course of his career, passing up an opportunity to work as an investment banker at Morgan Stanley to join the family business of real estate.

Thirteen years later, Sandro finds great fulfillment in helping buyers and sellers reach their real estate goals in the city he is proud to call home. Known for his intimate local knowledge, easygoing nature and strong grasp of technology, Sandro is a skilled negotiator and natural networker, constantly meeting new people in and around Malibu, which often leads to new listing opportunities. Sandro's clients directly benefit from his level of involvement in, and passion for, the Malibu community, along with his ever-expanding professional network.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): STATUS REPORT will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 18, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **May 18, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| **DEBTOR** | **PRESIDING JUDGE'S COPY** | **U.S. TRUSTEE (ND)** |
|---|---|---|
| BRIGHAM G. FIELD | HONORABLE DEBORAH J. SALTZMAN. | UNITED STATES TRUSTEE (ND) |
| 11802 ELLICE STREET | U. S. BANKRUPTCY COURT – ROYBAL | 915 WILSHIRE BLVD, SUITE 1850 |
| MALIBU, CA 90265-2494 | FEDERAL BUILDING | LOS ANGELES, CA 90017-3560 |
| | 255 E. TEMPLE STREET, SUITE 1634 / | |
| | COURTROOM 1639 | |
| | LOS ANGELES, CA  90012 | |

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 18, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**[PURSUANT TO AMENDED GENERAL ORDER 20-02,
COURTESY COPIES WILL BE DELIVERED BY MAIL IF PLEADING IS OVER <u>25</u> PAGES.]**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 18, 2020 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR U.S. TRUSTEE (ND):** Brian D Fittipaldi brian.fittipaldi@usdoj.gov
   - **ATTORNEY FOR CREDITOR BANC OF CALIFORNIA, NATIONAL ASSOCIATION:** Daniel K Fujimoto wdk@wolffirm.com
   - **ATTORNEY FOR DEBTOR BRIGHAM G. FIELD:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR HELENA DEEDS:** Andrew C Jhun ajhun@tuchmanlaw.net
   - **ATTORNEY FOR CREDITOR BANC OF CALIFORNIA, NATIONAL ASSOCIATION:** Robert S McWhorter rmcwhorter@buchalter.com, wreinig@buchalter.com;asmith@buchalter.com
   - **ATTORNEY FOR CREDITOR BMW BANK OF NORTH AMERICA, C/O AIS PORTFOLIO SERVICES, LP:** Ambrish B Patel apatelEl@americaninfosource.com
   - **UNITED STATES TRUSTEE (ND):** United States Trustee (ND) ustpregion16.nd.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**: CONTINUED:

**20 LARGEST CREDITOR**
ALL PRO POOL AND SPA
P.O. BOX 6235
WESTLAKE VILLAGE, CA 91359-6235

**20 LARGEST CREDITOR**
BANK OF AMERICA
555 CALIFORNIA STREET
SAN FRANCISCO, CA 94104-1690

**20 LARGEST CREDITOR**
BIRD MARELLA BOXER WOLPERT NESSIM
1875 CENTURY PARK E #2300
LOS ANGELES, CA 90067-2524

**20 LARGEST CREDITOR**
BRAD COOK
555 CORPORATE DRIVE SOUTH
SUITE 120
LADERA RANCH, CA 92694-2176

**20 LARGEST CREDITOR**
CITIBANK
P.O. BOX 6500
SIOUX FALLS, SD 57117-6500

**20 LARGEST CREDITOR**
DECOTIIS, FITZPATRICK & COLE, LLP
80 RED SCHOOLHOUSE ROAD
SUITE 110
SPRING VALLEY, NY 10977-7052

**20 LARGEST CREDITOR**
DEPARTMENT OF THE TREASURY - IRS
P.O. BOX 9002
HOLTSVILLE, NY 11742

**20 LARGEST CREDITOR**
DISCOVER
P.O. BOX 6103
CAROL STREAM, IL 60197-6103

**20 LARGEST CREDITOR**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION, MS:A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

**20 LARGEST CREDITOR**
HELENA DEEDS
31844 SEAFIELD DRIVE
MALIBU, CA 90265-2637

**20 LARGEST CREDITOR**
SEMLER COMPANIES/MALIBU
32111 MULHOLLAND HWY
RAMONA, CA 92065

**20 LARGEST CREDITOR**
SPECTRUM INTERNET
400 ATLANTIC STREET
10TH FLOOR
STAMFORD, CT 06901-3512

**20 LARGEST CREDITOR**
STEVEN HINTZ, TREASURER-TAX COLLECT
800 SOUTH VICTOR AVENUE
VENTURA, CA 93009-1300

**20 LARGEST CREDITOR**
STONE/DEAN LLP
21600 OXNARD STREET
SUITE 200
WOODLAND HILLS, CA 91367-4971

**20 LARGEST CREDITOR**
WARMBLOOD INC.
555 CORPORATE DRIVE
SUITE 120
LADERA RANCH, CA 92694-2176

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**20 LARGEST CREDITOR**
WELLS FARGO BANK
420 MONTGOMERY STREET
SAN FRANCISCO, CA 94104-1298

**20 LARGEST CREDITOR**
INTERNAL REVENUE SERVICE
PO BOX 7346
PHILADELPHIA, PA 19101-7346

**20 LARGEST CREDITOR**
CIVIL PROCESS CLERK
UNITED STATES ATTORNEY'S
OFFICE
FEDEARL BUILDING, ROOM 7516
300 NORTH LOS ANGELES STREET
LOS ANGELES, CA 90012

**20 LARGEST CREDITOR**
ATTORNEY GENERAL
UNITED STATES DEPARTMENT
OF JUSTICE
BEN FRANKLIN STATION
PO BOX 683
WASHINGTON, DC 20044

**CREDITOR**
BANC OF CALIFORNIA, NATIONAL
ASSOCIATION
ROBERT S. MCWHORTER & JARRETT
S. OSBORNE-REVIS
BUCHALTER, A PROFESSIONAL
CORPORATION
500 CAPITOL MALL, SUITE 19800
SACRAMENTO, CA 95814

**CREDITOR**
BMW BANK OF NORTH AMERICA
DEPARTMENT
AIS PORTFOLIO SERVICES, LP
ACCOUNT: XXXXXX5244
4515 N SANTA FE AVE. DEPT. APS
OKLAHOMA CITY, OK 73118

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**