1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Proposed Attorneys for Debtor and Debtor-in-
   Possession BRIGHAM G. FIELD
7

8           UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

10

11  In re                                Case No. 9:20-bk-10622-DS

12  BRIGHAM G. FIELD,                    Chapter 11

13                                       APPLICATION BY DEBTOR TO
                                         EMPLOY REAL ESTATE AGENT;
14           Debtor.                     DECLARATION OF SANDRO DAZZAN
                                         IN SUPPORT
15
                                         [NO HEARING REQUIRED PURSUANT
16                                       TO RULE 9013-1(o)]

17  TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY COURT

18  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

19  PARTIES:

20          Debtor-in-Possession, BRIGHAM G. FIELD ("Debtor"), files this application for

21  authorization to employ Sandro Dazzan of The Agency as the Estate's real estate agent ("Agent") in

22  this bankruptcy case ("Application"). In support, Debtor respectfully represents as follows:

23  **1.      Summary of this Chapter 11 case**

24          The purpose of Chapter 11 is to allow a debtor to reorganize his financial affairs which may

25  include the liquidation of property to pay creditors. In this case, Debtor is an owner of a custom

26  home located in Malibu on a bluff overlooking the ocean. The home was purchased in 2013 for $16

27  million. Secured claims currently total approximately $12 million. If sold at market value, Debtor

28  believes there is a strong possibility that all secured and unsecured creditors will be paid in full. The

4845-3836-7676, v. 1

bankruptcy was filed to avoid the irreparable harm that would occur from a scheduled foreclosure sale and to realize this equity for the benefit of creditors. Debtor thus seeks court approval to retain the Agent to immediately list the Property for sale.

## 2.    Background

In 2013, Debtor and his non-debtor spouse, Colette Pelissier ("Ms. Pelissier"), purchased the property located at 11802 Ellice Street, Malibu, California ("Property") for $16 million. Currently, there are three significant liens against the Property: (1) first deed of trust in the approximate amount of $9 million in favor of Banc of California; (2) a second deed of trust in the original amount $2.5 million in favor of Genova Capital Inc. ("Genova"); and a $500,000 abstract of judgment recorded against the Property.

Debtor and Ms. Pelissier have a long and contentious history with Genova (the lender currently foreclosing) including, but not limited to, various loans that are cross-collateralized with Debtor's and Ms. Pelissier's business operations. Ms. Pelissier's business operations include the production and distribution of adult entertainment through Malibu Holdings LLC. Debtor has not owned or held any interest in Malibu Holdings LLC or its affiliates since March 2016.

In November 2019, the Superior Court for the State of California, County of Ventura ("State Court") issued a decision overturning a previous foreclosure of the Property by Genova. This decision reinstated Debtor's and Ms. Pelissier's right of possession and liquidated Genova's claim secured by the lien that had been foreclosed at $160,000 ("November 2019 State Court Decision"). A true and correct copy of the November 2019 State Court Decision is attached here as Exhibit "2."

In its decision, the State Court found that the value of the Property was between $15-$18 million subject to liens totaling approximately $12 million. *Id.*, pg. 35. As such, given the communications that were taking place with Genova on the eve of the foreclosure, the State Court found that the $160,000:

> . . . purchase price of the subject property was grossly inadequate, upholding the foreclosure sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a procedural irregularity within the meaning of the [cited case law].
> . . .
> The court finds that the purchase price at the non-judicial foreclosure sale of the subject property was grossly inadequate and that an injustice would result to enforce said sale and evict the Defendants.

APPLICATION TO EMPLOY REAL ESTATE AGENT

1   *Id.*, pg. 35.

2       The State Court granted possession to Debtor and his non-debtor spouse conditioned upon

3   payment in full of the underlying note obligations. *Id.*, pg. 36. The underlying note obligation was in

4   fact paid to Genova, and possession and title was reverted back to the Debtor and his non-debtor

5   spouse.

6       Separately, defaults occurred on Genova's note secured by the second-in-priority deed of

7   trust. As a result, it commenced new foreclosure proceedings. In April 2019, Genova published a

8   notice of trustee's sale for May 13, 2020, at 11:00 a.m. ("Sale Notice"). Rather than let the millions

9   of dollars of equity be lost to foreclosure, Debtor filed this Chapter 11 case on May 12, 2020, to

10  conduct an orderly sale of the Property for the benefit of funding payments to creditors.

11  **3.    Services to be Performed**

12      In order to market the Property most effectively, and thereby to liquidate the same for the

13  best and highest price, Debtor has solicited the assistance of Agent, a licensed real estate agent.

14  Agent, on behalf of Debtor, has examined the information related to the Property and has agreed to

15  advertise the Property at the Agent's expense, to show the Property to interested parties, to represent

16  the Estate as seller in connection with the sale of the Property, and to advise Debtor with respect to

17  obtaining the highest and best offers available in the present market. Based on the foregoing

18  agreement, Debtor desires to enter into listing agreement and addendum ("Listing Agreement"), in

19  substantially the form as attached to the Declaration of Sandro Dazzan ("Dazzan Declaration") as

20  Exhibit "1," to employ Sandro Dazzan of The Agency as the Estate's real estate agent to procure and

21  submit to Debtor offers to purchase the Property.

22  **4.    Compensation**

23      In consideration for such services, subject to further application and Court order, the Agent

24  will receive, upon consummation of a sale, a real estate agent's commission in an amount equal to

25  5.0% of the purchase price, provided that the Estate nets at least such like amount.

26      Agent has been informed and understands that no sale of the Property may be consummated

27  until after a notice to creditors with the opportunity for a hearing as well as a Court order.

28

3

APPLICATION TO EMPLOY REAL ESTATE AGENT

4845-3836-7676, v. 1

1       Agent is aware of the provisions of 11 U.S.C. § 328(a) and has agreed, notwithstanding the

2   proposed terms and conditions of employment, that the Court may allow compensation different

3   from what is being proposed if such terms and conditions prove to have been improvident in light of

4   developments unanticipated at the time of the fixing of such terms and conditions.

5   **5.      Firm's Connections and Associations and Disinterestedness**

6       To the best of Debtor's knowledge, and based upon the attached Dazzan Declaration, neither

7   the Agent nor any persons employed by The Agency has any connection with Debtor, creditors, or

8   any other party in interest, their respective attorneys, and accountants, the Judge of the Bankruptcy

9   Court, the Office of the United States Trustee, or any person employed by the Office of the United

10  States Trustee. Agent further does not hold or represent any interest adverse to that of Debtor or the

11  Estate and that Agent is a disinterested person within the meaning of 11 U.S.C. Section 101(14).

12  Debtor believes that employment of the Agent will be in the best interest of the bankruptcy Estate.

13  **6.      Conclusion**

14      Debtor requests that he be authorized to employ Sandro Dazzan of The Agency as the

15  Estate's real estate agent on the terms and conditions set forth in this application and the attached

16  Listing Agreement, that the Debtor be empowered to execute the Listing Agreement, and for such

17  other and further relief as is just.

18

19  DATED: May 18, 2020                    Respectfully submitted,

20

21                                         By: _____

22                                         BRIGHAM G. FIELD
                                           Debtor

23

24  DATED: May 18, 2020                    MARSHACK HAYS LLP

25                                             /s/ D. Edward Hays
                                           By: _____

26                                         D. EDWARD HAYS
                                           DAVID A. WOOD
27                                         Attorneys for BRIGHAM G. FIELD

28

APPLICATION TO EMPLOY REAL ESTATE AGENT

4845-3836-7676, v. 1

# **Declaration of Sandro Dazzan**

I, SANDRO DAZZAN, declare and state as follows:

1.      I am a licensed real estate agent and the managing partner of The Agency (the "Firm"), and maintain offices at _____Malibu_____, California _____; telephone 424-249-7040.

2.      I am familiar with the foregoing Application to Employ Real Estate Agent ("Application") and the property described therein located at 11802 Ellice Street, Malibu, CA 90265 (the "Property"), and believe that I am qualified to represent the Debtor and the Estate in connection with the marketing of the Property.  I am very familiar with the market for its sale.

3.      The Firm has extensive experience in residential and commercial real estate transactions.

4.      I have agreed to accept employment on the terms and conditions set forth in the Application and Listing Agreement for the sale of the Property. A true and correct copy of the Property Listing Agreement is attached hereto as Exhibit "1."

5.      In my experience, 5 % is a reasonable projection of the costs of sale, taking into account a 5% sales commission and 1% escrow, title and incidental costs.

6.      I have agreed and understand, notwithstanding the terms and conditions of employment set forth herein, that the Court may allow compensation different if such terms and conditions prove to have been improvident in light of developments unanticipated at the time of fixing such terms and conditions.

7.      The Firm is a "disinterested person" within the meaning of Bankruptcy Code Section 101(14). The Firm does not have an interest adverse to the Debtor or the Estate. As of the Petition Date, the Firm was not a creditor of the Estate and was not owed any funds by the Debtor.

8.      The Firm has no pre-petition claim against Debtor's Estate.

9.      To the best of my knowledge, the Firm has no connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee.

APPLICATION TO EMPLOY REAL ESTATE AGENT

4845-3836-7676, v. 1

10.     To the best of my knowledge, the Firm has no relation to any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

11.     The Firm has not received a retainer for the services to be performed herein.

12.     The Firm understands that its compensation in this case is subject to approval of this Court pursuant to 11 U.S.C. § 328.

13.     To the best of my knowledge, I represent no interest which would be adverse to this Estate or its creditors or any party in interest in this proceeding and I am a "disinterested person" as the term is defined in Bankruptcy Code Section 101(14).

14.     A true and correct copy of the November 2019 State Court Decision is attached here as Exhibit "2."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  May  19 , 2020, at  Malibu , California.


_Sandro Dazzan_
SANDRO DAZZAN

7
APPLICATION TO EMPLOY REAL ESTATE AGENT

**EXHIBIT 1**





# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
**(Seller's Brokerage Firm to Seller)**
**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 12/18)**

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

| ☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant | *Brigham Field* | Brigham Field | Date 5/14/2020 | 5:14 PM PDT |
|---|---|---|---|---|
| ☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant | *Colette Pelissier* | Colette Pelissier | Date 5/14/2020 | 5:18 PM PDT |

Agent  **The Agency**  DRE Lic. # **01904054**

Real Estate Broker (Firm)

By  *Sandro Dazzan*  DRE Lic. # **01418033**  Date 5/14/2020 | 5:55 PM PDT
   (Salesperson or Broker-Associate, if any)  **Sandro Dazzan**

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

EXHIBIT 1, PAGE 7

**CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.**(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17**(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm ___ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent ___ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm ___ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent ___ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 **(a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers.  Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _Brigham Field_ | Brigham Field | Date 5/14/2020 \| 5:14 |
| Seller _Colette Pelissier_ | Colette Pelissier Field | Date 5/14/2020 \| 5:18 |
| Buyer _____ | | Date _____ |
| Buyer _____ | | Date _____ |
| Buyer's Brokerage Firm _____ | DRE Lic # _____ | Date _____ |
| By _____ | DRE Lic # _____ | Date _____ |
| Seller's Brokerage Firm _The Agency_ | DRE Lic # _01904054_ | Date _____ |
| By _Sandro Dazzan_ | DRE Lic # _01418033_ | Date 5/14/2020 \| 5:55 P |
| _Sandro Dazzan_ | | |

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**PRBS REVISED 12/18 (PAGE 1 OF 1)**
## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

EXHIBIT 1, PAGE 9



# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
### (C.A.R. Form WFA, Revised 12/17)



Property Address: **11802 Ellice St, Malibu, CA  90265-2494** _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts.  Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks.**
**By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant | _____ | Date _____ |
| Buyer/Tenant | _____ | Date _____ |
| Seller/Landlord | *Brigham Field*                     Brigham Field | Date 5/14/2020  \|  5:14 PM |
| Seller/Landlord | *Colette Pelissier*              Colette Pelissier Field | Date 5/14/2020  \|  5:18 PM |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**WFA REVISED 12/17 (PAGE 1 OF 1)**
**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

EXHIBIT 1, PAGE 10



CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/19)



Date Prepared: _05/14/2020_

1. **EXCLUSIVE RIGHT TO SELL:** _____ Brigham Field, Colette Pelissier Field _____ ("Seller")
hereby employs and grants _____ **The Agency** _____ ("Broker")
beginning (date) ____ **May 14, 2020** ____ and ending at 11:59 P.M. on (date) ____ **November 13, 2020** ____ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as **11802 Ellice St**
_____, situated in ____ **Malibu** ____ (City),
_____ (County), California, **90265-2494** (Zip Code), Assessor's Parcel No. **700-0-260-065** ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
    **A.** The listing price shall be: **Seventeen Million, Nine Hundred Thousand**
    _____ Dollars ($ **17,900,000.00** ).
    **B.** Listing Terms: _____

3. **COMPENSATION TO BROKER:**
    **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
    **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ __5.000__ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
    AND _____, as follows:
        **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
    **OR (2)** If within __180__ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
    **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
    **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Broker collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
    **C.** In addition, Seller agrees to pay Broker: _____.
    **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
        **(1)** Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ __2.500__ percent of the purchase price, or ☐ $ _____.
        **(2)** Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
    **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
    **F.** **(1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.
        **(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____

        **(3)** If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2019, California Association of REALTORS®, Inc.
**RLA REVISED 12/19 (PAGE 1 OF 5)**                  Seller's Initials ( _BF_ ) ( _CPF_ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

The Agency - Malibu, 22601 Pacific Coast Highway #103 Malibu CA 90265          Phone: (424) 230-3700          Fax:          11802 Ellice St
Sandro Dazzan                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

EXHIBIT 1, PAGE 11

Property Address: **11802 Ellice St, Malibu, CA  90265-2494**                                   Date: **05/14/2020**

**4. A. ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   **ADDITIONAL ITEMS EXCLUDED:** _____ .
   **ADDITIONAL ITEMS INCLUDED:** _____
   Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.
   **B. (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
   ☐ Solar power system     ☐ Alarm system     ☐ Propane tank     ☐ Water Softener
   ☐ Other _____
   **(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
   ☐ Solar power system     ☐ Windows or doors     ☐ Heating/Ventilation/Air conditioning system
   ☐ Other _____
   Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5. MULTIPLE LISTING SERVICE:**
   **A.** Broker is a participant/subscriber to _____ *CLAW* _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( __*BT*__ )( __*CPF*__ )          Broker's/Agent's Initials ( __*SD*__ )( _____ )

---

Seller's Initials ( __*BT*__ ) ( __*CPF*__ )

**RLA REVISED 12/19 (PAGE 2 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                11802 Ellice St

**EXHIBIT 1, PAGE 12**

Property Address: **11802 Ellice St, Malibu, CA  90265-2494**

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☒ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**(1) Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**(2) Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

**(a) Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

**(b) Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**6.  SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7.  BROKER'S AND SELLER'S DUTIES:**

**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**C.** Investigations and Reports: Seller agrees, within 5 (or____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control  ☐ General Property Inspection  ☐ Homeowners Association Documents ☐ Other _____.

**D.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8.  DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9.  AGENCY RELATIONSHIPS:**

**A. Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B. Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

**C. Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Seller's Initials ( _BF_ ) ( _CPF_ )

**RLA REVISED 12/19 (PAGE 3 OF 5)**    

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    **11802 Ellice St**

EXHIBIT 1, PAGE 13

Property Address: **11802 Ellice St, Malibu, CA  90265-2494**

   D. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

   E. **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**

   A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or [ ] if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

   B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) [ ] Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked [X] does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked [ ] does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** [ ] REO Advisory Listing (C.A.R. Form REOL) [ ] Short Sale Information and Advisory (C.A.R. Form SSIA)
   [ ] Trust Advisory (C.A.R. Form TA)
   [ ] Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____
_____
_____
_____
_____

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** after its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**

   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an

Seller's Initials ( _GT_ ) ( _UF_ )

**RLA REVISED 12/19 (PAGE 4 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          **11802 Ellice St**

EXHIBIT 1, PAGE 14

Property Address: *11802 Ellice St, Malibu, CA  90265-2494*

action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

**B.** **ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.**

**C.** **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _____
_____.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing  already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _*Brigham Field*_____    Brigham Field   Date _5/14/2020 | 5:14_ PM PDT

Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail fieldlist@gmail.com

Seller _*Colette Pelissier*_____   Colette Pelissier Field  Date _5/14/2020 | 5:18_ PM PDT

Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail thecoletteshow88@gmail.com

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *The Agency*_____ DRE Lic. # *01904054*_____
Address *22601 Pacific Coast Hwy, #103*_____ City *Malibu*_____ State *CA*____ Zip *90265*_____

By _*Sandro Dazzan*_____ Tel.*(424)249-7040*_ E-mail *sandro@theagencyre.com* DRE Lic.# *01418033*_ Date_5/14/2020 | 5:55_
   *Sandro Dazzan*

By _____ Tel._____ E-mail _____ DRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2019 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 12/19 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        **11802 Ellice St**

EXHIBIT 1, PAGE 15



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)



Property Address: **_11802 Ellice St, Malibu, CA  90265-2494_** _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      **(3)** If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      **(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.                        Seller's Initials ( _B7_ ) ( _CPF_ )

**SA REVISED 12/15 (PAGE 1 OF 2)**



**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

EXHIBIT 1, PAGE 16

Property Address: **_11802 Ellice St, Malibu, CA  90265-2494_**                                    Date: **_05/14/2020_**

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

**A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:** _____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller __ _____ Brigham Field_ Date  5/14/2020  |  5:14 PM F
Print Name _____

Seller _Colette Pelissier_ _____ Colette Pelissier Field_ Date  5/14/2020  |  5:18 PM F
Print Name _____

Real Estate Broker (Listing Firm) **The Agency**                    DRE Lic.#: **01904054**
By _Sandro Dazzan_ _____ **Sandro Dazzan** DRE Lic.# **01418033**  Date 5/14/2020 | 5:55 PM PDT
By _____ DRE Lic.# _____ Date _____
Address **22601 Pacific Coast Hwy, #103** _____ City **Malibu** _____ State **CA** ____ Zip **90265**
Telephone **(424)249-7040** _____ Fax _____ E-mail **sandro@theagencyre.com**

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SA REVISED 12/15 (PAGE 2 OF 2)**

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

EXHIBIT 1, PAGE 17



**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY**
(C.A.R. Form CCPA, 12/19)



As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant _Brigham Field_                    Brigham Field       Date _5/14/2020 | 5:14 PM PDT_

Buyer/Seller/Landlord/Tenant _Colette Pelissier_               Colette Pelissier Field   Date _5/14/2020 | 5:18 PM PDT_

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**CCPA 12/19 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

EXHIBIT 1, PAGE 18



**SELLER INSTRUCTION TO EXCLUDE LISTING
FROM THE MULTIPLE LISTING SERVICE
AND DAYS ON MARKET**
(C.A.R. Form SELM, Revised 12/19)



This is an addendum ("Addendum") to the Listing Agreement or ☐ Other _____ ("Agreement")
dated _05/14/2020_ on property known as    _11802 Ellice St, Malibu, CA  90265-2494_    ("Property"),
in which _____Brigham Field, Colette Pelissier Field_____ is referred to as Seller
and _____*The Agency*_____ is referred to as Broker.

1. **MULTIPLE LISTING SERVICE:** Broker is a participant/subscriber to the _____*CLAW*_____ Multiple Listing Service (MLS). The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS or a reciprocal MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's Property is offered for sale.

2. **MANDATORY SUBMISSION TO MLS:** The MLS generally requires brokers participating in the service to submit all exclusive right to sell and exclusive agency listings for residential real property or vacant lots to the MLS within **2 (or ☐ _____ )** Days of obtaining all necessary signatures of the seller(s) on the listing agreement unless Broker submits to the MLS an instruction signed by Seller (such as this form or a local equivalent form) excluding the listing from the MLS.

3. **EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers who are participants or subscribers to the MLS, or a reciprocal MLS, and potential buyer clients of those agents and brokers. The MLS may further transmit the MLS database to Internet sites that post property listings online.

4. **CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** The MLS provides broad exposure for a listed property. Closed or private listing clubs or groups are not the same as the MLS: They are accessible to a much more limited number of licensees and provide less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the seller's listing.

5. **IMPACT OF EXCLUSION OF PROPERTY FROM MLS:** If Property is excluded from the MLS, Seller understands and acknowledges that: **(a)** real estate agents and brokers from other real estate offices who have access to that MLS, and their buyer clients, may not be aware that Seller's Property is offered for sale; **(b)** information about Seller's Property will not be transmitted to various real estate Internet sites used by the public to search for property listings; and **(c)** real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

6. **IMPACT/REDUCTION OF EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers made and negatively impact the sales price.

7. **(DOM) DAYS ON MARKET or DAYS ON MLS:**
   A. The number of days an unsold property remains either on market or on MLS, may affect the perception of how desirable the property is to real estate agents and buyers.
   B. Many MLS's use the term DOM to mean Days on Market, while others use the acronym to mean Days on MLS. As a general rule, if DOM means Days on Market, the first Day on Market will be the beginning date of the Listing Agreement, which is either the beginning date identified on the Agreement, or the date of the last signature required to make the Agreement valid, whichever is later. DOM may alternatively begin later than the effective date of the Listing Agreement as long as NO MARKETING of the Property occurs prior to that date. Marketing is any communication made to the public containing any information, details, price or terms of any potential sale of the Property, or any communication made to the public with regard to the Brokerage firm or Agent's representation of the Seller. Marketing includes, but is not limited to: Placing a sign on the Property, Internet Website posts, Social Media posts, Flyers or Advertising, and Open Houses.
   Where DOM means Days on MLS, it's possible that marketing time prior to submission to the MLS might not be measured on the MLS. Calculating DOM will differ depending on the MLS.
   C. **On Market Date.** Many MLSs treat the date the Listing is submitted to the MLS or, the date marketing begins, whichever is earlier, as the "on market date" for the purpose of calculating the DOM.
   D. You should talk to your real estate broker or agent about the meaning of DOM and On Market Date and how they might affect the sale of your Property.

© 2019, California Association of REALTORS®, Inc.

**SELM REVISED 12/19 (PAGE 1 OF 2)**



**SELLER INSTRUCTION TO EXCLUDE LISTING FROM MLS (SELM PAGE 1 OF 2)**

**EXHIBIT 1, PAGE 19**

8. **SELLER OPT-OUT:** Seller certifies that Seller understands the implications of not submitting Property to the MLS and instructs Broker as follows (Check one):

A. [X] Market Property immediately but **DO NOT** submit Listing to the MLS for a period of ____ calendar days from the commencement of the listing or until *Seller instructs Broker* (date).

B. [ ] Market Property immediately but **DO NOT** submit Listing to the MLS during the entire listing period provided for in the Agreement.

C. [ ] **DO NOT** Market the Property immediately. Begin marketing the Property on _____ (date). Submit Listing to the MLS on _____ (date).

---

9. [ ] **MLS CLEAR COOPERATION POLICY:**

A. **The MLS to which Broker belongs has adopted a rule that requires all listings be submitted to the MLS within one business day after marketing a property to the public.** Public marketing includes flyers displayed in windows, yard signs, digital marketing on public facing websites, brokerage website displays, email blasts, multi-brokerage listing sharing networks, and applications available to the general public. Public marketing does not include an office exclusive listing where there is direct promotion of the listing between the brokers and licensees affiliated with the listing brokerage, and one-to-one promotion between these licensees and their clients.

B. Under these circumstances, keeping the Property off the MLS means that **(i)** no public marketing will occur and **(ii)** the scope of marketing that will occur will consist only of direct one-on-one promotion between the brokers and licensees affiliated with the listing brokerage and their respective clients. By checking paragraph 9 and signing below, **(i)** Seller understands the implication of not submitting Property to the MLS is that any marketing of the property will be limited to the exposure offered by office exclusives and **(ii)** Seller nonetheless instructs Broker to exclude the listing from the MLS for the period of time specified in paragraph 8. Should any public marketing commence, seller understands and agrees that the listing will be submitted to the MLS within one business day.

C. **If this paragraph 9 is checked, it supersedes any contrary information specified in paragraphs 2 or 7 or any contrary instruction specified in paragraph 8.**

---

10. In all cases specified in 8 or 9 above, the Property may be submitted to MLS sooner than specified if authorized in writing by Seller.

**By signing below, Seller acknowledges that Seller has read, understands, accepts and has received a copy of this Addendum.**

| | | | |
|---|---|---|---|
| Seller *Brigham Field* | | Brigham Field | Date 5/14/2020 \| 5:14 P |
| Address | City | State | Zip |
| Telephone | Fax | E-mail fieldlist@gmail.com | |
| Seller *Colette Pelissier* | | Colette Pelissier Field | Date 5/14/2020 \| 5:18 P |
| Address | City | State | Zip |
| Telephone | Fax | E-mail thecoletteshow88@gmail.com | |

Real Estate Broker (Firm) _____ *The Agency* _____ DRE Lic. # *01904054*

By (Broker or Office Manager) _____ DRE Lic. # _____ Date _____

Address *22601 Pacific Coast Hwy, #103* ____ City *Malibu* ____ State *CA* Zip *90265*

Telephone *(424)249-7040* ____ Fax _____ E-mail _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the *CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SELM REVISED 12/19 (PAGE 2 OF 2)**

**SELLER INSTRUCTION TO EXCLUDE LISTING FROM MLS (SELM PAGE 2 OF 2)**



## Certificate Of Completion

Envelope Id: C8333708CC4B43B1B7C277479B66610B
Subject: Please DocuSign: _11802_ellice_stdocuments.pdf
Source Envelope:
Document Pages: 14
Certificate Pages: 2
AutoNav: Enabled
EnvelopeId Stamping: Disabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 18
Initials: 13

Status: Completed

Envelope Originator:
Sandro Dazzan
331 Foothill Road
Suite 100
Beverly Hills, CA  90210
sandro@theagencyre.com
IP Address: 47.157.178.162

## Record Tracking

Status: Original
          5/14/2020 5:00:39 PM

Holder: Sandro Dazzan
          sandro@theagencyre.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Brigham Field<br>fieldlist@gmail.com<br>Security Level: Email, Account Authentication (None) | *Brigham Field*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 72.207.173.2 | Sent: 5/14/2020 5:12:28 PM<br>Viewed: 5/14/2020 5:13:28 PM<br>Signed: 5/14/2020 5:14:05 PM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |
| Colette Pelissier<br>thecoletteshow88@gmail.com<br>Security Level: Email, Account Authentication (None) | *Colette Pelissier*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 72.207.173.2<br>Signed using mobile | Sent: 5/14/2020 5:12:28 PM<br>Viewed: 5/14/2020 5:16:23 PM<br>Signed: 5/14/2020 5:18:50 PM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |
| Sandro Dazzan<br>sandro@theagencyre.com<br>Managing Partner<br>The Agency<br>Security Level: Email, Account Authentication (None) | *Sandro Dazzan*<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 76.87.248.127<br>Signed using mobile | Sent: 5/14/2020 5:12:27 PM<br>Viewed: 5/14/2020 5:54:44 PM<br>Signed: 5/14/2020 5:55:06 PM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

EXHIBIT 1, PAGE 21

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Magdalena Castanedafieldlist@gmail.com<br>magdalena@theagencyre.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | COPIED | Sent: 5/14/2020 5:55:12 PM<br>Viewed: 5/14/2020 6:00:29 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/14/2020 5:55:13 PM |
| Certified Delivered | Security Checked | 5/14/2020 5:55:13 PM |
| Signing Complete | Security Checked | 5/14/2020 5:55:13 PM |
| Completed | Security Checked | 5/14/2020 5:55:13 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

EXHIBIT 1, PAGE 22

## ADDENDUM TO
## EXCLUSIVE AUTHORIZATION AND RIGHT TO SELL

This Addendum to Exclusive Authorization and Right to Sell Agreement ("Agreement") is entered into by and between **Sandro Dazzan of The Agency** (hereinafter "Agent") and **Brigham G. Field, Debtor and Debtor-in-Possession, Case No. 9:20-bk-10622-DS**, pursuant to the following terms and conditions:

### RECITALS

WHEREAS:  **Brigham G. Field** ("Debtor") filed a Voluntary Petition under Chapter 11 of Title 11, United States Bankruptcy Code, on May 12, 2020, initiating **Case No. 9:20-bk-10622-DS,** in the United States Bankruptcy Court, Central District of California.

In reference to the residential real property (the "Property") located at 11802 Ellice Street, Malibu, CA 90265 (APN: 700-0-260-065):

The undersigned hereby agree to this addendum as follows:

1. The parties acknowledge that this listing agreement and any agreement relating to the Property is not binding (including the entering into of a purchase agreement) until Bankruptcy Court approval.  The parties acknowledge that the Bankruptcy Court may after approval of this agreement later reduce commissions agreed to.

2. Agent agrees to extensively market the Property through internet real estate websites and multiple listing services.

3. The Debtor shall have the right to sell the Property to anyone who, prior to the date of entering into this agreement, has expressed an interest in purchasing the Property, and Agent shall not be entitled to a commission on such a sale.

4. A commission is not earned until court approval of a purchase agreement is obtained and escrow is closed.

5. All disputes between Agent and Debtor or regarding sale of the Property shall be resolved in the U.S. Bankruptcy Court, Central District of California, Northern Division.

6. There shall be no claim by Agent for damages of any kind against **Brigham G. Field** or the **Law Offices of MARSHACK HAYS LLP**.  Any claim for damages by Agent as it relates to the listing or sale herein shall only be against the Bankruptcy Estate of **Brigham G. Field.**

/ / /

/ / /

7.      Agent agrees that any previous listing agreements with regard to this Property is
        Null & Void.


The within agreement, upon its execution of both parties, is herewith made an integral part of the
employment of Agent relating to the Property herein and the aforementioned Agreement of Sale.


**DATED:   May** 15 **, 2020**


**AGENT:**      _Sandro Dazzan_
              **Sandro Dazzan, Agent**


**DATED:  May** 15 **, 2020**

              _[signature]_
**Brigham G. Field, Debtor**


EXHIBIT 1, PAGE 24

**EXHIBIT 2**

VENTURA
SUPERIOR COURT
**FILED**

NOV 19 2019

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____ Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF VENTURA**

| | |
|---|---|
| GENOVA CAPITAL INC., A CALIFORNIA CORPORATION, | ) Case No. 56-2019-00532526-CU-UD-VTA |
| Plaintiff, | ) |
| | ) **COURT'S STATEMENT OF DECISION** |
| vs. | ) **FOLLOWING COURT TRIAL** |
| | ) |
| BRIGHAM FIELD, COLETTE PELISSIER; ALL UNNAMED OCCUPANTS, TENANTS, AND SUBTENANTS; AND DOES 1-20, | ) |
| Defendants. | ) |

## BACKGROUND

The parties in this case waived jury on all issues and agreed to have the court determine

the "tender" issue first. [1] Any issues regarding alleged irregularities in the nonjudicial

foreclosure sale were to be litigated after the court decided the issue of "tender." Therefore, the

only issue addressed in the previously issued Statement of Decision was whether unconditional

"tender" was made by Defendants Field or Pelisser prior to the nonjudicial foreclosure sale. The

---

[1] *"MR. LANCASTER: We've met and conferred. We are both waiving jury trial for the case.
THE COURT: Okay. For all issues on the unlawful detainer case; is that correct?
MR. LANCASTER: Yes. And we want to proceed to try the tender, title issue first.
THE COURT: When we say "all issues," they would include, but be not limited to tender, title,
any alleged defects in the nonjudicial foreclosure sale, right?
MR. LANCASTER: Correct....
THE COURT: Okay. So any and all issues regarding the unlawful detainer matter, according to the
parties' agreement, will be tried by way of court trial and all parties have waived their right to a
jury trial on these issues."*
(R.T. from 9/16/19, pp. 30-31.)

-1-

parties dispute whether the resolution of the tender issue adversely to Defendants precludes further litigation of any alleged irregularities or equitable defenses. At the reconvened court trial, the court permitted the Defendants to introduce additional evidence on asserted equitable defenses and procedural irregularities of the sale.

Genova's claim of right to possession is based on a loan of $125,000.00 secured by a deed of trust signed by both Defendants encumbering the Subject Property (Exs. 1, 202.) The loan became due in full on June 30, 2017 (Ex. 1.) "When a trustor defaults on the obligation . . . [the beneficiary] can rely upon the power of sale in the deed of trust and pursue a private sale." (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1502.) Notice of Field's default under the note was given in writing on March 11, 2019, via email to Field and Pelissier, and Field acknowledged receipt of the email (Ex. 18, ¶2; 9/17 RT 61:16-19, 64:18-24.) Notice of Default under the deed of trust was recorded on April 15, 2019 (Ex. 205.) Notice of Trustee's Sale was recorded on June 18, 2019 (Ex. 206.) On August 14, 2019, Plaintiff made a full credit bid for the Subject Property, through the trustee, at the auction and ownership of the Subject Property was conveyed to Plaintiff. (Ex. 214; 9/19 111:23-112:26.)

"There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee. [Citation.] The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. [Citation.] . . . [¶] *Civil Code* sections 2924 through 2924k . . . govern nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813-814.) Under *Civil Code* 2924h, subdivision (b), the beneficiary under a deed of trust or its assignee is entitled to make a credit bid at the trustee's sale up to the amount of the debt owed. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8

-2-

Cal.App.5th 23, 45.)  To initiate the foreclosure process, '[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents' must first record a notice of default . . . . After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. [Citations.] [¶] The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11.)  The deed of trust granted to Genova in this case allowed Genova to proceed by nonjudicial foreclosure following the Defendants default. (*Civ. Code* § 2924 et seq.; see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830, 30 Cal. Rptr. 2d 777.)  The following evidence was introduced at trial:  the trustee's deed upon sale (Ex. 214), the notice of trustee's sale (Ex. 206), the notice of default (Ex. 205), the substitution of trustee (Ex. 204), and deed of trust (Ex. 202).

Written notice of the default was provided to both Defendants on March 11, 2019, via e-mail.  (Ex. 18 [paragraph 2 in evidence]; 9/17 RT 61:16-20, 64:23-24 .)  The email expressly stated that "this loan is 619 days past due" and that it has "a total amount owing of $146,198.62." (Ex. 18.)  Defendants argue that they did not actually receive the recorded notice of default, and only received the notice of trustee's sale.  (Def. Br. at 1.)  *Civil Code* sections 2924 through 2924k do not require actual receipt of any foreclosure notice by a borrower.  "*Civil Code* sections 2924–2924h, *do not require actual receipt by a trustor of a notice of default or notice of sale*.  They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent."  (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746–747 .)  Also, it is of no legal importance that the note was only signed by Field.  (*Civ. Code* §§2928, 2890.)  It is undisputed that both Field and Pelissier signed

EXHIBIT 2, PAGE 27

the deed of trust, which provided for the power of sale, and that the Subject Property was owned by both Field and Pelissier at the time they signed the deed of trust.  (9/17 RT 44:2-8 [Field: "Right. Okay. Page 34. This appears to be my signature; and to the best of my knowledge, this appears to be my wife's signature as well."]; *Id.* 44:17-21 [Field: "I put my initials on pages 1 through 33, and it appears that my wife did the same."]; Ex. 202, at 34 of 36; Answer ¶4.)

## LITIGABLE ISSUES IN AN UNLAWFUL DETAINER PROCEEDING FOLLOWING A NONJUDICIAL FORECLOSURE SALE

The primary issue in an unlawful detainer proceeding such as this one is the Plaintiff's right to possession. (*Old National Financial Services, Inc. v. Seibert, supra,* 194 Cal.App.3d at p. 465.)  But where, as here, the unlawful detainer action is brought pursuant to CCP section 1161a, subdivision (b)(3), title is also an issue. This section provides that an unlawful detainer action may be filed "[w]here the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3).)  Although issues concerning title are not litigable in a traditional landlord-tenant eviction under section 1161, they are litigable following a nonjudicial foreclosure sale under section 1161a:

> *" 'Historically a cause of action for unlawful detainer was available only to a landlord against his tenant.' " (Gross v. Superior Court (1985) 171 Cal.App.3d 265, 271 [217 Cal. Rptr. 284].) The remedy has been expanded by statute to additional categories of plaintiffs (see § 1161) and defendants (see § 1161a). The purpose of section 1161a was to make clear that one acquiring ownership through foreclosure could also evict by a summary procedure. (See Gross v. Superior Court, supra, 171 Cal.App.3d at p. 271.)*
>
> ***In an unlawful detainer action brought pursuant to section 1161a, subdivision (b)(3), the plaintiff must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" title.*** *(Evans v. Superior Court (1977) 67 Cal.App.3d 162, 169 [136 Cal.Rptr. 596]; see Stephens v. Hollis (1987) 196 Cal.App.3d 948, 952 [242 Cal.Rptr. 251].) "[W]here the*

-4-

*plaintiff in the unlawful detainer action is the purchaser at a trustee's sale, he or
she 'need only prove a sale in compliance with the statute and deed of trust,
followed by purchase at such sale, and the defendant may raise objections only on
that phase of the issue of title.'" (Old National Financial Services, Inc. v. Seibert
(1987) 194 Cal.App.3d 460, 465 [239 Cal.Rptr. 728], italics omitted.)* **"The
statute" with which a postforeclosure plaintiff must prove compliance is Civil
Code section 2924.** *(Seidell v. Anglo-California Trust Co. (1942) 55 Cal.App.2d
913, 920 [132 P.2d 12].)"*

(*The Bank of New York Mellon v. Preciado* (2013) 224 Cal.App.4th Supp. 1, 9
(Emphasis added.)

A plaintiff pursuing a postforeclosure action under section 1161a(b)(3) must "prove a

sale in compliance with the statute [*Civ. Code*, § 2924] and deed of trust, followed by purchase at

such sale." (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474; *Cheney v.

Trauzettel* (1937) 9 Cal.2d 158, 160, 69 P.2d 832; see also *Old National Financial Services, Inc.

v. Seibert* (1987) 194 Cal.App.3d 460, 465, 239 Cal. Rptr. 728.) "[A]n unlawful detainer action

must be brought to evict the trustor (§ 1161a, subd. (b)(3)). The purchaser must show that he/she

acquired the property at a regularly conducted sale in accordance with *Civil Code* section 2924

"and that title under such sale was duly perfected. [Citation.]" (*Lyons v. Santa Barbara County

Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1505 [181 Cal.Rptr.3d 186].)

### TENDER MUST BE UNCONDITIONAL AND ABSOLUTE IN ORDER TO FORESTALL A NONJUDICIAL FORECLOSURE

A debtor may forestall a foreclosure sale by tendering the amount owed.  The rules

applying to tender apply in the post-foreclosure unlawful detainer context when the defendant

seeks to challenge Plaintiff's title.  (*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972)

27 Cal.App.3d 170, 177 [post-foreclosure unlawful detainer case holding that "[D]efendant's

assertion of plaintiff's noncompliance with Civil Code section 2924 did not raise a triable issue

'because we do not find in the record any offer on the part of [defendant] to pay the full amount

of the debt for which the property was given as security.'"]; *Kartheiser v. Superior Court of Los Angeles County* (1959) 174 Cal.App.2d 617, 620 ["in *Bisno* v. *Sax* (Code Civ. Proc., §1908 subd. 2); one of the major issues in that case and in the unlawful detainer action is the sufficiency of the tender made by Bisno, an issue upon which Sax prevailed below."].)

Under *Civil Code* section 2924c, subdivision (a)(1), the trustor or mortgagor may satisfy a loan once foreclosure proceedings have begun by paying the entire amount due, including principal, interest, taxes, assessments, and costs incurred in enforcing the obligation—at any time before entry of the decree of foreclosure.  Defendants claim that they made a valid tender offer prior to the nonjudicial foreclosure sale.  In order for Defendants to prove their affirmative defense of tender, Defendants must show be a preponderance of the evidence that their alleged tenders were unconditional and absolute.  The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445–446 [129 Cal. Rptr. 2d 436].)

"A tender is an unconditional offer to perform an order to extinguish an obligation." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 783 [222 Cal.Rptr.3d 1, citing *Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [98 Cal.Rptr. 414].)  Merely stating one is ready, willing, and able to tender payment upon learning what is owed is insufficient tender where the notice of default informs debtor of a minimum amount owed and debtor tendered no payment of at least that amount. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra.)*  In *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, the court held that tender conditioned on the creditor relinquishing its claim to a prepayment premium on mortgage which was to be paid by the trustor only if the bankruptcy court determined creditor was entitled to claim the premium, was

-6-

not a valid tender.  It is a foundational principal in nonjudicial foreclosure law that in order to

redeem a property through a valid tender, that "the tender must be absolute," which has been the

law of California for over 150 years.  (*McMillan v. Richards* (1858) 9 Cal. 365, 405.)  "[A]

tender to be valid must be of full performance (Civ. Code, §1486), and it must be unconditional."

(*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [citing Civ. Code

§1494].)

      "[A] tender to be valid must be of full performance [citation], and it must be

unconditional." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385;

Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra, at p. 783; *Arnolds*

*Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15; *Wiener v. Van*

*Winkle* (1969) 273 Cal.App.2d 774, 782, 78 Cal.Rptr. 761 ["It is well established that a tender

must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a

refusal to perform"].)  Additionally, """where the rules [concerning tender] are prescribed by

statute . . . , the tender must be in such form as to comply therewith. The tenderer must do and

offer everything that is necessary on his part to complete the transaction, and must fairly make

known his purpose without ambiguity, and the act of tender must be such that it needs only

acceptance by the one to whom it is made to complete the transaction.""" (*Nguyen v. Calhoun*

(2003) 105 Cal.App.4th 428, 439, 129 Cal. Rptr. 2d 436.) "[I]t is a debtor's responsibility to

make an unambiguous tender of the entire amount due or else suffer the consequence that the

tender is of no effect." (Id. at p. 439.)

      Thus, a defendant's purported tender, filed simultaneously with a counterclaim, was held

insufficient where the defendant stated it was "willing to pay [plaintiffs] the amount of our

tender" and "if it turns out, after a trial, that we were entitled to a set off, we will seek from their

assets to get it back." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385.)

The defendant's offer in *Still* was "qualified and conditional by reason of the counterclaim."

(*Ibid.*) Similarly, a tender was held invalid where a defendant deposited funds in an escrow

account "pending entry of a final District Court order or judgment directing the escrow agent to

pay the tendered funds to [plaintiff] . . . and dismissing this action as moot." (See *Chen v.

Allstate Ins. Co.,* 819 F.3d at p. 1146.)

### TENDER, INADEQUACY OF PURCHASE PRICE & PROCEDURAL IRREGULARITES

This court stands by its Tentative and Proposed Statement of Decision which concluded

that the Defendants did not make a valid tender before the foreclosure sale.  However, the

additional text message exchange between Mr. Filed and Mr. Hunter introduced in the second

phase of the trial as exhibit 224, sheds further light on the negotiations between the parties.  On

August 13, the afternoon before the non-judicial foreclosure sale, Defendants were prepared to

drive to the trustee's office in Anaheim to pay the debt.  At 3:05 p.m., Hunter communicated to

Field in a manner which could reasonably lead Field to believe that the sale is being postponed

when he stated:  "I will email you the confirmation.  You will also be able to call and verify."

Thirty minutes later,   at 3:37 p.m., Hunter requests that Field sign a "simple term sheet" before

he postpones.  Recognizing how close the deadline is to paying off the loan, Field states: "What

will it say?  The TD guys are leaving at 5pm."  This and other exchanges between the parties'

leads the court to believe that absent these last minute negotiations on the afternoon prior to the

foreclosure sale, Defendants would have paid the loan off.  The fact that they were able to obtain

a cashier's check for the full indebtedness shortly after the foreclosure sale confirms funds were

available.

-8-

EXHIBIT 2, PAGE 32

The financial dealings between the parties was complex and involved much more than the note at issue. The parties were involved in good faith last minute negotiations regarding these complex matters. It is not as though Mr. Hunter was refusing to engage in last minute negotiations. In fact, it was Mr. Hunter on behalf of Plaintiff who was proposing a last minute alternative to foreclosure. This understandably delayed Defendants in paying off the note the day prior to the sale. The court does not believe that Mr. Hunter intentionally led the Defendants to believe a settlement was imminent in order to purchase the property at foreclosure. However, the effect of Mr. Hunter engaging in these last minute negotiations and sending a complex written counter offer, likely resulted in the Defendants not paying off the note on the day prior to the foreclosure sale. Under these circumstances, it would be unjust to remove the Defendants from the premises. Given that the Defendants had sufficient funds to pay the note off on the date of the judicial foreclosure sale, it makes no sense that they would allow their property to be foreclosed upon and thereby lose millions of dollars of equity. What makes sense is that they got caught up in last minute negotiations and time ran out to pay off the notre.

"Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062, 162 Cal. Rptr. 3d 382.) The parties dispute whether the above noted exceptions apply in an unlawful detainer proceeding as opposed to a quiet title action or unlimited case. There is some authority which suggests that inadequacy of purchase price coupled with procedural irregularity and/or unfairness can be raised in an unlawful detainer action. (*Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 266; *Harth v.*

-9-

*Baum* (1935) 7 Cal.App.2d 114, 116; *Whitman v. Transtate Title Co.* (1985) 165 Cal. App. 3d

312.)  Given the unique circumstances of this case, this court is persuaded that inadequacy of

purchase price coupled with procedural irregularity can be raised in this trial.

It is the general rule that a court has the power to vacate a foreclosure sale "where the

sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there

has been such a mistake that to allow it to stand would be inequitable to purchaser and parties."

(*Bank of America etc. v. Reidy* (1940) 15 Cal.2d 243, 248, 101 P.2d 77.)  But "mere inadequacy

of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made.

There must in addition be proof of some element of fraud, unfairness, or oppression before the

court will be justified in depriving the purchaser of his legal advantage. Where, however, the

price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness

or irregularity will suffice to authorize the granting of the relief." (*Sargent v. Shumaker* (1924)

193 Cal. 122, 129, 223 P. 464; *BFP v. Resolution Trust Corporation* (1994) 511 U.S. 531, 542,

114 S. Ct. 1757, 128 L. Ed. 2d 556 . . . ['[M]ere inadequacy of the foreclosure sale price is no

basis for setting the sale aside, though it may be set aside . . . if the price is so low as to "shock

the conscience or raise a presumption of fraud or unfairness."'].)  As recently stated by one court:

> *Inadequate price, even coupled with procedural irregularity, does not automatically
> render a trustee's sale subject to attack. "[M]ere inadequacy of price, absent some
> procedural irregularity that contributed to the inadequacy of price or otherwise injured
> the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" (6
> Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1284 [102 Cal.
> Rptr. 2d 711], italics added (6 Angels); see also Sargent v. Shumaker (1924) 193 Cal.
> 122, 129–130 [223 P. 464] [gross inadequacy in price must be coupled with unfairness
> or advantage " 'resulting in such gross inadequacy and consequent injury' " to
> borrower]; Crofoot v. Tarman (1957) 147 Cal. App. 2d 443, 446 [305 P.2d 56]
> [same].)"*

(*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93 [20 Cal.Rptr.3d 1].)

-10-

EXHIBIT 2, PAGE 34

At the foreclosure sale, Genova paid approximately $ 160,000.00 for the subject property which is valued between 14 million and 20 million dollars. Plaintiff presented evidence and argument that the property was worth 14 million despite the Defendants having purchased the property in 2013 for 16 million. Of course, liens on the property must be considered in determining what if any windfall equity Genova obtained. The only liens on the property are a $9 million first deed of trust, a $2.5 million second deed of trust, and a $500,000 abstract recorded against the property. Using the $14 million valuation offered by Plaintiffs, that leaves $2 million of equity in the property, rendering the purchase price a mere 8% of the value of the property. In *Whitman*, 175 Cal. at 276, the court found that a $12,960 payment for a $65,000 (i.e., paying 20% the value of the property) was grossly inadequate. Similarly, in *Winbigler*, 175 Cal. at 276, a payment of 10% of the value of the property was found to be grossly inadequate. Even assuming Genova's valuation of 14 million, the purchase price was grossly inadequate. Moreover, the court is persuaded that the value of the home is between 15 and 18 million, meaning that Plaintiff acquired between 2 and 6 million by way of a purchase for approximately $ 160,000.00. The court finds that the purchase price of the subject property was grossly inadequate, upholding the foreclosure sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a procedural irregularity within the meaning of the above case law.

## CONCLUSION

The court finds that the purchase price at the non-judicial foreclosure sale of the subject property was grossly inadequate and that an injustice would result to enforce said sale and evict the Defendants. The court is satisfied that the last minute negotiations between the parties resulted in a procedural irregularity sufficient to deny Plaintiff possession of the premises at this

-11-

EXHIBIT 2, PAGE 35

time.  The issues addressed in this ruling are better flushed out and addressed in the unlimited

quiet title action.  The court hereby conditionally rules in favor of the Defendants on the issue of

possession of the premises, contingent upon the Defendants paying off the subject note in its

entirety, plus costs.  Said payment and costs to be paid by Defendants to Plaintiff by no later than

December 4, 2019, in order for Defendants to remain in possession of the subject premises.  For

the benefit of any reviewing court, if this court's conditional ruling were reversed, this court's

intent would be to consolidate the unlawful detainer and unlimited quiet title cases and stay entry

of judgment in the unlawful detainer matter until resolution of the unlimited quiet title action.

Counsel for Defendants to submit a proposed judgment consistent with this ruling.


Dated: November ____ 18 ____, 2019

KEVIN G. DENOCE
Judge of the Superior Court

-12-

EXHIBIT 2, PAGE 36

**PROOF OF SERVICE**
*CCP § 1012, 1013a (1), (3) & (4)*

STATE OF CALIFORNIA        )
                           )  ss.
COUNTY OF VENTURA          )

Case Number: 56-2019-00532526-CU-UD-VTA
Case Title: Genova Capital Inc. vs. Field

I am employed in the County of Ventura, State of California.  I am over the age of 18 years and not a party to the above-entitled action.  My business address is 800 S. Victoria Avenue, Ventura, CA 93009. On the date set forth below, I served the within:

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

On the following named party(ies)

Timothy Matthew Ryan                    David Rosen
E-Mail: tryan@theryanfirm.com           E-Mail: drosen@murphyrosen.com
30 Corporate Park, Suite 310            100 Wilshire Boulevard, Suite 1300
Irvine, California 92606                Santa Monica, California 90401-1142

Cristian Arrieta
E-Mail: carrieta@lrmmt.com
300 Esplanade Drive, Suite 850
Oxnard, California 93036

_____  **BY PERSONAL SERVICE**:  I caused a copy of said document(s) to be hand delivered to the interested party at the address set forth above on _____ at _____ a.m./p.m.

__x___  **BY MAIL**:  I caused such envelope to be deposited in the mail at Ventura, California.  I am readily familiar with the court's practice for collection and processing of mail.  It is deposited with the U.S. Postal Service on the dated listed below.

and__**BY FACSIMILE**:  I caused a *courtesy copy* of said documents to be sent via facsimile to the interested party at the facsimile number set forth above at _____ from telephone number _____.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on **November 19, 2019**, at Ventura, California.

By: _____
    H. McIntyre, Judicial Secretary

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): APPLICATION BY DEBTOR TO EMPLOY
REAL ESTATE AGENT; DECLARATION OF SANDRO DAZZAN IN SUPPORT  will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 19,
2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **May 19, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

| **DEBTOR** | **PRESIDING JUDGE'S COPY** | **U.S. TRUSTEE (ND)** |
|---|---|---|
| BRIGHAM G. FIELD | HONORABLE DEBORAH J. SALTZMAN. | UNITED STATES TRUSTEE (ND) |
| 11802 ELLICE STREET | U. S. BANKRUPTCY COURT – ROYBAL | 915 WILSHIRE BLVD, SUITE 1850 |
| MALIBU, CA 90265-2494 | FEDERAL BUILDING | LOS ANGELES, CA 90017-3560 |
| | 255 E. TEMPLE STREET, SUITE 1634 / | |
| | COURTROOM 1639 | |
| | LOS ANGELES, CA  90012 | |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 19, 2020**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

**[PURSUANT TO AMENDED GENERAL ORDER 20-02,
COURTESY COPIES WILL BE DELIVERED BY MAIL IF PLEADING IS OVER <u>25</u> PAGES.]**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 19, 2020 | Layla Buchanan | */s/ Layla Buchanan* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR U.S. TRUSTEE (ND):** Brian D Fittipaldi brian.fittipaldi@usdoj.gov
   - **ATTORNEY FOR CREDITOR BANC OF CALIFORNIA, NATIONAL ASSOCIATION:** Daniel K Fujimoto wdk@wolffirm.com
   - **ATTORNEY FOR DEBTOR BRIGHAM G. FIELD:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR HELENA DEEDS:** Andrew C Jhun ajhun@tuchmanlaw.net
   - **ATTORNEY FOR CREDITOR BANC OF CALIFORNIA, NATIONAL ASSOCIATION:** Robert S McWhorter rmcwhorter@buchalter.com, wreinig@buchalter.com;asmith@buchalter.com
   - **ATTORNEY FOR CREDITOR BMW BANK OF NORTH AMERICA, C/O AIS PORTFOLIO SERVICES, LP:** Ambrish B Patel apatelEl@americaninfosource.com
   - **UNITED STATES TRUSTEE (ND):** United States Trustee (ND) ustpregion16.nd.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                      **F 9013-3.1.PROOF.SERVICE**