Main Document Page 1 of 241

Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

Timothy M. Ryan, Bar No. 178059
tryan@theryanfirm.com
Andrew J. Mase, Bar No. 300680
amase@theryanfirm.com
THE RYAN FIRM
A Professional Corporation
2603 Main St, Suite 1225
Irvine, CA 92614
Telephone (949) 263-1800; Fax (949) 872-2211

☐ *Individual appearing without attorney*
☒ *Attorney for:* Genova Capital, Inc.

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

In re:

BRIGHAM G. FIELD,

Debtor(s).

CASE NO.: 9:20-bk-10622-DS

CHAPTER: 11

## NOTICE OF OPPOSITION AND REQUEST FOR A HEARING

1. TO (*specify name*): All parties, the court, and any attorneys of record:

2. NOTICE IS HEREBY GIVEN that Genova Capital, Inc., a party in interest, hereby opposes the following request (*specify that which is opposed*):
Debtor's Application to Employ Sandro Dazzan as Real Estate Agent (ECF No. 19)

3. This opposition is based upon the following grounds (*specify grounds*):
A formal opposition was filed separately by Genova as ECF Nos. 27-28, and is attached hereto as well.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012* Page 1 **F 9013-1.3.OPPOSITION.REQ.HEARING**

Main Document Page 2 of 241

4. Attached hereto are the following documents in support of this opposition which are admissible under the Federal Rules of Evidence (*specify declarations and exhibits by name or description*):
Request for Judicial Notice (ECF 28) and attached hereto as well.

5. ☒ *(Optional)* Attached hereto is a Memorandum of Points and Authorities upon which opposing party will rely.

6. Total number of attached pages of supporting documentation: 236

Any reply to this opposition must be filed with the court and served on this opposing party not later than 7 days prior to the hearing on the motion.

WHEREFORE, the undersigned prays that this court deny the subject request and set this matter for a hearing.

Date: 06/03/2020

Respectfully submitted,

The Ryan Firm
Printed name of law firm

Signature

Andrew Mase
Printed name

Attorney for: Genova Capital Inc.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012 Page 2 **F 9013-1.3.OPPOSITION.REQ.HEARING**

Main Document Page 3 of 241

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **Notice of Opposition and Request for a Hearing** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) ___________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

*Date* *Printed Name* *Signature*

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012* Page 3 **F 9013-1.3.OPPOSITION.REQ.HEARING**

# ATTACHMENT

Timothy M. Ryan, Bar No. 178059
Andrew J. Mase, Bar No. 300680
THE RYAN FIRM
A Professional Corporation
2603 Main St, Suite 1225
Irvine, CA 92614
Telephone (949) 263-1800; Fax (949) 872-2211

Attorneys for Genova Capital, Inc.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

| | |
|---|---|
| In re<br><br>BRIGHAM G. FIELD,<br><br>Debtor. | CASE NO.: 9:20-bk-10622-DS<br><br>Chapter 11<br><br>**CREDITOR GENOVA CAPITAL'S OPPOSITION TO DEBTOR'S APPLICATION FOR THE HIRING OF A REAL ESTATE AGENT** |

**THE RYAN FIRM**
A Professional Corporation

## Table of Contents

**MEMORANDUM OF POINTS AND AUTHORITIES** ..... 1

1. **INTRODUCTION** ..... 1

2. **RELEVANT FACTUAL SUMMARY AND PROCEDURAL POSTURE** ..... 2

   A. **Foreclosure and Purchase of the Subject Property** ..... 2

   B. **Subsequent Legal Proceedings** ..... 2

3. **CHAPTER 11 REORGANIZATION** ..... 3

4. **THE SUBJECT PROPERTY IS NOT "PROPERTY OF THE ESTATE" AND, THUS, THERE IS NO BASIS FOR DEBTOR'S MOTION** ..... 3

   A. **Debtor Must Prove that the Subject Property is Property of the Estate** ..... 4

   B. **Debtor Had No Ownership Interest in the Subject Property at the Time the Bankruptcy Petition Was Filed** ..... 5

   C. **Contrary to Debtor's Representations to This Court, The Unlawful Detainer Proceedings Did Not Vest Any Legal or Equitable Interest in the Subject Property in Debtor** ..... 7

      i. **The Unlawful Detainer Judgment Only Adjudicated the Right to Possess the Subject Property, Not its Ownership** ..... 7

      ii. **Possessory Interests Are Not Ownership Interests** ..... 9

      iii. **The Unlawful Detainer Judgment Was Appealed, is Stayed, and Has No Res Judicata Effect on This Bankruptcy Case** ..... 11

5. **CONCLUSION** ..... 12

# Table of Authorities

## Federal Cases

*Cnty. of Imperial Treasurer-Tax Collector v. Stadtmueller* (2017) 564 B.R. 21 ................ 6

*Eden Place, LLC v. Perl* (*In re Perl*) (2014) 2014 Bankr. LEXIS 2379 .......................... 10

*Goldenberg v. Deutsche Bank Nat'l Trust Co.* (2013) 2013 Bankr. LEXIS 4665 ............. 6

*Goldenberg, supra* ........................................................................................... 6

*In re Braker* (9th Cir. BAP 1991) 125 B.R. 798 ........................................................ 4

*In re Butchman* (Bankr. S.D.N.Y. 1980) 4 B.R. 379 .................................................. 5

*In re Endoscopy Ctr. of S. Nev. LLC* (2011) 451 B.R. 527 ............................................. 4

*In re Engles* (Bankr. S.D. Cal. 1996) 193 B.R. 23 ....................................................... 6

*In re Richter* (Bankr. C.D. Cal. 2015) 525 B.R. 735 ..................................................... 6

*In Re Ruppel* (2007) 368 B.R. 42 ............................................................................. 4

*In re Stanley* (Bankr. W.D. Ark. 1994) 182 B.R. 241 .................................................... 5

*In re Torrez* (1991) 132 B.R. 924 ............................................................................ 10

*In re Upham* (Bankr. W.D.N.Y. 1985) 48 B.R. 695 ....................................................... 5

*Murphy v. Wray* (Bankr. D. Idaho 2001) 258 B.R. 777 ................................................... 4

*Wells Fargo Bank v. Edwards* (*In re Edwards*) (9th Cir. BAP 2011) 454 B.R. 100 ........ 10

*Williams v. Levi* (2005) 323 B.R. 691 ........................................................................ 6

*Williams v. Levi* (*In re Williams*) 323 B.R. 691 ........................................................ 10

*Williams, supra* ................................................................................................ 6

## State Cases

*Arnold v. Krigbaum* (1915) 169 Cal. 143 ................................................................... 8

*Bekins v. Trull* (1924) 69 Cal.App. 40 ...................................................................... 8

*California State Teachers' Retirement System v. County of Los Angeles* (2013) 216 Cal.App.4th 41 ............................................................................................ 10

*Carpentier v. Brenham* (1870) 40 Cal. 221 .................................................................. 6

THE RYAN FIRM
A Professional Corporation

*Cheney v. Trauzettel* (1937) 9 Cal.2d 158 .................... 8

*City of L.A. v. San Pedro Boat Works* (2011) 635 F.3d 440 .................... 10

*Delpy v. Ono* (1937) 22 Cal.App.2d 301 .................... 8

*Elsea v. Saberi* (1992) 4 Cal.App.4th 625 .................... 11

*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2001) 85 Cal.App.4th 1168 .................... 11, 12

*Hohn v. Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605 .................... 5, 6

*In re Pettit* (9th Cir. 2000) 217 F.3d 1072 .................... 4

*Laidlaw Waste Sys., Inc. v. Bay Cities Svcs., Inc.* (1996) 43 Cal.App.4th 630 .................... 11

*Moeller v. Lien* (1994) 25 Cal.App.4th 826 .................... 5

*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428 .................... 5

*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903 .................... 12

*Varian Med. Sys., Inc. v. Delfino* (2005) 35 Cal.4th 180 .................... 11

*Vella v. Hudgins* (1977) 20 Cal.3d 251 .................... 7

*Williams v. California First Bank* (9th Cir. 1988) 859 F.2d 664 .................... 4

**State Statutes**

Code Civ. Proc. § 1161 .................... 7

Code Civ. Proc. § 86 .................... 7

Code Civ. Proc., § 916 .................... 11

**Federal Statutes**

11 U.S.C. § 327 .................... 3

11 U.S.C. § 541 .................... 1, 4, 5

11 U.S.C. § 704 .................... 3

11 U.S.C. § 1123 .................... 3

**Other Authority**

Rev. & Tax. Code § 107 .................... 10

THE RYAN FIRM
A Professional Corporation

# MEMORANDUM OF POINTS AND AUTHORITIES

Secured Creditor and owner of the real property at issue ("Genova") hereby submits the following Objection to Application by Debtor to Employ Real Estate Agent (Dkt Entry No. 20).

## 1. INTRODUCTION

This entire Chapter 11 bankruptcy case is premised on a fundamental misrepresentation by debtor Brigham Field ("Debtor"), namely that the real property located at 11802 Ellice Street, Malibu, CA 90265 (the "Subject Property") is "property of the estate" pursuant to 11 U.S.C. § 541. This false statement has been made in: (1) Debtor's Voluntary Petition (Dkt Entry No. 1); (2) Debtor's Initial Status Report and Supporting Declaration (Dkt Entry No. 15); (3) Debtor's Ex Parte Application to Extend Time to File Schedules (Dkt Entry No. 22); and (4) the instant Motion to Employ Real Estate Agent (the "Motion") (Dkt Entry Nos. 19 – 20).

Specifically, in the Motion, Debtor misrepresents that he is the "owner" of the Subject Property and that a sale of the Subject Property will purportedly allow "all secured and unsecured creditors [to] be paid in full." Dkt Entry No. 19, at p. 1:24 – 2:3. He further claims that the purpose of this bankruptcy case is to "avoid the irreparable harm that would occur from a scheduled foreclosure sale and to realize this equity for the benefit of creditors." *Id.* Based on these misrepresentations, Debtor "seeks court approval to retain the Agent to immediately list the Property for sale." *Id.*

Debtor has no ownership interest in the Subject Property at all whatsoever, whether legal or equitable, however. Indeed, the Subject Property was sold at a non-judicial foreclosure sale to creditor Genova Capital ("Genova" or "Creditor"), with a Trustee's Deed Upon Sale issued to Genova and recorded in August 2019. This foreclosure sale was completed approximately nine (9) months before the commencement of the instant bankruptcy case.

Essentially, Debtor's position is that because Genova was unable to meet its burden

THE RYAN FIRM
A Professional Corporation

of proof in its unlawful detainer, then title is automatically vested in the Debtor – notwithstanding the jurisdictional limits of the unlawful detainer statutes, the words to the contrary set forth in the judgment at issue, and the fact that said unlawful detainer judgment is currently on appeal.

Debtor's rights in the Subject Property consist of a temporary possessory interest and his rights in a quiet title action filed against Genova (that is in its infancy). Those rights may (perhaps) be sold by the Debtor (or an appointed bankruptcy trustee), but since the Subject Property is not "property of the estate" it cannot be sold through this bankruptcy. Debtor's motion to employ a real estate agent to sell fee title to the Subject Property must be denied outright.

## 2. RELEVANT FACTUAL SUMMARY AND PROCEDURAL POSTURE

### A. Foreclosure and Purchase of the Subject Property

On or April 11, 2017, Debtor executed a deed of trust to secure a loan encumbering the Subject Property. RFJN, Exhibit 1. Debtor eventually defaulted on the secured loan, which resulted in commencement of the non-judicial foreclosure process on April 15, 2019, when a Notice of Default was recorded against the Subject Property. RFJN, Exhibit 2. Debtor failed to cure the default on the secured loan, which led to a Notice of Trustee's Sale being recorded on June 18, 2019. RFJN, Exhibit 3. Ultimately, the Subject Property was sold to Genova at a trustee's sale in August 2019; a Trustee's Deed Upon Sale was issued to Genova and recorded in August 2019. RFJN, Exhibit 4.

### B. Subsequent Legal Proceedings

On August 28, 2019, Genova filed an unlawful detainer action to obtain possession of the Subject Property from Debtor and third-party Colette Pelissier. On September 3, 2019, Debtor filed and served an answer to the complaint and a cross-complaint to quiet title. RFJN, Exhibit 5. However, recognizing that he could not adjudicate title in the unlawful detainer action, that cross-complaint was dismissed. RFJN, Exhibit 6.

The unlawful detainer court held that, while Debtor had not tendered the full amount

THE RYAN FIRM
A Professional Corporation

due under the loan before the foreclosure sale, the parties were engaged in good faith negotiations to resolve the matter, simply ran out of time to pay off the loan, with the unlawful detainer court conditionally ruled in favor of Debtor on the "**issue of possession of the property**, contingent upon the Debtor paying off the subject note in its entirety plus cost." RFJN, Exhibit 7 (emphasis added). Genova appealed the trial court's ruling. RFJN, Exhibit 9. This appeal is still pending before the California Court of Appeal. RFJN, Exhibit 10. Debtor has also filed a separate action against Genova to quiet title to the Subject Property. This action is in its infancy. RFJN, Exhibit 11.

**3. CHAPTER 11 REORGANIZATION**

Chapter 11 provides a procedure whereby the debtor can reorganize itself through a plan that may be approved by the court if consented to by the appropriate number of voting creditors; to that end, reorganization permits the debtor to satisfy creditor claims in a broad array of ways, including, among other things, sale of estate property. *See* 11 U.S.C. § 1123, subd. (a)(5). Indeed, the Bankruptcy Code allows the trustee or debtor in possession to "collect and reduce to money the property of the estate for which such trustee serves . . . ." 11 U.S.C. § 704, subd. (a)(1).

To effectuate this purpose, 11 U.S.C. § 327 provides that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327, subd. (a).

**4. THE SUBJECT PROPERTY IS NOT "PROPERTY OF THE ESTATE" AND, THUS, THERE IS NO BASIS FOR DEBTOR'S MOTION**

As stated above, Debtor's motion is based on the misrepresentation that he is the "owner" of the Subject Property and that a sale of the Subject Property will allow "all secured and unsecured creditors [to] be paid in full." Dkt Entry No. 19, at p. 1:24 – 2:3; *see also id.* at 3:8 – 10 ("Debtor filed this Chapter 11 case on May 12, 2020, to conduct an

orderly sale of the Property for the benefit of funding payments to creditors"). However, Debtor has no **ownership** interest in the Subject Property, whether legal or equitable, since Genova purchased it nine (9) months before the filing of the instant bankruptcy case. The Subject Property cannot be sold to satisfy Debtor's debts as it is not Debtor's to sell.

**A. Debtor Must Prove that the Subject Property is Property of the Estate**

A proposed "Residential Listing Agreement," which purports to give Debtor's proposed agent the "exclusive and irrevocable right to sell or exchange" the Subject Property, is attached to Debtor's Motion. *Id.*, Declaration of Sandro Dazzan ¶ at 4, Ex. 1, p. 11. But what can Mr. Dazzan sell? A party cannot employ a professional to sell property the estate does not own. *In Re Ruppel* (2007) 368 B.R. 42, 44 (trustee not authorized to liquidate property because the exempt property was not property of the estate under 11 U.S.C. § 541(a)(1) subject to administration); *Williams v. California First Bank* (9th Cir. 1988) 859 F.2d 664, 667 ("there is nothing in . . . the liquidation framework of the Code authorizing a Chapter 7 trustee to collect money not owed to the estate").

When a debtor files a petition for relief, all property or interests in property of that debtor become property of the estate pursuant to 11 U.S.C. § 541. The term "property of the estate" is broadly defined and includes, with certain defined exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541, subd. (a)(1). Though property of the estate is a matter of federal law, bankruptcy courts must look to state law to determine the nature and extent of the debtor's interest in property. *In re Pettit* (9th Cir. 2000) 217 F.3d 1072, 1078. Indeed, "the mere filing of bankruptcy does not expand [a debtor's] rights beyond what existed under applicable nonbankruptcy law at filing." *Murphy v. Wray* (Bankr. D. Idaho 2001) 258 B.R. 777, citing *In re Braker* (9th Cir. BAP 1991) 125 B.R. 798, 801. Rather, a trustee takes the property subject to the same restrictions that existed at the commencement of the case. *In re Endoscopy Ctr. of S. Nev. LLC* (2011) 451 B.R. 527.

In this case, Debtor has failed to present any evidence establishing that he **owned**

THE RYAN FIRM
A Professional Corporation

the Subject Property immediately prior to this bankruptcy action being filed and/or that the Subject Property is "property of the estate" such that it is subject to sale.

**B. Debtor Had No <u>Ownership</u> Interest in the Subject Property at the Time the Bankruptcy Petition Was Filed**

The term "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541, subd. (a)(1). However, Debtor had no **<u>ownership</u>** interest in the Subject Property at the time the bankruptcy case was filed since it had been sold to Genova nine (9) months prior; a Trustee's Deed Upon Sale was issued to Genova to this effect and recorded in August 2019. RFJN, Exhibit 4. This sale terminated Debtor's interest in the Subject Property.

Courts across the country regularly hold that, when real property is sold prior to the commencement of a bankruptcy petition, the real property does **<u>not</u>** become "property of the estate." *In re Upham* (Bankr. W.D.N.Y. 1985) 48 B.R. 695 (real property sold at pre-petition foreclosure sale is not property of estate because, at time of filing of petition, Chapter 7 debtor has no legal or equitable interests); *In re Stanley* (Bankr. W.D. Ark. 1994) 182 B.R. 241 (debtor's interest in real property was not a part of bankruptcy after foreclosure was completed prior to bankruptcy petition); *In re Butchman* (Bankr. S.D.N.Y. 1980) 4 B.R. 379, 380 (after foreclosure sale, the only "property of estate" under § 541 consists of whatever right the debtor might have with respect to any surplus proceeds that may remain after paying other lienholders).

Even more specifically, California authorities conclusively hold that a debtor or borrower does not retain any **<u>legal</u>** interest in real property following the completion of foreclosure proceedings. Indeed, California law is clear that a trustee's sale is complete upon acceptance of the final bid. *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 441. The purchaser then takes legal title through a trustee's deed. *Id.; Moeller v. Lien* (1994) 25 Cal.App.4th 826, 831. The trustee's deed confers "absolute legal title" to the grantee. *Hohn v. Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605, 612 – 13.

THE RYAN FIRM
A Professional Corporation

Indeed, after issuance of the trustee's deed, the trustee has no further title capable of being transferred. *Hohn v. Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605, 609. This has been the law of California since at least 1870. *Carpentier v. Brenham* (1870) 40 Cal. 221, 232 (buyer at foreclosure obtained "legal title" to real property).

California authorities are equally clear that a completed foreclosure also terminates a debtor or borrower's **equitable** interest in real property. Indeed, in an involuntary sale such as foreclosure, equitable title is transferred to the purchaser at the foreclosure auction with acceptance of the highest bid and it is at that time a trustee's sale is "complete." *Cnty. of Imperial Treasurer-Tax Collector v. Stadtmueller* (2017) 564 B.R. 21, 30; *see In re Richter* (Bankr. C.D. Cal. 2015) 525 B.R. 735, 745 ("California law would dictate that property 'is sold at a foreclosure sale' on the completion of the foreclosure auction, regardless of whether a statutory right of redemption is available or not"); *see also In re Engles* (Bankr. S.D. Cal. 1996) 193 B.R. 23, 26.

Analogous to this case are *Goldenberg v. Deutsche Bank Nat'l Trust Co.* (2013) 2013 Bankr. LEXIS 4665 and *Williams v. Levi* (2005) 323 B.R. 691. In both of those cases, the court was faced with determining whether properties that had been foreclosed prior to bankruptcy proceedings at issue were part of the debtors' "estates." In *Goldenberg*, the court held that, "Because Lukashin did not hold legal title when she filed her petition, her nonexistent ownership of the property was not protected by the stay . . . . At best, Lukashin may have had a possessory interest in the Grand View Property protected by the stay, but that had no effect on the foreclosure sale on April 27, 2011." *Goldenberg, supra*, 2013 Bankr. LEXIS 4665 at 27 – 29. The *Williams* court was in accord, explaining, "As noted, Williams was not in title to the condo when he filed his petition, so record ownership of the Property was not protected by the stay." *Williams, supra*, 323 B.R. 691.

As is evident from the above, the completion of the foreclosure proceedings and issuance of the Trustee's Deed Upon Sale to Genova—in August 2019—transferred both legal and equitable title to Genova. As a result, Debtor had no **ownership** interest in the

Case 9:20-bk-10622-DS Doc 27 Filed 06/02/20 Entered 06/02/20 17:05:11 Desc Main Document Page 11 of 47

Subject Property that could have become "property of the estate" and, thus, has no right to sell the Subject Property. Thus, Debtor's Motion must be denied.

**C. Contrary to Debtor's Representations to This Court, The Unlawful Detainer Proceedings Did Not Vest Any Legal or Equitable Interest in the Subject Property in Debtor**

Debtor's Motion argues that it has an interest in the Subject Property because Debtor prevailed against Genova in an unlawful detainer proceeding that was filed subsequent to the issuance of the Trustee's Deed Upon Sale. Dkt Entry No. 19, at pp. 2 – 3 ("In November 2019, the Superior Court for the State of California, County of Ventura ('State Court') issued a decision overturning a previous foreclosure of the Property by Genova"). However, contrary to Debtor's assertions, and consistent with jurisdictional limits in California law, the unlawful detainer judgment had no impact on **title** to the Subject Property, only **possession** thereof. Further, that judgment is currently on appeal and title to the Subject Property remains vested in Genova.

**i. The Unlawful Detainer Judgment Only Adjudicated the Right to Possess the Subject Property, Not its Ownership**

The unlawful detainer court merely adjudicated the right to **possess** the Subject Property and, consistent with its jurisdictional limits, specifically did vest **ownership** of the Subject Property in Debtor. Debtor's attempts to regain title to the Subject Property are being adjudicated in a separate "quiet title action," which is still in its infancy.

By statute, unlawful detainer proceedings are of limited jurisdiction as they merely seek to determine the right to **possess** real property as opposed to the **title** to real property. Code Civ. Proc. § 86, subd. (a)(4); Code Civ. Proc. § 1161a, subd. (b) ("In any of the following cases, a person who holds over and continues in **possession** . . . may be removed therefrom as prescribed in this chapter"). Indeed, in unlawful detainer cases, only claims bearing directly on the right to **possession** are involved. *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (the unlawful detainer judgment requires the unlawful detainer defendant to bring

THE RYAN FIRM
A Professional Corporation

another "action to resolve questions of title . . . or to adjudicate other legal and equitable claims between the parties)"; *Cheney v. Trauzettel* (1937) 9 Cal.2d 158; *Bekins v. Trull* (1924) 69 Cal.App. 40, 44; *Arnold v. Krigbaum* (1915) 169 Cal. 143, 145 – 46.

In contrast, attacks on the validity of the note or the deed of trust that secures the note are not properly raised in an unlawful detainer case. *Delpy v. Ono* (1937) 22 Cal.App.2d 301, 303; *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160. For example, in *Cheney*, an unlawful detainer defendant answered and cross-complained, setting up a claim of title and several other defenses based on allegations that the "plaintiffs did not thereby acquire a valid title." *Id.* at 159 – 60. The trial court struck the cross-complaint and special defenses, and gave judgment for plaintiff. Defendants appealed. *Id.* at 159. The appellate court held that the "trial court properly held that in the summary proceeding in unlawful detainer the right to possession alone was involved, and the broad question of title could not be raised and litigated by cross-complaint or affirmative defense." *Id.* The appellate court went on, "the alleged equitable grounds of attack on plaintiff's title have no place in the present summary proceeding, for if such issues are permissible, the proceeding entirely loses its summary character. *Id.* at 160. Thus, the judgment was affirmed. *Id.* at 161.

As the above authorities demonstrate, the trial court was precluded, as a matter of law, from invalidating Genova's title to the Subject Property and/or re-vesting any sort of legal or equitable title back in Debtor's name.

As set forth above, Debtor's former counsel was aware that the unlawful detainer court could not adjudicate this title issue when he first filed, then dismissed a cross-complaint for quiet title within the unlawful detainer action. (RFJN 5, 6.)

The trial court's judgment merely provides that, "As to the unlawful detainer action filed by Plaintiff . . . Judgment is hereby entered in favor of Defendants and against Plaintiff on the condition that Defendants pay off the subject note in its entirety, plus costs no later than December 4, 2019." RFJN Exhibit 8. There is absolutely no part of this judgment that could possibly have voided Genova's title.

THE RYAN FIRM
A Professional Corporation

Similarly, the unlawful detainer court's post-trial ruling is clear that the ruling did not affect Genova's **title** to the Subject Property and did not re-vest title back into Debtor's name. Specifically, the unlawful detainer court provided: "The issues addressed in this ruling are better flushed out and addressed in the unlimited quiet title action." RFJN, Exhibit 7, at pp. 11 – 12. The trial court provided that it "conditionally rules in favor of the Defendants on the issue of **possession** of the premises, contingent upon the Defendants paying off the subject note in its entirety, plus costs. Said payment and costs to be paid by Defendants to Plaintiff by no later than December 4, 2019, in order for Defendants to remain in **possession** of the subject premises" *Id.* at p. 12 (emphases added). The trial court anticipated an appeal from its judgment providing that "if this court's conditional ruling were reversed, this court's intent would be to consolidate the unlawful detainer and unlimited quiet title cases and stay entry of judgment in the unlawful detainer matter until resolution of the unlimited quiet title action." *Id.*

Stated simply, the statutes governing unlawful detainer actions preclude the unlawful detainer court from divesting Genova's **title** to the Subject Property. As a result, there is absolutely no merit to Debtor's assertion that the unlawful detainer action and judgment re-vested **title** to the Subject Property back in the name of Debtor.

**ii. Possessory Interests Are Not Ownership Interests**

As a result of the jurisdictional limitations of the unlawful detainer statutes and the express limitations in the trial court's ruling and judgment, Debtor has a mere **possessory** interest in the Subject Property and an interest in a **cause of action** for quiet title. Given the value of the Subject Property, these may prove to be of value for the estate. However, neither the temporary possessory interest nor the interest in a quiet title action equate to an **ownership** interest in the Subject Property that renders the Subject Property "property of the estate." Indeed, it cannot be disputed that a tenant with a possessory right of real property pursuant to a lease could not sell property owned by his landlord; the same is true with respect to Debtor's current possessory right to the Subject Property.

THE RYAN FIRM
A Professional Corporation

Indeed, as the Court explained in *Eden Place, LLC v. Perl* (*In re Perl*) (2014) 2014 Bankr. LEXIS 2379, at 17 – 18, "Where a real property nonjudicial foreclosure was completed and the deed recorded prepetition, the debtor has neither legal nor equitable title to the property at the time the bankruptcy petition is filed. Although the debtor may still be in possession of the premises, his or her status is essentially that of a 'squatter.'" *See Wells Fargo Bank v. Edwards* (*In re Edwards*) (9th Cir. BAP 2011) 454 B.R. 100, 106; *see also In re Torrez* (1991) 132 B.R. 924, 940 – 41 (when debtors have no title to the subject property, the "only interests Debtors possessed respecting the property is a possessory interest"). Similarly, in *Williams v. Levi* (*In re Williams*) 323 B.R. 691, 699, the debtor had no recorded interest in the subject property at the time his petition was filed. As a result, the court concluded that he had no "legal" or "equitable" interest in the subject property, though he had a "possessory" interest, which was "property of the estate."

California common law and statutory law is in accord in recognizing the distinction between mere "possessory interests" and "ownership" interests. *See California State Teachers' Retirement System v. County of Los Angeles* (2013) 216 Cal.App.4th 41, 55 – 56 (a "possessory interest consists of a right to the possession of real property for a period less than perpetuity by one party, the holder of the possessory interest, while another party, the fee simple owner, retains the right to regain possession of the real property at a future date"); *City of L.A. v. San Pedro Boat Works* (2011) 635 F.3d 440, 443 – 44 (defining a "possessory interest" as one "which exists as a result of possession, exclusive use, or a right to possession or exclusive use of land unaccompanied by the ownership of a fee simple or life estate in the property"); Rev. & Tax. Code § 107 (defining "Possessory Interest" as "Possession of, claim to, or right to the possession of land or improvements that is independent, durable, and exclusive of rights held by others in the property, except when coupled with ownership of the land or improvements in the same person).

**THE RYAN FIRM**
A Professional Corporation

As a result, Debtor's temporary **possessory** interest in the Subject Property is only that, a right to continue to reside in the Subject Property. It is distinct from an **ownership** interest that would give the holder thereof the right to sell the Subject Property.

**iii. The Unlawful Detainer Judgment Was Appealed, is Stayed, and Has No Res Judicata Effect on This Bankruptcy Case**

Further, even assuming the unlawful detainer judgment pertained to the ownership of the Subject Property, as opposed to merely its **possession**—which it does not—that judgment would have no impact on this action as that judgment was timely appealed, is stayed, and, thus, has no res judicata effect on this action. RFJN, Exhibit 9. This un-briefed appeal is still pending before the California Court of Appeal. RFJN, Exhibit 10.

Code of Civil Procedure section 916 provides that filing a timely "appeal stays proceedings in the trial court upon the judgment . . . appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . ." Code Civ. Proc., § 916, subd. (a). The purpose of this rule is to "preserv[e] the status quo until the appeal is decided." *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2001) 85 Cal.App.4th 1168, 1173; *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629. To further that purpose, the stay maintains the rights of the parties in the same condition they were before the order was made. *Varian Med. Sys., Inc. v. Delfino* (2005) 35 Cal.4th 180, 198; *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629. The appellate stay precludes any act that would affect the rights of the parties or the condition of the subject matter. *Laidlaw Waste Sys., Inc. v. Bay Cities Svcs., Inc.* (1996) 43 Cal.App.4th 630, 641. As a result, since the appeal from the unlawful detainer judgment was timely filed and is still pending, the enforcement of that judgment (i.e., issuing any orders based on the notion that the trial court invalidated Genova's title to the Subject Property) is stayed.

Additionally, the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired. *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2001)

85 Cal.App.4th 1168, 1173; *Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 – 11. For res judicata purposes, the judgment sought to be invoked in bar must be "the "last word" of the rendering court—a "final judgment." *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2001) 85 Cal.App.4th 1168, 1173; *Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 936; *see* Rest.2d Judgments, § 13, com. a, p. 132 (for finality purposes "the judgment must ordinarily be a firm and stable one . . . .").

As a result, since the appeal from the unlawful detainer judgment is still pending, it is not final and has no res judicata effect on this case and/or the determination of the issue of whether Debtor has any interest—whether legal or equitable—in the Subject Property.

**5. CONCLUSION**

Debtor's position that because Genova did not meet its elements in the unlawful detainer action, then title is now automatically vested back in the Debtor (notwithstanding the pending appeal of the unlawful detainer judgment) finds no support in the law. Debtor does not own the Subject Property and his motion to employ a real estate agent to sell the Subject Property must be denied.

DATED: June 2, 2020

THE RYAN FIRM
A Professional Corporation

By: /S/ Andrew J. Mase
TIMOTHY M. RYAN
ANDREW J. MASE
Attorneys for Genova Capital, Inc.

THE RYAN FIRM
A Professional Corporation

Case 9:20-bk-10622-DS Doc 27 Filed 06/02/20 Entered 06/02/20 13:01:21 Desc
Main Document Page 17 of 17

## PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On June 2, 2020, I served the within document(s) described as: **CREDITOR GENOVA CAPITAL'S OPPOSITION TO DEBTOR'S APPLICATION FOR THE HIRING OF A REAL ESTATE AGENT**
on the interested parties in this action:

☒ by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| D. Edward Hays | Tel: *<br>Fax: *<br>Email: ehays@marshackshay.com | Attorney for debtor |
| United States Trustee (LA) | Tel: *<br>Fax: *<br>Email: ustpregion16.la.ecf@usdoj.gov | |
| Brian D. Fottopaldi | Tel: *<br>Fax: *<br>Email: brian.fittipaldi@usdoj.gov | |

☒ **CM/ECF** (U.S. Bankruptcy Court, Central District of California, Electronic Case Filing Procedures § 3-8)—Whenever a pleading, document or court order is filed electronically in accordance with ECF Procedures, the system will automatically generate the Notification of Electronic Filing, which will be emailed to all Registered Participants who have consented to electronic service and have appeared in the case or adversary proceeding in which the document is filed. This transmission of the Notification of Electronic Filing to a Registered Participant shall constitute effective service in accordance with L.B.R. 9036-1. All parties who are not registered, if any, were served in the manner set forth above.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 2, 2020, at Irvine, California.

/s/ Heather Morris
HEATHER MORRIS

THE RYAN FIRM
A Professional Corporation

Timothy M. Ryan, Bar No. 178059
Andrew J. Mase, Bar No. 300680
THE RYAN FIRM
A Professional Corporation
2603 Main St, Suite 1225
Irvine, CA 92614
Telephone (949) 263-1800; Fax (949) 872-2211

Attorneys for Genova Capital, Inc.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

In re

BRIGHAM G. FIELD,

Debtor.

CASE NO.: 9:20-bk-10622-DS

Chapter 11

**SECURED CREDITOR GENOVA CAPITAL, INC.'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO THE MOTION TO EMPLOY REAL ESTATE AGENT**

**PLEASE TAKE NOTICE** that secured creditor Genova Capital, Inc. ("Genova") hereby requests that the Court take judicial notice of the following document in support of its opposition to the motion to employ real estate agent filed by debtor Brigham Field.

| Exhibit | Document |
| --- | --- |
| "1" | "Deed of Trust" recorded in the Official Records of Ventura County as Document Number 20190325-00031274-0 on March 25, 2019. |
| "2" | "Notice of Default" recorded in the Official Records of Ventura County as Document Number 20190415-00039678-0 on April 15, 2019. |

THE RYAN FIRM
A Professional Corporation

| “3” | “Notice of Trustee’s Sale” recorded in the Official Records of Ventura County as Document Number 20190718-00081358-0 on July 18, 2019. |
|---|---|
| “4” | “Trustee’s Deed Upon Sale” recorded in the Official Records of Ventura County as Document Number 20190816-00094754-0 on August 16, 2019. |
| “5” | “Cross-Complaint” filed in Ventura County Superior Court, Case No. 56-2019-00532526. |
| “6” | “Request for Dismissal of Cross-Complaint” filed in Ventura County Superior Court, Case No. 56-2019-00532526. |
| “7” | “Court’s Statement of Decision Following Court Trial” filed in Ventura County Superior Court, Case No. 56-2019-00532526. |
| “8” | Intentionally blank. |
| “9” | “Notice of Appeal” filed in Ventura County Superior Court, Case No. 56-2019-00532526. |
| “10” | “Docket” in California Court of Appeal Case No. B303697. |
| “11” | “Complaint” filed in Ventura County Superior Court, Case No. 56-2019-00532393. |

Genova respectfully requests that the Court take judicial notice of the documents pursuant to *Federal Rule of Evidence* 201. The documents are of common knowledge not reasonably subject to dispute, and is capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy, namely the official records of the Superior Court of California and the Ventura County Recorder’s Office. True and correct copies of the documents are attached hereto and incorporated herein by reference.

///

///

///

///

///

DATED: June 2, 2020

THE RYAN FIRM
A Professional Corporation

By: /S/ Andrew Mase
TIMOTHY M. RYAN
ANDREW J. MASE
Attorneys for Genova Capital, Inc.

THE RYAN FIRM
A Professional Corporation

# EXHIBIT 1

EXHIBIT 1

RECORDED AT REQUEST OF:

WHEN RECORDED, RETURN TO:

Genova Capital, Inc.
555 Corporate Drive, Suite 120
Ladera Ranch, California 92694

APN: 700-0-260-065

20190325-00031274-0 1/36
Ventura County Clerk and Recorder
MARK A. LUNN
03/25/2019 08:48:38 AM
1445362 $416.00 VA

**DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT; REQUEST FOR NOTICE**

**Note Amount:** **$125,000**
**Property Address:** **11802 Ellice Street, Malibu, California 90265**

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH CALIFORNIA COMMERCIAL CODE SECTION 9502.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Deed of Trust") is made as of April 11, 2017, among Brigham Field and Colette Pelissier, husband and wife as joint tenants, as trustor ("Borrower"), whose address is 11802 Ellice Street, Malibu, California 90265; Commonwealth Land Title Company, as trustee ("Trustee"); and, Genova Capital, Inc., a California corporation, as beneficiary ("Lender"), whose address is 555 Corporate Drive, Suite 120, Ladera Ranch, California 92694.

**TRANSFER OF RIGHTS IN THE PROPERTY**

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the State of California as described in California Commercial Code section 9502. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Deed of Trust, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Deed of Trust on any of the Mortgaged Property.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under California Civil Code §2938.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS DEED OF TRUST, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

**1. Definitions.** For purposes of this Deed of Trust, each of the following terms shall have the following respective meanings:

**1.1. "Attorney Fees."** Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Deed of Trust.

**1.2. "Borrower."** The named Borrower in this Deed of Trust and the obligor under the Note, whether or not named as Borrower in this Deed of Trust, and subject to paragraph 19 and paragraph 20 of this Deed of Trust, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such person.

**1.3. "Default Rate."** The Default Rate as defined in the Note.

**1.4. "Event of Default."** An Event of Default as defined in paragraph 19 of this Deed of Trust.

**1.5. "Environmental Laws."** Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) as amended (42 United States Code ("U.S.C.") §§ 9601-9675); the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. §§ 6901-6992k); the Hazardous Materials Transportation Act (49 U.S.C. §§ 5101-5127); the Federal Water Pollution Control Act (33 U.S.C. §§ 1251-1376); the Clean Air Act (42 U.S.C. §§ 7401-7671q); the Toxic Substances Control Act (15 U.S.C. §§ 2601-2692); the Refuse Act (33 U.S.C. §§ 407-426p); the Emergency Planning and Community Right-To-Know Act (42 U.S.C. §§ 11001-11050); the Safe Drinking Water Act (42 U.S.C. §§ 300f-300j); the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the Carpenter-Presley-Tanner Hazardous Substance Account Act (California Health and Safety Code §§ 25300-25395.15); the California Expedited Remedial Action Reform Act of 1994 (California Health and Safety Code §§ 25396-25399.2); and the Porter-Cologne Water Quality Control Act (California Water Code §§ 13000-14076).

**1.6. "Fixtures."** All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the State of California, including the California Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

**1.7. "Governmental Authority."** Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

© 2007 Geraci Law Firm; All Rights Reserved.

**1.8. "Governmental Requirements."** Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.9. "Hazardous Substance."** Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code §25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code section 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Mortgaged Property or of real property adjacent to it.

**1.10. "Impositions."** All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Deed of Trust may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.11. "Improvements."** Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Deed of Trust.

**1.12. "Indebtedness."** The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.12.1. The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.12.2. This Deed of Trust and all other Loan Documents;

1.12.3. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.12.4. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Deed of Trust, including, but not limited to, funds advanced to protect the security or priority of the Deed of Trust; and

1.12.5. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

© 2007 Geraci Law Firm; All Rights Reserved.

**1.13. "Land."** The real estate or any interest in it described in Exhibit A attached to this Deed of Trust and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.14. "Leases."** Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.15. "Legal Requirements."** Collectively, (a) any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates, or ordinances of any Governmental Authority in any way applicable to Borrower, any guarantor (with respect to the Indebtedness or the Mortgaged Property), or the Mortgaged Property, including, but not limited to, those concerning its ownership, use, occupancy, possession, operation, maintenance, alteration, repair, or reconstruction, (b) Borrower's or guarantor's presently or subsequently effective bylaws and articles of incorporation, or any instruments establishing any partnership, limited partnership, joint venture, trust, limited liability company, or other form of business association (if either, both, or all, by any of same), (c) any and all Leases and other contracts (written or oral) of any nature to which Borrower or any guarantor may be bound, and (d) any and all restrictions, reservations, conditions, easements, or other covenants or agreements now or later of record affecting the Mortgaged Property.

**1.16. "Lender."** The named Lender in this Deed of Trust and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Deed of Trust, whether or not named as Lender in this Deed of Trust, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such person.

**1.17. "Loan."** The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.18. "Loan Documents."** Collectively, this Deed of Trust, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.19. "Mortgaged Property."** The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as **11802 Ellice Street, Malibu, California 90265,**
**APN: 700-0-260-065 ("Mortgaged Property")**

together with:

1.19.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or

© 2007 Geraci Law Firm; All Rights Reserved.

any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.19.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.19.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.19.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.19.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.19.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.19.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the loan secured by this Deed of Trust or are required to be maintained by Borrower as provided below in this Deed of Trust; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.19.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit A attached to this Deed of Trust (the Leasehold) including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.19.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Land or other Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Land or other Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials



amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Land, Fixtures, Personalty, or other Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Land, Fixtures, Personalty, or other Mortgaged Property;

1.19.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.19.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.19.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in Division 9 of the California Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.19.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.19.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.19.15. All proceeds of any of the foregoing.

As used in this Deed of Trust, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.20. "Note."** The Promissory Note payable by Borrower to the order of Lender in the principal amount of **Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00), which matures on January 1, 2018**, evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Promissory Note.

**1.21. "Obligations."** Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Deed of Trust whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Deed of Trust.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Deed of Trust, executed by Borrower and any guarantor of the Loan, which is not secured by this Deed of Trust.

**1.22. "Permitted Encumbrances."** At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in

© 2007 Geraci Law Firm; All Rights Reserved.

Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Deed of Trust; and (c) liens in favor of or consented to in writing by Lender.

**1.23. "Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.24. "Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the California Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the California Uniform Commercial Code.

**1.25. "Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.26. "Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Deed of Trust shall have the meaning given them in the Note dated of even date herewith between Borrower and Lender.

**2. Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under paragraph 5 of this Deed of Trust; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's

© 2007 Geraci Law Firm; All Rights Reserved.

lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Deed of Trust.

3. **Use of Mortgaged Property.** Unless otherwise required by Governmental Requirements or unless Lender otherwise consents in writing, Borrower shall not allow changes in the use of the Mortgaged Property from that which is contemplated by Borrower and Lender at the time of execution of this Deed of Trust, as specified in the loan application and the Loan Documents. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

4. **Insurance.**

**4.1. Casualty Insurance.** Borrower shall at all times keep the Mortgaged Property insured for the benefit of Trustee and Lender as follows, despite Governmental Requirements that may detrimentally affect Borrower's ability to obtain or may materially increase the cost of such insurance coverage:

4.1.1. Against damage or loss by fire and such other hazards (including lightning, windstorm, hail, explosion, riot, acts of striking employees, civil commotion, vandalism, malicious mischief, aircraft, vehicle, and smoke) as are covered by the broadest form of extended coverage endorsement available from time to time, in an amount not less than the full insurable value (as defined in paragraph 4.9) of the Mortgaged Property, with a deductible amount not to exceed an amount satisfactory to Lender;

4.1.2. Rent loss or business interruption or use and occupancy insurance on such basis and in such amounts and with such deductibles as are satisfactory to Lender;

4.1.3. Against damage or loss by flood if the Land is located in an area identified by the Secretary of Housing and Urban Development or any successor or other appropriate authority (governmental or private) as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Act of 1968 or the Flood Disaster Protection Act of 1973, as amended, modified, supplemented, or replaced from time to time, on such basis and in such amounts as Lender may require;

4.1.4. Against damage or loss from (a) sprinkler system leakage and (b) boilers, boiler tanks, heating and air conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, on such basis and in such amounts as Lender may require;

4.1.5. During any alteration, construction, or replacement of the Improvements, or any substantial portion of it, a Builder's All Risk policy with extended coverage with course of construction and completed value endorsements, for an amount at least equal to the full insurable value of the Improvements, and workers' compensation, in statutory amounts, with provision for replacement with the coverage described in paragraph 4.1, without gaps or lapsed coverage, for any completed portion of the Improvements; and

4.1.6. Against damage or loss by earthquake, in an amount and with a deductible satisfactory to Lender, if such insurance is required by Lender in the exercise of its business judgment in light of the commercial real estate practices existing at the time the insurance is issued and in the County where the Land is located.

© 2007 Geraci Law Firm; All Rights Reserved.

**4.2. Liability Insurance.** Borrower shall procure and maintain workers' compensation insurance for Borrower's employees and comprehensive general liability insurance covering Borrower, Trustee, and Lender against claims for bodily injury or death or for damage occurring in, on, about, or resulting from the Mortgaged Property, or any street, drive, sidewalk, curb, or passageway adjacent to it, in standard form and with such insurance company or companies and in an amount of at least $5,000,000.00 combined single limit, or such greater amount as Lender may require, which insurance shall include completed operations, product liability, and blanket contractual liability coverage that insures contractual liability under the indemnifications set forth in this Deed of Trust and the Loan Documents (but such coverage or its amount shall in no way limit such indemnification).

**4.3. Other Insurance.** Borrower shall procure and maintain such other insurance or such additional amounts of insurance, covering Borrower or the Mortgaged Property, as (a) may be required by the terms of any construction contract for the Improvements or by any Governmental Authority, (b) may be specified in any other Loan Documents, or (c) may be required by Lender from time to time.

**4.4. Form of Policies.** All insurance required under this paragraph 4 shall be fully paid for and nonassessable. The policies shall contain such provisions, endorsements, and expiration dates as Lender from time to time reasonably requests and shall be in such form and amounts, and be issued by such insurance companies doing business in the State of California, as Lender shall approve in Lender's sole and absolute discretion. Unless otherwise expressly approved in writing by Lender, each insurer shall have a Best Rating of Class A, Category VIII, or better. All policies shall (a) contain a waiver of subrogation endorsement; (b) provide that the policy will not lapse or be canceled, amended, or materially altered (including by reduction in the scope or limits of coverage) without at least 30 days prior written notice to Lender; (c) with the exception of the comprehensive general liability policy, contain a mortgagee's endorsement (438 BFU Endorsement or equivalent), and name Lender and Trustee as insureds; and (d) include such deductibles as Lender may approve. If a policy required under this paragraph contains a co-insurance or overage clause, the policy shall include a stipulated value or agreed amount endorsement acceptable to Lender.

**4.5. Duplicate Originals or Certificates.** Duplicate original policies evidencing the insurance required under this paragraph 4 and any additional insurance that may be purchased on the Mortgaged Property by or on behalf of Borrower shall be deposited with and held by Lender and, in addition, Borrower shall deliver to Lender (a) receipts evidencing payment of all premiums on the policies and (b) duplicate original renewal policies or a binder with evidence satisfactory to Lender of payment of all premiums at least 30 days before the policy expires. In lieu of the duplicate original policies to be delivered to Lender under this paragraph 4.5, Borrower may deliver an underlier of any blanket policy, and Borrower may also deliver original certificates from the issuing insurance company, evidencing that such policies are in full force and effect and containing information that, in Lender's reasonable judgment, is sufficient to allow Lender to ascertain whether such policies comply with the requirements of this paragraph.

**4.6. Increased Coverage.** If Lender determines that the limits of any insurance carried by Borrower are inadequate or that additional coverage is required, Borrower shall, within 10 days after written notice from Lender, procure such additional coverage as Lender may require in Lender's sole and absolute discretion.

**4.7. No Separate Insurance.** Borrower shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this paragraph 4 unless endorsed in favor of Trustee and Lender as required by this paragraph and otherwise approved by Lender in all respects.

**4.8. Transfer of Title.** In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part, of the Obligations and the Indebtedness, all right, title, and interest of Borrower in and to all insurance policies required under this paragraph 4 or otherwise then in force with respect to the Mortgaged Property and all proceeds

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

payable under, and unearned premiums on, such policies shall immediately vest in the purchaser or other transferee of the Mortgaged Property.

**4.9.** **Replacement Cost.** For purposes of this paragraph 4, the term "full insurable value" means the actual cost of replacing the Mortgaged Property in question, without allowance for depreciation, as calculated from time to time (but not more often than once every calendar year) by the insurance company or companies holding such insurance or, at Lender's request, by appraisal made by an appraiser, engineer, architect, or contractor proposed by Borrower and approved by said insurance company or companies and Lender. Borrower shall pay the cost of such appraisal.

**4.10.** **Approval Not Warranty.** No approval by Lender of any insurer may be construed to be a representation, certification, or warranty of its solvency and no approval by Lender as to the amount, type, or form of any insurance may be construed to be a representation, certification, or warranty of its sufficiency.

**4.11.** **Lender's Right to Obtain.** Borrower shall deliver to Lender original policies or certificates evidencing such insurance at least 30 days before the existing policies expire. If any such policy is not so delivered to Lender or if any such policy is canceled, whether or not Lender has the policy in its possession, and no reinstatement or replacement policy is received before termination of insurance, Lender, without notice to or demand on Borrower, may (but is not obligated to) obtain such insurance insuring only Lender and Trustee with such company as Lender may deem satisfactory, and pay the premium for such policies, and the amount of any premium so paid shall be charged to and promptly paid by Borrower or, at Lender's option, may be added to the Indebtedness. Borrower acknowledges that, if Lender obtains insurance, it is for the sole benefit of Lender and Trustee, and Borrower shall not rely on any insurance obtained by Lender to protect Borrower in any way.

**4.12.** **Duty to Restore After Casualty.** If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) results in damage to or loss or destruction of the Mortgaged Property, Borrower shall immediately give notice of such loss or damage to Lender and, if Lender so instructs, shall promptly, at Borrower's sole cost and expense, regardless of whether any insurance proceeds will be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition, and character immediately before the damage, loss, or destruction.

**5.** **Condemnation and Insurance Proceeds.**

**5.1.** **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Deed of Trust, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Deed of Trust, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16 Borrowers Initials

**5.2. Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

5.2.1. Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of one of which shall constitute a default under this Deed of Trust, the Note, and any Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this paragraph 5 shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

5.2.2. If fewer than all conditions (a) through (i) in paragraph 5.2.1 are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this paragraph 5.2.2 to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) in paragraph 5.2.1 shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**5.3. Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**5.4. Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other

© 2007 Geraci Law Firm; All Rights Reserved.

total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Deed of Trust in such order as Lender may determine, until the Indebtedness secured by this Deed of Trust has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Deed of Trust shall be paid to Borrower as its interest may then appear.

**5.5.** **Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such funds and the other equal to the amount by which such funds exceed the principal balance of the Note at the time of receipt of such funds. The first such portion shall be applied to the sums secured by this Deed of Trust, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower. Any dispute as to the fair market value of the Mortgaged Property shall be settled by arbitration in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.

**5.6.** **No Cure of Waiver of Default.** Any application of such amounts or any portion of it to any Indebtedness secured by this Deed of Trust shall not be construed to cure or waive any default or notice of default under this Deed of Trust or invalidate any act done under any such default or notice.

**6.** **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Deed of Trust, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Deed of Trust or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Deed of Trust, whether or not specified in this Deed of Trust.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 6(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this paragraph 6, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Deed of Trust to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

**7.** **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Deed of Trust; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of

© 2007 Geraci Law Firm; All Rights Reserved.

setoff against rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. In accordance with section 19.13 below, any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, , then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

8. **Right to Collect and Receive Rents.** Despite any other provision of this Deed of Trust, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Deed of Trust or in the performance of any of the Obligations, and Lender shall have the rights set forth in California Civil Code §2938 regardless of whether declaration of default has been delivered to Trustee as provided in paragraph 21 of this Deed of Trust, and without regard to the adequacy of the security for the Indebtedness secured by this Deed of Trust. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Deed of Trust, after execution and delivery of declaration of default and demand for sale as provided in this Deed of Trust or during the pendency of trustee's sale proceedings under this Deed of Trust, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorney Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Deed of Trust, in such order as Lender may decide. Nothing in this Deed of Trust, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Deed of Trust to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Deed of Trust. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable

© 2007 Geraci Law Firm; All Rights Reserved.

on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

9. **Funds for Taxes and Insurance.** If Borrower is in default under this Deed of Trust or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Deed of Trust as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Deed of Trust in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this paragraph shall be deemed to affect any right or remedy of Lender under any other provision of this Deed of Trust or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Deed of Trust. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this paragraph is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this paragraph.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Deed of Trust. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Deed of Trust, apply such amounts or any portion of it to any Indebtedness secured by this Deed of Trust, and such application shall not be construed to cure or waive any default or notice of default under this Deed of Trust.

If Lender requires deposits to be made under this paragraph 9, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Deed of Trust, Lender shall have the right to transfer all amounts deposited under this paragraph 9 to the purchaser or assignee. After such a transfer, Lender shall be

© 2007 Geraci Law Firm; All Rights Reserved.

relieved and have no further liability under this Deed of Trust for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**10. <u>Assignment of Causes of Action, Awards, and Damages</u>.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Deed of Trust was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Deed of Trust. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorney Fees, incurred by Lender in recovering or collecting any sums under this paragraph 10, Lender may apply or release the balance of any funds received by it under this paragraph, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this paragraph and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**11. <u>Defense of Deed of Trust; Litigation</u>.** Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents. Despite any other provision of this Deed of Trust, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorney Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Deed of Trust, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if neither Lender nor Trustee elects to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorney Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Deed of Trust or to enforce any of its terms or provisions.

**12. <u>Borrower's Failure to Comply With Deed of Trust</u>.** If Borrower fails to make any payment or do any act required by this Deed of Trust, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Deed of Trust, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Note or this Deed of Trust, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Deed of Trust, or Lender's security for the

© 2007 Geraci Law Firm; All Rights Reserved.

performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorney Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

**13.** **Sums Advanced to Bear Interest and to Be Secured by Deed of Trust.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Deed of Trust or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender or Trustee shall be added to, and become a part of, the Indebtedness secured by this Deed of Trust and bear interest from the date of advancement or payment by Lender or Trustee at the same rate as provided in the Note, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Deed of Trust or the other Loan Documents, whether or not required to be advanced by Lender under the terms of this Deed of Trust or the other Loan Documents, shall conclusively be deemed to be mandatory advances required to preserve and protect this Deed of Trust and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Deed of Trust to the same extent and with the same priority as the principal and interest payable under the Note.

**14.** **Inspection of Mortgaged Property.** In addition to any rights Lender may have under California Civil Code §2929.5, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

**15.** **Financial Statements; Estoppel Certificates.**

**15.1.** **Borrower's Financial Statements.** On receipt of Lender's written request and without expense to Lender, Borrower shall furnish to Lender (a) an annual statement of the operation of the Mortgaged Property prepared and certified by Borrower, showing in reasonable detail satisfactory to Lender total Rents received and total expenses together with an annual balance sheet and profit and loss statement, within 90 days after the close of each fiscal year of Borrower, beginning with the fiscal year first ending after the date of recordation of this Deed of Trust; (b) within 30 days after the end of each calendar quarter (March 31, June 30, September 30, December 31) interim statements of the operation of the Mortgaged Property showing in reasonable detail satisfactory to Lender total Rents and other income and receipts received and total expenses for the previous quarter, certified by Borrower; and (c) copies of Borrower's annual state and federal income tax returns within 30 days after filing them. Borrower shall keep accurate books and records, and allow Lender, its representatives and agents, on notice, at any time during normal business hours, access to such books and records regarding acquisition, construction, and development of the Mortgaged Property, including any supporting or related vouchers or papers, shall allow Lender to make extracts or copies of any such papers, and shall furnish to Lender and its agents convenient facilities for the audit of any such statements, books, and records.

**15.2.** **Recordkeeping.** Borrower shall keep adequate records and books of account in accordance with generally accepted accounting principles and practices and shall permit Lender, by its agents, accountants, and attorneys, to examine Borrower's records and books of account and to discuss the affairs, finances, and accounts of Borrower with the officers of Borrower, at such reasonable times as Lender may request.

**15.3.** **Guarantors' Financial Statements.** Except to the extent already required by paragraph 15.1, Borrower, its controlling shareholders, and all guarantors of the Indebtedness, if any, shall deliver to Lender with reasonable promptness after the close of their respective fiscal years a balance sheet and profit and loss statement, prepared by an independent certified public accountant satisfactory to Lender, setting forth in each case, in comparative form, figures for the preceding year, which statements shall be accompanied by the unqualified opinion of such accountant as to their accuracy. Throughout the term of

© 2007 Geraci Law Firm; All Rights Reserved.

this Deed of Trust, Borrower and any guarantor shall deliver, with reasonable promptness, to Lender such other information with respect to Borrower or guarantor as Lender may from time to time request. All financial statements of Borrower or guarantor shall be prepared in accordance with generally accepted accounting principles and practices applied on a consistent basis and shall be delivered in duplicate. Documents and information submitted by Borrower to Lender are submitted confidentially, and Lender shall not disclose them to third parties and shall limit access to them to what is necessary to service the loan, accomplish the normal administrative, accounting, tax-reporting, and other necessary functions, to sell all or any part of the loan and to report such information as required to the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Internal Revenue Service, and similar entities.

**15.4. Estoppel Certificates.** Within 10 days after Lender's request for such information, Borrower shall execute and deliver to Lender, and to any third party designated by Lender, in recordable form, a certificate of the principal financial or accounting officer of Borrower, dated within 3 days after delivery of such statements, or the date of such request, as the case may be, reciting that the Loan Documents are unmodified and in full force and effect, or that the Loan Documents are in full force and effect as modified and specifying all modifications asserted by Borrower. Such certificate shall also recite the amount of the Indebtedness and cover other matters with respect to the Indebtedness or Obligations as Lender may reasonably require, the date(s) through which payments due on the Indebtedness have been paid and the amount(s) of any payments previously made on the Indebtedness. The certificate shall include a detailed statement of any right of setoff, counterclaim, or other defense that Borrower contends exists against the Indebtedness or the Obligations; a statement that such person knows of no Event of Default or prospective Event of Default that has occurred and is continuing, or, if any Event of Default or prospective Event of Default has occurred and is continuing, a statement specifying the nature and period of its existence and what action Borrower has taken or proposes to take with respect to such matter; and, except as otherwise specified, a statement that Borrower has fulfilled all Obligations that are required to be fulfilled on or before the date of such certificate.

**15.5. Failure to Deliver Estoppel Certificate.** If Borrower fails to execute and deliver the certificate required by paragraph 15.4 within such 10-day period, (a) the Loan Documents shall, as to Borrower, conclusively be deemed to be either in full force and effect, without modification, or in full force and effect, modified in the manner and to the extent specified by Lender, whichever Lender reasonably and in good faith may represent; (b) the Indebtedness shall, as to Borrower, conclusively be deemed to be in the amount specified by Lender and no setoffs, counterclaims, or other defenses exist against the Indebtedness; and (c) Borrower shall conclusively be deemed to have irrevocably constituted and appointed Lender as Borrower's special attorney-in-fact to execute and deliver such certificate to any third party.

**15.6. Reliance on Estoppel Certificate.** Borrower and Lender expressly agree that any certificate executed and delivered by Borrower, or any representation in lieu of a certificate made by Lender under paragraph 15.5, may be relied on by any prospective purchaser or any prospective assignee of any interest of Lender in the Note and other Indebtedness secured by this Deed of Trust or in the Mortgaged Property, and by any other person, without independent investigation or examination, to verify the accuracy, reasonableness, or good faith of the recitals in the certificate or representation.

**15.7. No Waiver of Default or Rights.** Lender's exercise of any right or remedy provided by this paragraph 15 shall not constitute a waiver of, or operate to cure, any default by Borrower under this Deed of Trust, or preclude any other right or remedy that is otherwise available to Lender under this Deed of Trust or Governmental Requirements.

**16. Uniform Commercial Code Security Agreement.** This Deed of Trust is intended to be and shall constitute a security agreement under the California Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the California Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law.

© 2007 Geraci Law Firm; All Rights Reserved.

Borrower agrees that Lender may file this Deed of Trust, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State of the State of California and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Deed of Trust or executed duplicate original of this Deed of Trust, or a copy certified by a County Recorder in the State of California, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Deed of Trust in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the California Uniform Commercial Code and, at Lender's option, may also invoke the remedies in paragraph 21 of this Deed of Trust as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the California Uniform Commercial Code or of the remedies in paragraph 21 of this Deed of Trust.

17. **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing under California Commercial Code §9502(c), as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement.

18. **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Deed of Trust, to the fullest extent permitted by Governmental Requirements.

19. **Events of Default.** The term Event of Default as used in this Deed of Trust means the occurrence or happening, at any time and from time to time, of any one or more of the following:

19.1. **Payment of Indebtedness.** Borrower fails to pay any installment of interest and/or principal under the Note or any other Indebtedness when due and such failure continues for more than 10 days after the date such payment was due and payable whether on maturity, the date stipulated in any Loan Document, by acceleration, or otherwise.

19.2. **Performance of Obligations.** The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required.

19.3. **Judgment.** If any final judgment, order, or decree is rendered against Borrower or a guarantor and is not paid or executed on, or is not stayed by perfection of an appeal or other appropriate action, such as being bonded, or is not otherwise satisfied or disposed of to Lender's satisfaction within 30 days after entry of the judgment, order, or decree.

19.4. **Voluntary Bankruptcy.** If Borrower or any guarantor (a) seeks entry of an order for relief as a debtor in a proceeding under the Bankruptcy Code; (b) seeks, consents to, or does not contest the appointment of a receiver or trustee for itself or for all or any part of its property; (c) files a petition seeking relief under the bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or any other competent jurisdiction; (d) makes a general assignment for the benefit of its creditors; or (e) states in writing its inability to pay its debts as they mature.

19.5. **Involuntary Bankruptcy.** If (a) a petition is filed against Borrower or any guarantor seeking relief under any bankruptcy, arrangement, reorganization, or other debtor relief laws of the United States or any state or other competent jurisdiction; or (b) a court of competent jurisdiction enters an order, judgment, or decree appointing, without the consent of Borrower or any guarantor, a receiver or trustee for it, or for all or any part of its property; and (c) such petition, order, judgment, or decree is not discharged or stayed within 30 days after its entry.

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

**19.6. Foreclosure of Other Liens.** If the holder of any lien or security interest on the Mortgaged Property (without implying Lender's consent to the existence, placing, creating, or permitting of any lien or security interest) institutes foreclosure or other proceedings to enforce its remedies thereunder and any such proceedings are not stayed or discharged within 30 days after institution of such foreclosure proceedings.

**19.7. Sale, Lease, Encumbrance, or Other Transfer.** Any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), transfer of possession, or other disposition of all or any portion of the Land or Improvements or any of Borrower's interest in the Land or Improvement without Lender's prior written consent, or any sale, lease, exchange, assignment, conveyance, encumbrance (other than a Permitted Encumbrance), or other disposition of any portion of the Personalty, without Lender's prior written consent.

**19.8. Title and Lien Priority.** If Borrower's title to any or all of the Mortgaged Property or the status of this Deed of Trust as a second position lien and security interest on the Mortgaged Property is endangered in any manner, and Borrower fails to cure the same on Lender's demand; provided, however, that Borrower shall not be in default under this paragraph if Borrower is diligently pursuing a contest or cure of such title or lien issue and Borrower has posted adequate security to protect Lender's rights, interest, and priority under this Deed of Trust, as determined by Lender.

**19.9. Other Defaults.** The occurrence of an Event of Default or any default, as defined or described in the other Loan Documents, or the occurrence of a default on any Indebtedness or Obligations.

**19.10. Levy on Assets.** A levy on any of the assets of Borrower or any guarantor, and such levy is not stayed or abated within 30 days after such levy.

**19.11. Breach of Representations.** The breach of any representation, warranty, or covenant in this Deed of Trust or other Loan Documents.

**19.12. Default Under Prior Deed of Trust, Security Instrument, or Lien.** The failure to pay on a timely basis, or the occurrence of any other default under any note, deed of trust, contract of sale, lien, charge, encumbrance, or security interest encumbering or affecting the Mortgaged Property and having priority over the lien of this Deed of Trust.

**19.13 Violation of Governmental Requirements.** The failure of Borrower, any tenant, or any other occupant of the Mortgage Property to comply with any Governmental Requirement. In accordance with section 7 above, any potential violation by a tenant or other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Note and this Deed of Trust, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

**20. Acceleration on Transfer or Encumbrance.**

**20.1. Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, contracts to sell, gives an option to purchase, conveys, leases with an option to purchase, encumbers, or alienates the Mortgaged Property, or any interest in it, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of beneficial interests in Borrower equal to twenty five percent (25%) or more of the beneficial ownership interests of Borrower outstanding at the date of this Deed of Trust; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in this Deed of Trust, including those in paragraph 21.

© 2007 Geraci Law Firm; All Rights Reserved.

**20.2. Replacement Personalty.** Despite the provisions of paragraph 20.1, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Deed of Trust in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Deed of Trust constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements, including §9334 of the California Commercial Code.

**20.3. Permitted Encumbrances.** If Lender consents in writing, which consent may not be unreasonably withheld, the due-on-encumbrance provision set forth in paragraph 20.1 shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Note); as long as Borrower gives Lender at least 30 days written notice of the further encumbrance and reimburses Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance.

**21. Acceleration and Sale on Default.** If an Event of Default occurs, Lender, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Lender and reciting facts demonstrating such default by Borrower, together with a written notice of default and election to sell the Mortgaged Property. Lender shall also deposit with Trustee the Note, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Governmental Requirements. On the expiration of such period as may then be required by Governmental Requirements following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Governmental Requirement, Trustee, without demand on Borrower, shall sell the Mortgaged Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Lender may direct (Borrower waives any right it may have under Governmental Requirements to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Lender may offset its bid at such sale to the extent of the full amount owed to Lender under the Loan Documents, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and Attorney Fees incurred by or on behalf of Lender in connection with collecting, litigating, or otherwise enforcing any right under the Loan Documents. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Mortgaged Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact concerning notices shall be conclusive proof of its truthfulness. Any person, including Borrower, Trustee, or Lender, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Lender or any other person, shall be applied as follows: (1) To the payment of the costs and expenses of such sale, including Trustee's fees, costs of title evidence, Attorney Fees, and reasonable compensation to Lender

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

and its agents and consultants, and of any judicial proceedings in which the same costs and expenses of sale may be made, and of all expenses, liabilities, and advances made or incurred by the Trustee or Lender under this Deed of Trust, together with interest at the rate set forth in the Note on all advances made by the Trustee or Lender and all taxes or assessments, except any taxes, assessments, or other charges subject to which the Mortgaged Property was sold; (2) to the payment of the whole amount then due, owing, or unpaid on the Note for interest and principal, with interest on the unpaid principal at the Default Rate (as defined in the Note), from the due date of any such payment of principal until the same is paid; (3) to the payment of any other Indebtedness required to be paid by Borrower under any provision of this Deed of Trust, the Note, or any of the other Loan Documents; and (4) to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive it.

**22. Borrower's Obligation to Notify Lender.**

**22.1 Bankruptcy, Insolvency, Transfer, or Encumbrance.** Borrower shall notify Lender in writing, at or before the time of the occurrence of any event described in paragraphs 19 and 20 of this Deed of Trust, of such event and shall promptly furnish Lender with any and all information on such event that Lender may request.

**22.2 Government Notice.** Borrower shall give immediate written notice to Lender of any notice, proceeding or inquiry by any Governmental Authority. Borrower shall provide such notice to Lender within five (5) days of Borrower's knowledge, constructive or actual, of any such notice, proceeding or inquiry by any Government Authority.

**23. Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Deed of Trust, and despite any other provision of this Deed of Trust, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Deed of Trust and to establish the order in which all or any part of the Indebtedness secured by this Deed of Trust is satisfied from the proceeds realized on the exercise of the remedies provided in this Deed of Trust. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Deed of Trust waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Deed of Trust or otherwise provided by Governmental Requirements.

**24. Environmental Matters.**

**24.1. Borrower's Representations and Warranties.** Borrower represents and warrants to Lender that:

24.1.1. The Mortgaged Property and Borrower are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

24.1.2. Borrower has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

24.1.3. Borrower has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

24.1.4. No part of the Mortgaged Property is being used or, to the knowledge of Borrower, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination.

24.1.5. To the best of Borrower's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

24.1.6. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed,

© 2007 Geraci Law Firm; All Rights Reserved.

threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Borrower's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

24.1.7. Neither Borrower nor, to the best of Borrower's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

24.1.8. The use that Borrower makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

24.1.9. Borrower shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

24.1.10. Neither Borrower nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

**24.2. Survival of Representations and Warranties.** The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

**24.3. Notice to Lender.** Borrower shall give prompt written notice to Lender of:

24.3.1. Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

24.3.2. All claims made or threatened by any third party against Borrower or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

24.3.3. Any notice given to Borrower under California Civil Code §851(b); and

24.3.4. Borrower's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

**24.4. Lender's Right to Join Legal Actions.** Lender shall have the right, at its option, but at Borrower's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Borrower or the Mortgaged Property in connection with any Environmental Laws.

**24.5. Borrower's Indemnity.** Borrower shall indemnify, defend, and hold harmless Lender, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Lender to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

**25. Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Deed of Trust of any pending sale under any other deed of trust or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Deed of Trust, Lender's security for the payment of

© 2007 Geraci Law Firm; All Rights Reserved.

the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

**26. Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Deed of Trust to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Deed of Trust, or (b) the lien of this Deed of Trust on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Deed of Trust, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Deed of Trust; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust.

**27. Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Deed of Trust to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Deed of Trust. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Deed of Trust.

**28. Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Deed of Trust, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Deed of Trust, the book and page or instrument or document number at which, and the county or counties in which, this Deed of Trust is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Deed of Trust, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this paragraph for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

**29. No Waiver by Lender.** No waiver by Lender of any right or remedy provided by the Loan Documents or Governmental Requirements shall be effective unless such waiver is in writing and signed by two authorized officers of Lender. Waiver by Lender of any right or remedy granted to Lender under the Loan Documents or Governmental Requirements as to any transaction or occurrence shall not be deemed a waiver of any future transaction or occurrence. The acceptance of payment of any sum secured by this Deed of Trust after its due date, or the payment by Lender of any Indebtedness or the performance by Lender of any Obligations of Borrower under the Loan Documents, on Borrower's failure to do so, or the addition of any payment so made by Lender to the Indebtedness secured by this Deed of Trust, or the exercise of Lender's right to enter the Mortgaged Property and receive and collect the Rents from it, or the assertion by Lender of any other right or remedy under the Loan Documents, shall not constitute a waiver of Lender's right to require prompt performance of all other Obligations of Borrower under the Loan Documents and payment of the Indebtedness, or to exercise any other right or remedy under the Loan Documents for any failure by Borrower to timely and fully pay the Indebtedness and perform its

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Obligations under the Loan Documents. Lender may waive any right or remedy under the Loan Documents or Governmental Requirements without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or other interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing.

**30.** **Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Deed of Trust or in the performance of any Obligations under this Deed of Trust or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Deed of Trust, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under paragraph 9 of this Deed of Trust; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Deed of Trust; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this paragraph shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Deed of Trust and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Deed of Trust; or (iii) the lien or priority of the lien of this Deed of Trust. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorney Fees as Lender may have advanced, for any action taken by Lender under this paragraph.

Whenever Lender's consent or approval is specified as a condition of any provision of this Deed of Trust, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**31.** **Waiver of Right of Offset.** No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure section 431.70, which provides:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is

© 2007 Geraci Law Firm; All Rights Reserved.

barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9.

32. **Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Deed of Trust when evidenced by promissory notes reciting that such note(s) are secured by this Deed of Trust.

33. **Prepayment.** If the Note secured by this Deed of Trust provides for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under this Deed of Trust and Lender, for that reason or by reason of paragraphs 20 and 21 of this Deed of Trust, shall have declared all sums secured by this Deed of Trust immediately due and payable.

34. **Additional Borrower Representations.** To induce Lender to enter into this Deed of Trust, the Note, and the other Loan Documents and to make the Loan, Borrower makes the following representations and warranties, which are deemed made as of both the date and the recordation of this Deed of Trust:

**34.1. Capacity.** Borrower and the individuals executing Loan Documents on Borrower's behalf have the full power, authority, and legal right to execute and deliver, and to perform and observe the provisions of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan, and to carry out the contemplated transactions.

**34.2. Authority and Enforceability.** Borrower's execution, delivery, and performance of this Deed of Trust, the Note, the other Loan Documents, and any other document, agreement, certificate, or instrument executed in connection with the Loan have been duly authorized by all necessary corporate or other business entity action and do not and shall not require any registration with, consent, or approval of, notice to, or any action by any Person or Governmental Authority. Borrower has obtained or will obtain on or before the recordation of this Deed of Trust all necessary Governmental Authority and other approvals necessary for Borrower to comply with the Loan Documents. This Deed of Trust, the Note, and the other Loan Documents executed in connection with the Loan, when executed and delivered by Borrower, shall constitute the legal, valid, binding, and joint and several obligations of Borrower enforceable in accordance with their respective terms.

**34.3. Compliance With Other Instruments.** The execution and delivery of this Deed of Trust and the other Loan Documents, and compliance with their respective terms, and the issuance of the Note and other Loan Documents as contemplated in this Deed of Trust, shall not result in a breach of any of the terms or conditions of, or result in the imposition of, any lien, charge, or encumbrance (except as created by this Deed of Trust and the other Loan Documents) on any properties of Borrower, or constitute a default (with due notice or lapse of time or both) or result in an occurrence of an event for which any holder or holders of indebtedness may declare the same due and payable under, any indenture, agreement, order, judgment, or instrument to which Borrower is a party or by which Borrower or its properties may be bound or affected.

**34.4. Compliance With Law.** The execution and delivery of this Deed of Trust, the Note, and the other Loan Documents, or any other document, agreement, certificate, or instrument to which Borrower is bound in connection with the Loan, do not conflict with, result in a breach or default under, or create any lien or charge under any provision of any Governmental Requirements to which it is subject and shall not violate any of the Governmental Requirements.

**34.5. Material Adverse Events.** Since the date of the financial statements delivered to Lender before recordation of this Deed of Trust, neither the condition (financial or otherwise) nor the business of Borrower and the Mortgaged Property have been materially adversely affected in any way.

**34.6. Litigation.** There are no actions, suits, investigations, or proceedings pending or, to Borrower's knowledge after due inquiry and investigation, threatened against or affecting Borrower at

© 2007 Geraci Law Firm; All Rights Reserved.

law or in equity, before or by any Person or Governmental Authority, that, if adversely determined, would have a material adverse effect on the business, properties, or condition (financial or otherwise) of Borrower or on the validity or enforceability of this Deed of Trust, any of the other Loan Documents, or the ability of Borrower to perform under any of the Loan Documents.

**34.7. No Untrue Statements.** All statements, representations, and warranties made by Borrower in this Deed of Trust or any other Loan Document and any other agreement, document, certificate, or instrument previously furnished or to be furnished by Borrower to Lender under the Loan Documents (a) are and shall be true, correct, and complete in all material respects at the time they were made and on and as of the recordation of this Deed of Trust, (b) do not and shall not contain any untrue statement of a material fact, and (c) do not and shall not omit to state a material fact necessary to make the information in them neither misleading nor incomplete. Borrower understands that all such statements, representations, and warranties shall be deemed to have been relied on by Lender as a material inducement to make the Loan.

**34.8. Policies of Insurance.** Each copy of the insurance policies relating to the Mortgaged Property delivered to Lender by Borrower (a) is a true, correct, and complete copy of the respective original policy in effect on the date of this Deed of Trust, and no amendments or modifications of said documents or instruments not included in such copies have been made, except as stated in this paragraph 34.8 and (b) has not been terminated and is in full force and effect. Borrower is not in default in the observance or performance of its material obligations under said documents or instruments and Borrower has done all things required to be done as of the date of this Deed of Trust to keep unimpaired its rights thereunder.

**34.9. Financial Statements.** All financial statements furnished to Lender are true and correct in all material respects, are prepared in accordance with generally accepted accounting principles, and do not omit any material fact the omission of which makes such statement or statements misleading. There are no facts that have not been disclosed to Lender by Borrower in writing that materially or adversely affect or could potentially in the future affect the Mortgaged Property or the business prospects, profits, or condition (financial or otherwise) of Borrower or any guarantor or Borrower's abilities to perform the Obligations and pay the Indebtedness.

**34.10. Water Rights.** (a) Borrower is the sole owner of record of the Water Rights; (b) the Water Rights are appurtenant to the Mortgaged Property and are free and clear of all liens and encumbrances except as set forth in the title report described in paragraph 1.22; (c) the Water Rights are sufficient to satisfy all water requirements of the development of the Mortgaged Property as presently contemplated; (d) the Water Rights include all water rights appurtenant to the Mortgaged Property; (e) Borrower has received a water service commitment from the applicable local water district, guaranteeing water service for the Mortgaged Property in an amount necessary to satisfy the requirements for such property in its currently contemplated final state of development; and (f) on recordation of this Deed of Trust with the county recorder, Lender shall have a valid, first priority, perfected security interest in the Water Rights.

**34.11. Taxes.** Borrower has filed or caused to be filed all tax returns that are required to be filed by Borrower under the Governmental Requirements of each Governmental Authority with taxing power over Borrower, and Borrower has paid, or made provision for the payment of, all taxes, assessments, fees, and other governmental charges that have or may have become due under said returns, or otherwise, or under any assessment received by Borrower except that such taxes, if any, as are being contested in good faith and as to which adequate reserves (determined in accordance with generally accepted accounting principles) have been provided.

**34.12. Leases.** If the Mortgaged Property includes a leasehold estate, Borrower has not and shall not surrender, terminate, cancel, waive, accept waiver, change, supplement, grant subleases of, alter, surrender, or amend, and shall comply with all terms, covenants, and conditions in the Leasehold.

**34.13. Further Acts.** Borrower shall, at its sole cost and expense, and without expense to Trustee or Lender, do, execute, acknowledge, and deliver all and every such further acts, deeds,

© 2007 Geraci Law Firm; All Rights Reserved.

conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers, and assurances as Trustee or Lender shall from time to time require, for the purpose of better assuring, conveying, assigning, transferring, pledging, mortgaging, warranting, and confirming to Trustee the Mortgaged Property and rights, and as to Lender the security interest as to the Personalty, conveyed or assigned by this Deed of Trust or intended now or later so to be, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering, or recording this Deed of Trust and, on demand, shall execute and deliver, and authorizes Lender to execute in the name of Borrower, to the extent it may lawfully do so, one or more financing statements, chattel mortgages, or comparable security instruments, to evidence more effectively the lien of this Deed of Trust on the Mortgaged Property.

**34.14. Filing Fees.** Borrower shall pay all filing, registration, or recording fees, all Governmental Authority stamp taxes and other fees, taxes, duties, imposts, assessments, and all other charges incident to, arising from, or in connection with the preparation, execution, delivery, and enforcement of the Note, this Deed of Trust, the other Loan Documents, any supplemental deed of trust or mortgage, or any instrument of further assurance.

**34.15. Entity Compliance.** As long as it is the owner of the Mortgaged Property, Borrower, if a corporation, limited liability company, or partnership, shall do all things necessary to preserve and keep in full force and effect its existence, franchises, rights, and privileges as such entity under the laws of the state of its incorporation or formation, and shall comply with all Governmental Requirements of any Governmental Authority applicable to Borrower or to the Mortgaged Property or any part of it.

**35. Governing Law.** This instrument shall be deemed to have been made in the State of California, and the validity of this Deed of Trust and the other Loan Documents, their construction, interpretation, and enforcement, and the parties' rights under such documents and concerning the Mortgaged Property, shall be decided under, governed by, and construed in accordance with the laws of the State of California. The parties agree that all actions or proceedings arising in connection with this Deed of Trust and the other Loan Documents shall be tried and litigated only in the state courts located in the County in which notice shall be sent to Lender pursuant this Deed of Trust, or the applicable federal district court that covers said County. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

**36. Taxation of Deeds of Trust.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Deed of Trust, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Deed of Trust.

**37. Mechanics' Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Deed of Trust shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanics', laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**38. Brokerage.** Borrower represents and warrants to Lender that Borrower has not dealt with any Person, other than the parties identified in the final settlement statement, who are or may be entitled to

© 2007 Geraci Law Firm; All Rights Reserved.

any finder's fee, brokerage commission, loan commission, or other sum in connection with the execution of this Deed of Trust, the consummation of the transactions contemplated by this Deed of Trust, or the making of the Loan secured by this Deed of Trust by Lender to Borrower, and Borrower indemnifies and agrees to hold Lender harmless from and against any and all loss, liability, or expense, including court costs and Attorney Fees, that Lender may suffer or sustain if such warranty or representation proves inaccurate in whole or in part.

**39.** **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Deed of Trust, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**40.** **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by the Loan Documents shall be in writing; (b) each notice shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

Lender: Genova Capital, Inc.
At the address provided above

Borrower: Brigham Field and Colette Pelissier
At the address provided above

Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

To the extent permitted by Governmental Requirements, if there is more than one Borrower, notice to any Borrower shall constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

**41.** **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Deed of Trust.

**42.** **Application of Payments.** Except as otherwise expressly provided by Governmental Requirements or any other provision of this Deed of Trust, all payments received by Lender from Borrower under the Loan Documents shall be applied by Lender in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note or the Deed of Trust, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**43.** **Remedies Are Cumulative.** Each remedy in this Deed of Trust is separate and distinct and is cumulative to all other rights and remedies provided by this Deed of Trust or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**44.** **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Deed of Trust shall be the joint and several obligations of each such Person.

© 2007 Geraci Law Firm; All Rights Reserved.

**45. Severability.** If any provision of the Loan Documents, or the application of them to the circumstances, is held void, invalid, or unenforceable by a court of competent jurisdiction, the Loan Documents, and the applications of such provision to other parties or circumstances, shall not be affected thereby, the provisions of the Loan Documents being severable in any such instance.

**46. Delegation of Authority.** Whenever this Deed of Trust provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**47. General Provisions.**

**47.1. Successors and Assigns.** Subject to paragraphs 19 and 20 of this Deed of Trust, this Deed of Trust applies to, inures to the benefit of, and binds, the respective heirs, legatees, devisees, administrators, executors, successors, and assigns of each party to this Deed of Trust.

**47.2. Meaning of Certain Terms.** As used in this Deed of Trust and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Deed of Trust as a whole, rather than any particular provision of it.

**47.3. Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Deed of Trust, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**47.4. Gender and Number.** Wherever the context so requires in this Deed of Trust, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**47.5. Captions.** Captions and paragraph headings used in this Deed of Trust are for convenience of reference only, are not a part of this Deed of Trust, and shall not be used in construing it.

**47.6. Time Is of the Essence.** As a material inducement and consideration to the parties entering into this Deed of Trust, and but for this provision the parties would not enter into this Deed of Trust, the parties agree that the performance in a timely manner of each deadline set forth in this Deed of Trust before its expiration is of crucial importance to the parties. Failure by a party to timely perform an obligation before the deadline set forth in this Deed of Trust (no matter for what reason, nor how soon thereafter it may have been performed, nor the lack of prejudice to the other party as the result of such nonperformance) shall result in a default by the nonperforming party or the failure of a condition, as appropriate. The parties expressly waive any equitable relief with respect to a missed deadline.

**48. Leasehold Provisions.**

**48.1. Leasehold Estate.** If the security for this Deed of Trust is a leasehold estate demised by a lease (the "Leasehold"), this Deed of Trust shall be a lien on all present and future right, title, estate, and interest of Borrower in the Mortgaged Property and Improvements covered by the Leasehold and on all Mortgaged Property interests acquired by Borrower as a result of the exercise of any option in the Leasehold or as amended, in the same manner and to the same extent as if the Mortgaged Property encompassed in the Leasehold and option agreements had been held in fee by Borrower at the time of the execution of this Deed of Trust, and Borrower agrees not to amend, change, or modify its leasehold interest, or any of its terms, or to exercise any option to purchase, or agree to do so, without having obtained Lender's prior written consent. In a violation of this provision, Lender may, at its option, declare all sums secured by this Deed of Trust immediately due and payable. Consent to any amendment, change, or modification, or a waiver of the right to require such consent in one instance, shall not be a waiver of the right to require such consent at a subsequent time. The term "Mortgaged Property" as used in this Deed of Trust means such leasehold estate or any other present or future interest of Borrower in the Mortgaged Property whenever the context requires.

**48.2. Compliance With Leasehold.** In the event that the security for this Deed of Trust is a leasehold estate, Borrower covenants and agrees as follows: (a) to promptly and faithfully observe, perform, and comply with all Leasehold terms, covenants, and provisions on its part to be observed, performed, and complied with, at the times set forth in the Leasehold; (b) not to do, permit, suffer, or

© 2007 Geraci Law Firm; All Rights Reserved.

refrain from doing anything, as a result of which, there would be a default under or breach of any of the terms of the Leasehold; (c) not to cancel, surrender, modify, amend, or in any way alter or permit the alteration of any of the terms of the Leasehold; (d) to give Lender immediate notice of any default by anyone under the Leasehold and to promptly deliver to Lender copies of each notice of default and all other notices, communications, plans, specifications, and other similar instruments received or delivered by Borrower in this connection; (e) to furnish to Lender such information and evidence as Lender may reasonably require for Borrower's due observance, performance, and compliance with the Leasehold terms, covenants, and provisions; (f) that any default of the tenant under the Leasehold shall constitute an Event of Default under this Deed of Trust; and (g) to give immediate written notice to Lender of the commencement of any remedial proceedings under the Leasehold by any party to it and, if required by Lender, to permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings. Borrower expressly transfers and assigns to Lender the benefit of all covenants in the Leasehold, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants or any other covenants in the Leasehold.

**48.3. Borrower's Warranties and Representations.** With respect to the Leasehold, Borrower warrants and represents as follows: (a) the Leasehold is in full force and effect, unmodified by any writing or otherwise, except as specifically set forth in Exhibit A; (b) all rent, additional rent, and other charges reserved in the Leasehold have been paid to the extent they are payable to the date of this Deed of Trust; (c) Borrower enjoys the quiet and peaceful possession of the Mortgaged Property demised by the Leasehold; (d) Borrower is not in default under any Leasehold term and, to the best of its knowledge, there are no circumstances that, with the passage of time or the giving of notice or both, would constitute an Event of Default under the Leasehold; (e) to the best of Borrower's knowledge, the landlord under the Leasehold is not in default under any Leasehold term or provision the landlord is required to observe or perform.

**48.4. Assignments to Lender.** If Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency, moratorium law, or any other law or laws for the relief of or relating to debtors, on demand by Lender, Borrower covenants to transfer and assign to Lender its leasehold estate and the Leasehold in lieu of rejection of the Leasehold by Borrower and covenants to assign to Lender its right to accept or reject the Leasehold and to apply for any extension of time within which to accept or reject the Leasehold. These assignments to Lender shall be automatic on Lender's demand. If Lender demands the assignment of the Leasehold under this Deed of Trust, Lender covenants to cure any defaults outstanding under the Leasehold after the Leasehold is assigned to Lender.

**48.5. Default Under Leasehold.** If Borrower defaults in performing any of its obligations under the Leasehold, including, without limitation, any default in the payment of rent and other charges and impositions made payable by the tenant under the Leasehold, then, in each and every case, Lender may, at its option and without notice, cause the default or defaults to be remedied and otherwise exercise any and all of the rights of Borrower under the Leasehold in the name of and on behalf of Borrower. Borrower shall, on demand, reimburse Lender for all advances made and expenses incurred by Lender in curing any such default (including, without limitation, reasonable Attorney Fees), together with interest computed at the rate provided for in the Note from the date that an advance is made or expense is incurred, to and including the date the same is paid. Lender shall have no duty to prevent the termination of the leasehold estate by the landlord. If the landlord terminates the leasehold estate, Lender shall have the right, at its option, to declare all sums secured by this Deed of Trust immediately due and payable and immediately bring an action on the Note, provided there is no other real property security for the Note.

**48.6. Options.** Borrower shall give Lender notice of its intention to exercise each and every option to extend the term of the Leasehold at least 20 days but not more than 60 days before expiration of the time to exercise such option under the Leasehold. If Borrower intends to extend the term of the Leasehold, it shall deliver to Lender, with the notice of such decision, a copy of the notice of extension delivered to the landlord under the Leasehold. If Borrower does not intend to extend the term of the

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

Leasehold, Lender may, at its option, exercise the option to extend in the name and on behalf of Borrower.

**48.7.** **No Merger/Attorney-in-Fact.** It is hereby agreed that the fee title, the leasehold estate, and the subleasehold estate in the Mortgaged Property demised by the Leasehold shall not merge but shall be kept separate and distinct, despite the union of these estates in either the landlord under the Leasehold, Borrower, or a third party, whether by purchase or otherwise. If Borrower acquires the fee title or any other estate, title, or interest in the Mortgaged Property demised by the Leasehold or any part of it, the lien of this Deed of Trust shall attach to, cover, and be a lien on such acquired estate, title, or interest and it shall simultaneously be and become a part of the Mortgaged Property with the same force and effect as if specifically encumbered in this Deed of Trust. Borrower agrees to execute all instruments and documents that Lender may reasonably require to ratify, confirm, and further evidence Lender's lien on the acquired estate, title, or interest. Furthermore, Borrower appoints Lender as its true and lawful attorney-in-fact to execute and deliver all such instruments and documents in the name and on behalf of Borrower. This power, being coupled with an interest, shall be irrevocable as long as any amounts secured by this Deed of Trust remain unpaid.

**48.8.** **Interests in Successor Leasehold.** If the Leasehold is canceled or terminated, and if Lender or its nominee shall acquire an interest in any new lease of the Mortgaged Property demised by the Leasehold, Borrower shall have no right, title, or interest in or to the new lease or the leasehold estate created by such new lease.

**48.9.** **Estoppel Certificate.** Borrower shall use its best efforts to obtain and deliver to Lender, within 20 days after written demand by Lender, an estoppel certificate from the landlord under the Leasehold setting forth (a) the name of the tenant under the Leasehold, (b) that the Leasehold has not been modified or, if it has been modified, the date of each modification (together with copies of each such modification), (c) the basic rent payable under the Leasehold, (d) the date to which the tenant paid all rental charges under the Leasehold, and (e) whether there are any alleged defaults of the tenant under the Leasehold and, if there are, setting forth their nature in reasonable detail.

**48.10.** **Limitations on Lender's Liability Under Leasehold.** Despite anything to the contrary in this Deed of Trust, this Deed of Trust shall not constitute an assignment of the Leasehold within the meaning of any provision of the Leasehold prohibiting its assignment, and Lender shall have no liability or obligation under the Leasehold because of its acceptance of this Deed of Trust. Lender shall be liable for the tenant's obligations arising under the Leasehold for only that period of time that Lender is in possession of the Mortgaged Property covered by the Leasehold or has acquired, by foreclosure or otherwise, and is holding all of Borrower's right, title, and interest in the Mortgaged Property covered by the Leasehold.

**49.** **Improper Financial Transactions.**

**49.1** Borrower is, and shall remain at all times, in full compliance with all applicable laws and regulations of the United States of America that prohibit, regulate or restrict financial transactions, and any amendments or successors thereto and any applicable regulations promulgated thereunder (collectively, the "Financial Control Laws"), including but not limited to those related to money laundering offenses and related compliance and reporting requirements (including any money laundering offenses prohibited under the Money Laundering Control Act, 18 U.S.C. Section 1956 and 1957 and the Bank Secrecy Act, 31 U.S.C. Sections 5311 et seq.) and the Foreign Assets Control Regulations, 31 C.F.R. Section 500 et seq.

**49.2** Borrower represents and warrants that: Borrower is not a Barred Person (hereinafter defined); Borrower is not owned or controlled, directly or indirectly, by any Barred Person; and Borrower is not acting, directly or indirectly, for or on behalf of any Barred Person.

**49.3** Borrower represents and warrants that it understands and has been advised by legal counsel on the requirements of the Financial Control Laws.

**49.4** Under any provision of this Deed of Trust or any of the other Loan Documents where Lender shall have the right to approve or consent to any particular action, including, without limitation

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

any (A) sale, transfer, assignment of the Mortgaged Property, or any direct or indirect ownership interest in Borrower, (B) leasing of the Mortgaged Property, or any portion thereof, or (C) incurring any additional financing secured by Mortgaged Property, or any portion thereof, or by any direct or indirect ownership interest in Borrower, Lender shall have the right to withhold such approval or consent, in its sole discretion, if the granting of such approval or consent could be construed as a violation of any of the Financial Control Laws.

**49.5** Borrower covenants and agrees that it will upon request provide Lender with (or cooperate with Lender in obtaining) information required by Lender for purposes of complying with any Financial Control Laws.

**49.6** As used in this Deed of Trust, the term "Barred Person" shall mean (A) any person, group or entity named as a "Specially Designated National and Blocked Person" or as a person who commits, threatens to commit, supports, or is associated with terrorism as designated by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), (B) any person, group or entity named in the lists maintained by the United States Department of Commerce (Denied Persons and Entities), (C) any government or citizen of any country that is subject to a United States Embargo identified in regulations promulgated by OFAC, and (D) any person, group or entity named as a denied or blocked person or terrorist in any other list maintained by any agency of the United States government.

**50. Dispute Resolution: Waiver of Right to Jury Trial**

**50.1 ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**50.2 WAIVER OF RIGHT TO JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THIS DEED OF TRUST. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. BORROWER AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THIS DEED OF TRUST, LENDER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THIS DEED OF TRUST OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST.

BORROWER'S INITIALS: ______ ______

**50.3 PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in Section 50.2, above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment

© 2007 Geraci Law Firm; All Rights Reserved.

attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in Section 50.2, above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in Section 50.2, above.

**51. <u>Contractual Right to Appoint a Receiver Upon Default</u>**. Upon an Event of Default under this Deed of Trust or a breach of any clause of any agreement signed in connection with the loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**52. <u>REQUEST OF NOTICE OF DEFAULT OF SENIOR LIEN</u>**. In accordance with Section 2924b of the Civil Code of California, request is hereby made by the Trustor that a copy of any Notice of Default and a copy of any Notice of Sale under a deed of trust recorded on March 26, 2014, as Instrument Number 20140326-00038119-0, in the official records of Ventura County, California, affecting the Mortgaged Property executed by Brigham Field and Colette Pelissier, husband and wife, as community property with right of survivorship, as Trustor in which Banc of California, National Association, a Commercial Bank is named as Beneficiary, and Fidelity National Title as Trustee, be mailed to:

Genova Capital, Inc.
555 Corporate Drive, Suite 120
Ladera Ranch, California 92694

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16
Borrowers Initials

IN WITNESS WHEREOF, Borrower has executed and delivered this Deed of Trust as of the date first written above.

**BORROWER:**

**BRIGHAM FIELD AND COLETTE PELISSIER**

Brigham Field, an individual

Colette Pelissier, an individual

© 2007 Geraci Law Firm; All Rights Reserved.

Rev. 01/16

_____ _____ Borrowers Initials

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of Los Angeles )

On April 12, 2017 (Date) before me, C. Benbaruh (Here Insert Name of the Officer), Notary Public

Personally Appeared Colette pelissier, Brigham, Field (Name(s) of Signer(s)),

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

C. BENBARUH
Commission # 2072379
Notary Public - California
Los Angeles County
My Comm. Expires Jun 23, 2018

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature C Benbaruh
Signature of Notary Public

© 2007 Geraci Law Firm; All Rights Reserved.

Order No: 09202389-920-CMM-CM8

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146 PAGE(S) 19 THROUGH 22 INCLUSIVE OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ONE-EIGHTH OF MINERALS, OILS, PETROLEUM, ASPHALTUM, GAS, COAL, AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED NOVEMBER 17, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.

EXCEPTING THEREFROM, EASEMENTS SET FORTH IN THE SECOND AMENDED AND COMPLETELY RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS FOR MARISOL ("DECLARATION") RECORDED IN THE OFFICE OF SAID COUNTY RECORDER OF CALIFORNIA ON FEBRUARY 14, 2011, AS INSTRUMENT NO. 20110214-24632.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL I ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION.

Assessor's Parcel Number: **700-0-260-065**

# EXHIBIT 2

EXHIBIT 2

RECORDING REQUESTED BY:
California TD Specialists
Attn: Janina Hoak
Simplifile

WHEN RECORDED MAIL TO:
**California TD Specialists**
**Attn: Janina Hoak**
**8190 East Kaiser Blvd.**
**Anaheim Hills, California 92808**

**20190415-00039678-0 1/3**
**Ventura County Clerk and Recorder**
**MARK A. LUNN**
**04/15/2019 11:53:09 AM**
**1453457 $105.00 CE**

**Electronically Recorded in Official Records, County of Ventura**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **83752** Loan No.: **FIELD/PELISSIER** A.P.N.: **700-0-260-065**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$151,480.94** as of 4/11/2019, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

83752

TS-NOD Document1

130520

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**GENOVA CAPITAL INC.**
**C/O California TD Specialists**
**8190 East Kaiser Blvd.**
**Anaheim Hills, California 92808**
**Phone: (714) 283-2180**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **CALIFORNIA TD SPECIALISTS** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **4/11/2017**, executed by **BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS** , as Trustor, to secure certain obligations in favor of **GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION**, as beneficiary, recorded **3/25/2019**, as Instrument No. **20190325-00031274-0**, in Book **N/A**, Page **N/A**, of Official Records in the Office of the Recorder of **Ventura** County, California describing land therein as: As more fully described on said Deed of Trust.

Including one **NOTE(S) FOR THE ORIGINAL** sum of **$125,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The balance of principal and interest which became due on 6/30/2017, along with late charges, foreclosure fees and costs and legal fees plus interest and / or advances that have become due. ADVANCES TO SENIOR LIENS, INTEREST INSURANCE, TAXES AND DELINQUENT TAXES AND/OR INSURANCE PREMIUMS TO BE ADVANCED BY THE BENEFICIARY AFTER THE RECORDING OF THE NOTICE OF DEFAULT.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The mortgage servicer/lender has supplied reliable and competent evidence to substantiate the borrower's default and its right to foreclose.**

**Dated: 4/11/2019**

**CALIFORNIA TD SPECIALISTS, AS TRUSTEE**

**BY:** ______________________
**PATRICIO S. INCE', VICE PRESIDENT**

# Declaration of Beneficiary/Lender Pursuant to Civil Code Section 2923.5(b)

Borrower(s): Brigham Field & Colette Pelissier

Loan Number: Field / Pelissier

Beneficiary/Lender: Genova Capital, Inc., a California corporation

Property Address: 11802 Ellice Street, Malibu, California 90265

Trustee Sale Number: 077152

The undersigned, as Beneficiary/Lender, or an authorized agent of the Beneficiary/Lender named below, declares that:

○ 1. The mortgage servicer has contacted the borrower pursuant to California Civil Code Section 2923.5(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

○ 2. Despite the exercise of due diligence pursuant to California Civil Code Section 2923.5(e), the mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

○ 3. No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code Section 2920.5.

◉ 4. The requirements of California Civil Code Section 2923.5 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, described in California Civil Code Section 2924.15(a).

I certify under penalty of perjury that this declaration is accurate, complete and supported by competent and reliable evidence which as the Beneficiary/Lender has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

| Genova Capital, Inc., a California corporation | 4/8/2019 |
|---|---|
| Beneficiary/Lender | Date: |
| Joshua Hunter | President |
| Name (Print) | Title (Print) |
| [signature] | |
| Signature | |

TD09-HBR-Declaration-20171229 Page 1 of 1

# EXHIBIT 3

EXHIBIT 3

RECORDING REQUESTED BY:
Simplifile
CALIFORNIA TD SPECIALISTS
Attn: Teri Snyder

WHEN RECORDED MAIL TO:

CALIFORNIA TD SPECIALISTS
Attn: Teri Snyder
8190 EAST KAISER BLVD.
ANAHEIM HILLS, CA 92808

20190718-00081358-0 1/3
Ventura County Clerk and Recorder
MARK A. LUNN
07/18/2019 10:39:51 AM
1490501 $105.00 RE

Electronically Recorded in Official Records, County of Ventura

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

**Title Order No.:** 95522037 **Trustee Sale No.:** 83752 **Loan No.:** FIELD/PELISSIER
**APN:** 700-0-260-065

# NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
**注：本文件包含一个信息摘要**
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/11/2017. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**On 8/14/2019 at 11:00 AM, CALIFORNIA TD SPECIALISTS as the duly appointed Trustee under and pursuant to Deed of Trust recorded on** 3/25/2019 as Instrument No. **20190325-00031274-0** in book **N/A**, page **N/A** **of official records in the Office of the Recorder of** Ventura **County, California, executed by:**

BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS

**, as Trustor**

GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION

**, as Beneficiary**

**WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). At:** At the Main front entrance to the County Government Center Hall of Justice located at 800 South Victoria Avenue, Ventura, CA 93003,

**Title Order No.:** 95522037
**Trustee Sale No.:** 83752
**Loan No.:** FIELD/PELISSIER
**APN:** 700-0-260-065

**NOTICE OF TRUSTEE'S SALE - continued**

**all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein:** As more fully described on said Deed of Trust.

**The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be:** 11802 ELLICE STREET MALIBU, CA 90265.

**The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit:**

$158,817.00 **(Estimated)**
**Accrued interest and additional advances, if any, will increase this figure prior to sale.**

**The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.**

**DATE:** 7/17/2019

CALIFORNIA TD SPECIALISTS, as Trustee
8190 EAST KAISER BLVD., ANAHEIM HILLS, CA 92808
PHONE: 714-283-2180
**FOR TRUSTEE SALE INFORMATION LOG ON TO:** www.stoxposting.com
**CALL:** 844-477-7869

PATRICIO S. INCE', VICE PRESIDENT

**CALIFORNIA TD SPECIALISTS IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Title Order No.:** 95522037
**Trustee Sale No.:** 83752
**Loan No.:** FIELD/PELISSIER
**APN:** 700-0-260-065

"**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid on a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of the outstanding lien that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and if applicable, the rescheduled time and date for the sale of this property, you may call 844-477-7869, or visit this Internet Web site www.stoxposting.com, using the file number assigned to this case T.S.# 83752. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale."

# EXHIBIT 4

EXHIBIT 4

RECORDING REQUESTED BY:
**California TD Specialists**
Simplifile
AND WHEN RECORDED TO:
AND MAIL TAX STATEMENT TO:
**GENOVA CAPITAL INC.**
**555 CORPORATE DRIVE, SUITE 120**
**LADERA RANCH, CA 92694**
**Forward Tax Statements to**
**the address given above**

**20190816-00094754-0 1/3**
**Ventura County Clerk and Recorder**
**MARK A. LUNN**
**08/16/2019 11:20:59 AM**
**1503065 $105.00 VA**

**Electronically Recorded in Official Records, County of Ventura**

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **83752** Order #: **95522037**
Loan #: **FIELD/PELISSIER**

# TRUSTEE'S DEED UPON SALE

A.P.N.: **700-0-260-065** Transfer Tax: **$0.00**
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3
The Grantee Herein **was** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$160,074.39**
The Amount Paid by the Grantee was **$160,074.39**
Said Property is in the City of **MALIBU**, County of **Ventura**

**CALIFORNIA TD SPECIALISTS,** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**GENOVA CAPITAL, INC., A CALIFORNIA CORPORATION**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Ventura**, State of California, described as follows:

**See Exhibit "A" Attached Hereto And Made A Part Hereof.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **BRIGHAM FIELD AND COLETTE PELISSIER, HUSBAND AND WIFE AS JOINT TENANTS** as Trustor, dated **4/11/2017** of the Official Records in the office of the Recorder of **Ventura**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **3/25/2019**, instrument number **20190325-00031274-0**, Book **N/A**, Page **N/A** of official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Forward Tax Statements to the address given above

83752

TS-TDUS Trustee's Deed Upon Sale (CA) 131003

# TRUSTEE'S DEED UPON SALE

TS #: **83752**
Loan #: **FIELD/PELISSIER**
Order #: **95522037**

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **8/14/2019**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $**160,074.39**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **CALIFORNIA TD SPECIALISTS**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **8/14/2019**

**CALIFORNIA TD SPECIALISTS, AS TRUSTEE**

By: ______________________
**Patricio S. Ince, Vice President**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
COUNTY OF Orange

On 8/14/2019 before me, Teri Snyder Notary Public Personally appeared, Patricio S. Ince, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

______________________
Signature of Notary Public

(Seal)

TERI SNYDER
COMM. # 2185804
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. APRIL 4, 2021

TS #83752

**Assessor's Parcel Number: 700-0-260-065**

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

**PARCEL 1:**

**LOT 6 OF TRACT NO. 4483, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146 PAGE(S) 19 THROUGH 22 INCLUSIVE OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**EXCEPT ONE-EIGHTH OF MINERALS, OILS, PETROLEUM, ASPHALTUM, GAS, COAL, AND OTHER HYDROCARBON SUBSTANCES, AS RESERVED BY MARBLEHEAD LAND COMPANY, IN DEED RECORDED NOVEMBER 17, 1940, IN BOOK 628, PAGE 87 OF OFFICIAL RECORDS.**

**EXCEPTING THEREFROM, EASEMENTS SET FORTH IN THE SECOND AMENDED AND COMPLETELY RESTATED DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND EASEMENTS FOR MARISOL ("DECLARATION") RECORDED IN THE OFFICE OF SAID COUNTY RECORDER OF CALIFORNIA ON FEBRUARY 14, 2011, AS INSTRUMENT NO 20110214-24632.**

**PARCEL 2:**

**NON-EXCLUSIVE EASEMENTS APPURTENANT TO PARCEL 1 ABOVE, ON AND OVER THE "COMMON AREA" AS DEFINED IN THE DECLARATION FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS AND EGRESS OF THE AMENITIES LOCATED THEREON. THE COMMON AREA IS FOR THE USE OF OWNERS OF LOTS WHICH ARE SUBJECT TO THE DECLARATION.**

# EXHIBIT 5

EXHIBIT 5

Michael J. Lancaster, Esq. (SBN 92788)
**STOCKER & LANCASTER LLP**
19200 Von Karman Ave, Suite 600
Irvine, CA 92612
Telephone: (949) 622-5575
Lancasterlaw2020@yahoo.com

Attorneys for Cross-Complainants,
BRIGHAM FIELD and COLETTE PELISSIER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA, HALL OF JUSTICE**

BRIGHAM FIELD, COLETTE PELISSIER,

Cross-Complainants,

v.

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO AND ROES 1 THROUGH 20, INCLUSIVE,

Cross-Defendants.

**Case No. 56-2019-00532526**

**UNLIMITED CIVIL CROSS-COMPLAINT COMPLAINT FOR:**

1. **INJUNCTIVE & DECLARATORY RELIEF;**
2. **ORDER AND JUDGMENT SETTING ASIDE SALE;**
3. **CANCELLATION OF TRUSTEES DEED;**
4. **QUIET TITLE;**
5. **SLANDER OF TITLE;**
6. **WRONGFUL FORECLOSURE;**
7. **BREACH OF CONTRACT;**
8. **UNJUST ENRICHMENT;**
9. **RESCISSION & RESTITUTION;**
10. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**EXHIBITS 1-10**

**COMES NOW** Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER, who complains of causes of action against Cross-Defendants and each of them as follows:

## FIRST CAUSE OF ACTION

**FOR INJUNCTIVE & DECLARATORY RELIEF AGAINST CROSS-DEFENDANTS, GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND ROES 1 THROUGH 20, INCLUSIVE.**

1. Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER, are and at all times mentioned in this complaint were residents of VENTURA COUNTY, California, and are the legal owners of the residential real property located at 11802 Ellice Street, Malibu, CA 90265. Attached as **Exhibit A** is a true and correct copy of the **Legal Description**. Cross-Complainants purchased the residential property in June of 2013. Cross-Complainants own the property as "Brigham Field and Colette Pelissier, husband and wife, as joint tenants." It is Cross-Complainants opinion, as owners, that the property has a current fair market value of $20,000,000.00.

2. Cross-Defendant GENOVA CAPITAL INC., a California corporation, is now and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of California, with its principal place of business at 555 Corporate Drive, Suite 120, Ladera Ranch, California 92694, Orange County, California. GENOVA CAPITAL INC. is a lender and beneficiary under a deed of trust used to initiate and complete the foreclosure on Cross-Complainants residential property.

3. Cross-Defendant CALIFORNIA TD SPECIALISTS, a California corporation, a California corporation, is now and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of California, with its principal place of business at 8190 and 8180 East Kaiser Blvd, Anaheim Hills, California 92808, Orange County, California. CALIFORNIA TD SPECIALISTS was the **Trustee** appointed by GENOVA CAPITAL INC. to

initiate and complete the foreclosure on Cross-Complainants residential property. **Attached as Exhibit 1** is a true and correct copy of the recorded **Substitution of Trustee** recorded 4-15-2019.

4. Cross-Defendants contend that on or about November 28, 2016, a Promissory Note Secured by Deed of Trust for $2.5 million was executed by Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER in favor of Genova Capital and that said note was secured by a deed of trust on the residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property") This $2.5 million note was **not** the note and nor amount used for the foreclosure. **Attached as Exhibit 2** is a true and correct copy of Deed of Trust used for foreclosure, recorded 3-25-2019, which does not identify the $125,000.00 note. The last page includes a legal description that was pulled and attached in 2019 by Cross-Defendants. It was not attached to the original deed.

5. Cross-Defendants next contend that on or about April 11, 2017, a Straight Note for $125,000 was executed by Pelissier and Field, in favor of Genova Capital, and that said note was secured by a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice (the "Deed"), that was just recorded in April of 2019 on the Property. **This is false.** Both Cross-Complainants, husband and wife, did not sign said note. This note was not intended as a Deed of Trust on Cross-Complainants residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property"). That would require both spouses to be named and sign the note. That never occurred. **Attached as Exhibit 3** is a true and correct copy of is a copy of the Straight Note signed only by Brigham Field, **not signed by Genova, not signed by COLETTE PELISSIER, not in the name of COLETTE PELISSIER, with no Deed of Trust attached for the $125,000.00.** Cross-Complainant COLETTE PELISSIER is not a borrower on the Straight Note.

6. Without serving Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER, Notice of breach of the alleged **promissory note, according to its terms**, Cross-Defendants and each of them, initiated foreclosure proceedings on the Deed, and recorded a **Notice of Default on April 16, 2019**, claiming the $125,000.00 note, and later set a **Trustee's Sale of the**

**Property on August 14, 2019** at 11 a.m., at the Ventura County Superior Courthouse, alleging some breach of the obligation secured by the deed of trust or note, with no breach and demand before the Notice of Default was recorded, and stating Cross-Defendants have elected to sell the property to satisfy that obligation. **Attached as Exhibit 4** is a true and correct copy of NOTICE OF DEFAULT. **Attached as Exhibit 5** is a true and correct copy of **Notice of Trustee's Sale.** Both were obtained through Lawyers Title. It was not personally served on Cross-Complainants. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note.

**CROSS-COMPLAINANTS MADE FULL TENDERS BEFORE THE TRUSTEE'S SALE**

7. The day before the Trustees Sale date, August 13, 2019, Cross-Complainants made a request for the full amount to cure and redeem. A **Demand for Payoff** was served by Cross-Defendants in the total sum of $160,122.58 as of 8/13/19 plus 34.25 daily interest. **Attached as Exhibit 6** is a true and correct copy of the **Demand for Payoff**. Shortly after receipt, **on August 13, 2019**, Cross-Complainants made a full tender of the amount claimed by **offering a wire transfer of $161,000.00. Attached as Exhibit 7** is a true and correct copy of Brigham Field's **text offer** to Josh Hunter, CEO, of Genova Capital, **at 3:41 p.m. on 8-13-2019.** The next day, 8-14-2019, a **CASHIERS CHECK** drawn on Wells Fargo Bank was offered to Defendants in the amount of **$161,000.00**. **Attached as Exhibit 8,** is a true and correct copy of the CASHIERS CHECK. Both tenders were not accepted by Defendants.

8. Cross-Defendants GENOVA CAPITAL INC., and its Trustee CALIFORNIA TD SPECIALISTS, **refused both the tenders**. Instead, **GENOVA CAPITAL INC., required** the full payment for a "**postponement**" of the Trustees Sale, **and required that both Plaintiffs sign a new agreement giving GENOVA CAPITAL INC. fifty percent (50%) of their business, and also correct and ratify the defective $125,000.00 note so that is was security for the Deed of Trust used to foreclose and added that both** Cross-Complainants **were also obligated.** Attached as **Exhibit 9** is a true and correct copy of the texts Cross-Complainants received from, Genova Capital's proposed written agreement and email from their attorney. Outrageous! **An unfair,**

**absolute conditional refusal of both full tenders.** There was an effective redemption by Cross-Complainants tenders and the power of sale was terminated. Cross-Defendants had no legal right to foreclose. Cross-Defendants had no legal right to refuse the good faith tenders.

9. Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER, personally appeared for the Trustees Sale at the Trustee Sale at 10:45 a.m. There were no bids except Cross-Complainants offer of $161,000.00, which was not accepted. No one from Genova Capital, Inc., appeared. No one except Cross-Complainants bid for the property. Cross-Defendants only had an auctioneer present and he left without accepting Plaintiffs CASHIERS CHECK drawn on Wells Fargo Bank on August 14, 2019 for $161,000.00.

10. Cross-Defendants refused to accept full tenders on August 13 and August 14, 2019.

11. If the Cross-Complainant Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Cross-Complainants did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Cross-Defendants agent on site, there was no sale. An effective redemption occurred.

12. A tender by the trustor of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

13. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to Defendants prior to April 15, 2019. This was repaid before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Cross-Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Cross-Complainant COLETTE PELISSIER hereby elects to declare it void.

B. Cross-Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Cross-Defendants did not legally secure the $125,000.00 Note used to foreclose on Cross-Complainants property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the

beneficial interest. [Civil Code, Section 2924 (a)(6)].

14. Notwithstanding the foregoing, on August 20, 2019, Cross-Defendant GENOVA CAPITAL INC. through its legal counsel, is now attempting to serve **Notice for Possession**, unlawful detainer proceedings claiming that there was a Trustee Sale on 8-14-2019. Either GENOVA CAPITAL INC., a California Corporation or its agent CALIFORNIA TD SPECIALISTS, a California Corporation, or both, have misled, deceived and defrauded Cross-Complainants. Attached as **Exhibit 10** is a true and correct copy of the **Notice for Possession** left outside the property. It was also not served. It states there was a sale but does not identify the alleged new owner.

15. Cross-Defendants ROES 1 through 20, inclusive, have, or claim to have, an interest in the property subject to the deed of trust herein described, which interest is senior to the lien created by the GENOVA CAPITAL INC. deed of trust, and these lien holders were not given notice of the Default or Trustee's Sale. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants ROES 1 through 20, inclusive, being unknown, plaintiffs sue these defendants by these fictitious names and will amend this complaint to show their true names and capacities when they are ascertained.

16. As set forth herein, the default was improperly declared, the proceedings are void and invalid. The alleged breach of the obligation for which the deed of trust is security has not occurred, proper notice of breach under the Note and Deed of Trust was not given, and Defendants have refused Cross-Complainants tender of all principal and interest owing on the alleged obligation, subject to a full reservation of Cross-Complainants s rights. Cross-Complainants contend the evidence shows there was an effective redemption and the power of sale was terminated, as a matter of law.

17. An actual controversy has arisen and now exists between Cross-Complainants and d Cross-Defendants GENOVA CAPITAL INC., a California Corporation or CALIFORNIA TD

SPECIALISTS, a California Corporation and the unidentified ROE persons or company claiming to have purchased the property at foreclosure, regarding their respective rights and duties. Cross-Defendants GENOVA CAPITAL INC., a California Corporation or CALIFORNIA TD SPECIALISTS, a California Corporation contend there was a breach of the obligation secured by the deed of trust and Note, and that Cross-Complainants failed to make the payments of principal and interest due on and after some unknown date. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Cross-Defendants. This alone makes the entire foreclosure process void. Cross-Complainants contend there was no notice of breach given according to the terms of a note and deed of trust, the Notices recorded were defective, the amounts were materially inaccurate, not properly served, the alleged default of the obligation for which the deed of trust is security has not occurred, Cross-Complainants have in fact tendered the full principal and interest ALLEGED to be owing on the obligation, which tender defendants refused to accept by wire transfer or cashier's check. Cross-Complainants did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption and the power of sale was terminated. A judicial declaration is necessary and appropriate at this time under all the circumstances to unwind and rescind the lien improperly recorded by Cross-Defendants, and so that Cross-Complainants and Cross-Defendants may determine their rights and duties under the alleged note and deed of trust.

18. Cross-Complainants seek a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining all cross-defendants, cross-defendant's agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, encumbering the property, creating more liens on the property, either under the power of sale in the deed of trust or by foreclosure action or in any other manner; a declaration by the court that sale of the property to enforce the deed of trust is improper and void. there was an effective redemption, the power of sale was terminated, and order that all actions and recordings by the Cross-Defendants are rescinded and set aside, for costs, attorneys fees and other relief which is just and proper.

**SECOND CAUSE OF ACTION**

**FOR AN ORDER AND JUDGMENT SETTING ASIDE SALE AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND ROES 1 THROUGH 20, INCLUSIVE.**

19. Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 18, as though fully set forth, including all Exhibits.

20. According to Cross-Defendant, GENOVA CAPITAL INC., after 8-14-2019, said Cross-Defendant now reports the property was sold at the August 14, 2019 Trustees Sale. This cause of action applies to said purchaser and all named Defendants herein. We have recently learned that Cross-Defendant, GENOVA CAPITAL INC., claims to have purchased the property at the Trustees Sale. This is false. There was no sale. No one from GENOVA CAPITAL INC., appeared and bid on the property.

21. Cross-Defendants contend that on or about November 28, 2016, a Promissory Note Secured by Deed of Trust for $2.5 million was executed by Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER in favor of Genova Capital and that said note was secured by a deed of trust on the residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property") This $2.5 million note was not the note and nor amount used for the foreclosure. Attached as Exhibit 2 is a true and correct copy of Deed of Trust used for foreclosure, recorded 3-25-2019, which does not identify the $125,000.00 note. The last page includes a legal description that was pulled and attached in 2019 by Defendants. It was not attached to the original deed.

22. Cross-Defendants next contend that on or about April 11, 2017, a Straight Note for $125,000 was executed by Pelissier and Field, in favor of Genova Capital, and that said note was secured by a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice (the "Deed"), that was just recorded in April of 2019 on the

Property. This is false. Both Cross-Complainants, husband and wife, did not sign said note. This note was not intended as a Deed of Trust on Cross-Complainants residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property"). That would require both spouses to be named and sign the note. That never occurred. Attached as Exhibit 3 is a true and correct copy of is a copy of the Straight Note signed only by Brigham Field, not signed by Genova, not signed by COLETTE PELISSIER, not in the name of COLETTE PELISSIER, with no Deed of Trust attached for the $125,000.00. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note.

23. Without serving Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER, Notice of breach of the alleged promissory note, according to its terms, Cross-Defendants and each of them, initiated foreclosure proceedings on the Deed, and recorded a Notice of Default on April 16, 2019, claiming the $125,000.00 note, and later set a Trustee's Sale of the Property on August 14, 2019 at 11 a.m., at the Ventura County Superior Courthouse, alleging some breach of the obligation secured by the deed of trust or note, with no breach and demand before the Notice of Default was recorded, and stating Cross-Defendants have elected to sell the property to satisfy that obligation. Attached as Exhibit 4 is a true and correct copy of NOTICE OF DEFAULT. Attached as Exhibit 5 is a true and correct copy of Notice of Trustee's Sale. Both were obtained through Lawyers Title. They were not personally served on Cross-Complainants. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note.

**CROSS-COMPLAINANTS MADE FULL TENDERS BEFORE THE TRUSTEE'S SALE**

24. The day before the Trustees Sale date, August 13, 2019, Cross-Complainants made a request for the full amount to cure and redeem. A Demand for Payoff was served by Defendants in the total sum of $160,122.58 as of 8/13/19 plus 34.25 daily interest. Attached as Exhibit 6 is a true and correct copy of the Demand for Payoff. Shortly after receipt, on August 13, 2019, Cross-

Complainants made a full tender of the amount claimed by offering a wire transfer of $161,000.00. Attached as Exhibit 7 is a true and correct copy of Cross-Complainant Brigham Field's text offer to Josh Hunter, CEO, of Genova Capital, at 3:41 p.m. on 8-13-2019. The next day, 8-14-2019, a CASHIERS CHECK drawn on Wells Fargo Bank was offered to Defendants $161,000.00. Attached as Exhibit 8, is a true and correct copy of the CASHIERS CHECK. Both tenders were not accepted by Cross-Defendants and no objections to the tenders were served.

25. Cross-Defendants GENOVA CAPITAL INC., and its Trustee CALIFORNIA TD SPECIALISTS, refused both the tenders. Instead, GENOVA CAPITAL INC., required the full payment for a "postponement" of the Trustees Sale, and required that both Cross-Complainants sign a new agreement giving GENOVA CAPITAL INC. fifty percent (50%) of their business, and also correct and ratify the defective $125,000.00 note so that is was security for the Deed of Trust used to foreclose and added that both Cross-Complainants were also obligated. Attached as Exhibit 9 is a true and correct copy of the texts Cross-Complainants received from, Genova Capital's proposed written agreement and email from their attorney. Outrageous! An unfair, absolute conditional refusal of both full tenders. There was an effective redemption by Cross-Complainants tenders and the power of sale was terminated. Cross-Defendants had no legal right to foreclose. Cross-Defendants had no legal right to refuse the good faith tenders.

26. Cross-Complainants, BRIGHAM FIELD and COLETTE PELISSIER, personally appeared for the Trustees Sale at the Trustee Sale at 10:45 a.m. There were no bids except Cross-Complainants offer of $161,000.00, which was not accepted. No one from Genova Capital, Inc., appeared. No one except Cross-Complainants bid for the property. Defendants only had an auctioneer present and he left without accepting Cross-Complainants CASHIERS CHECK drawn on Wells Fargo Bank on August 14, 2019 for $161,000.00.

27. Cross-Defendants refused to accept full tenders on August 13 and August 14, 2019.

28. If the Cross-Complainant Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Cross-Complainants did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Cross-Defendants agent on site, there was no sale. An effective redemption occurred.

29. A tender by the trustor of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

30. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to GENOVA CAPITAL INC., prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is

leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Cross-Complainant COLETTE PELISSIER hereby elects to declare it void.

B.    Cross-Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C.    The deed of trust used by Cross-Defendants did not legally secure the $125,000.00 Note used to foreclose on Cross-Complainants property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

31.    Notwithstanding the foregoing, on August 20, 2019, Cross-Defendant GENOVA CAPITAL INC. through its legal counsel, is now attempting to serve Notice for Possession, unlawful detainer proceedings claiming that there was a Trustee Sale on 8-14-2019. Either GENOVA CAPITAL INC., a California Corporation or its agent CALIFORNIA TD SPECIALISTS, a California Corporation, or both, have misled, deceived and defrauded Cross-Complainants.

Attached as Exhibit 10 is a true and correct copy of the Notice for Possession left outside the property. It was also not served. It states there was a sale but does not identify the alleged new owner.

32. Cross-Defendants ROES 1 through 20, inclusive, have, or claim to have, an interest in the property subject to the deed of trust herein described, which interest is senior to the lien created by the GENOVA CAPITAL INC. deed of trust, and these lien holders were not given notice of the Default or Trustee's Sale. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants ROES 1 through 20, inclusive, being unknown, plaintiffs sue these defendants by these fictitious names and will amend this complaint to show their true names and capacities when they are ascertained.

33. As set forth herein, the default was improperly declared, the proceedings are void and invalid. The alleged breach of the obligation for which the deed of trust is security has not occurred, proper notice of breach under the Note and Deed of Trust was not given, and Cross-Defendants have refused Cross-Complainants tender of all principal and interest owing on the alleged obligation, subject to a full reservation of Cross-Complainants rights. Cross-Complainants contend the evidence shows there was an effective redemption and the power of sale was terminated, as a matter of law.

34. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Cross-Defendants. This alone makes the entire foreclosure process void. Cross-Complainants contend there was no notice of breach given according to the terms of a note and deed of trust, the Notices recorded were defective, the amounts were materially inaccurate, not properly served, the alleged default of the obligation for which the deed of trust is security has not occurred, Cross-Complainants have in fact tendered the full principal and interest ALLEGED to be owing on the obligation, which tender defendants refused to accept by wire transfer or cashier's check. Cross-Complainants did, in fact, offer to pay the full amount of the debt being foreclosed

before the foreclosure sale, and therefore there was an effective redemption and the power of sale was terminated. A judicial declaration is necessary and appropriate at this time under all the circumstances to set aside any sale, and rescind the lien improperly recorded by Cross-Defendants.

35. Cross-Complainants seek a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining all cross-defendants, cross-defendant's agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, encumbering the property, creating more liens on the property, either under the power of sale in the deed of trust or by foreclosure action or in any other manner; a declaration by the court that sale of the property to enforce the deed of trust is improper and void. there was an effective redemption, the power of sale was terminated, and order that all actions and recordings by the cross-Defendants are rescinded and set aside, for costs, attorneys fees and other relief which is just and proper.

36. As set forth herein, the sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Cross-Complainants residential property, Cross-Complainant Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, Cross-Defendants refused Cross-Complainants full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Cross-Complainants have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

37. Cross-Complainants have tendered and offers to Cross-Defendant GENOVA CAPITAL INC., all amounts due and owing so that the claimed default may be cured and Cross-

Complainants may be reinstated to their former rights and privileges, in exchange for a deed of reconveyance of said Deed of Trust and cancellation of the Note. This offer is subject to a full reservation of all Cross-Complainants rights.

**THIRD CAUSE OF ACTION**

**FOR AN ORDER AND JUDGMENT CANCELLING THE TRUSTEE'S DEED AND ALL OTHER DEEDS RECORDED ON AND AFTER 8-14-2019, AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND ROES 1 THROUGH 20, INCLUSIVE**

38. Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 37, as though fully set forth, including all Exhibits.

39. Cross-Defendant, GENOVA CAPITAL INC. and ROES 5-20 claims an estate or interest in the property based on a trustee's deed.

40. The claims of Cross-Defendant, GENOVA CAPITAL INC. and ROES 5-20 to the property are without any legal right or merit. Although the trustee's deed appears valid on its face, it is void, invalid, and of no force and effect, for the reasons set forth in the FIRST & SECOND CAUSES OF ACTION. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

41. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to Cross-Defendants prior to January 1, 2019. This was long before the Notice of

Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Cross-Defendants. Family Law, Code Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Cross-Complainant COLETTE PELISSIER hereby elects to declare it void.

B. Cross-Defendants failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Cross-Defendants did not legally secure the $125,000.00 Note used to foreclose on Cross-Complainants property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee

under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

42. The estate or interest claimed in the property by Cross-Defendant, GENOVA CAPITAL INC. and DOES 5-20 under the trustee's deed is a cloud on the Cross-Complainants title to the property in that it tends to depreciate its market value, restricts plaintiff's use and enjoyment of the property, and hinders Cross-Complainants right to unrestricted alienation of the property. If the trustee's deed is not delivered and canceled, serious irreparable injury will result to Cross-Complainants. The real property is unique.

43. Cross-Complainants requests judgment against Cross-Defendants, and each of them, including an order setting aside the sale of the property and declaring that sale to be null and void and of no force and effect; and an order that cross-defendant GENOVA CAPITAL INC. and DOES 5-20 deliver the trustee's deed to the court, and cancellation of that deed; and for an award of all costs and attorney's fees incurred in this action, according to proof.

**FOURTH CAUSE OF ACTION**

**QUIET TITLE AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO CROSS-COMPLAINANTS TITLE, OR ANY CLOUD ON CROSS-COMPLAINANTS TITLE THERETO, AND ROES 1 THROUGH 20, INCLUSIVE**

44.     Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 43, as though fully set forth, including all Exhibits.

45.     Cross-Complainants are the legal and equitable owners of the Subject Property which has the following legal description: EXHIBT A, attached hereto.

46.     Cross-Complainants seek to quiet title against the claims of CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO CROSS-COMPLAINANTS TITLE, OR ANY CLOUD ON CROSS-COMPLAINANTS TITLE THERETO; and ROES 1 through 20 (collectively referred to herein as the "Title Defendants") as the Title Defendants hold themselves out as entitled to fee simple ownership of the Subject Property by and through their purchase of the property at the trustee's sale held on or about 8-14-2019. In fact, the Title Defendants had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including no right to foreclosure, no right to offer the Subject Property for sale at a trustee's sale, demanding possession or filing cases for unlawful detainer. Nevertheless, the Title Defendants proceeded with a non-judicial foreclosure sale, through CALIFORNIA TD SPECIALISTS as trustee, illegally and with unclean hands Cross-Complainants are willing to tender the amount received subject to equitable adjustment for the damage caused to the Plaintiffs by the Title Defendants' activities.

47.     The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Cross-Complainants residential property, Cross-Complainant Colette Pelissier is not a borrower on the Note,  a breach of the obligation for which the deed of trust is security has not

occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused Cross-Complainants full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Cross-Complainants have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

48. As the Notice of Default must be signed by the trustee, either original or substituted, and the beneficiary or trustee, either original or substituted, must comply with California Civil Code Section 2923.5, the trustee's sale is void because CALIFORNIA TD SPECIALISTS was not the trustee at the time that it signed the Notice of Default on 4-11-2019. The NOTICE OF DEFAULT was recorded 4-15-2019, and allegedly complied with Section 2923.5. Thus, the trustee and beneficiary failed to follow the statutory rules for a valid foreclosure under the California Civil Code and it is, therefore, void.

49. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to Cross-Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Family Law Code Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized

agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Cross-Complainant COLETTE PELISSIER hereby elects to declare it void.

B. Cross-Defendants failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Cross-Defendants did not legally secure the $125,000.00 Note used to foreclose on Cross-Complainants property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

50. Cross-Complainants seek to quiet title as of 8-13-2019. Cross-Complainants seeks a judicial declaration that the title to the Subject Property is vested in Cross-Complainants alone and that Cross-Defendants and each of them be declared to have no interest estate, right, title or interest

in the subject property and that Cross-Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

**FIFTH CAUSE OF ACTION**

**SLANDER OF TITLE AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO CROSS-COMPLAINANTS TITLE, OR ANY CLOUD ON CROSS-COMPLAINANTS TITLE THERETO, AND ROES 1 THROUGH 20, INCLUSIVE**

51. Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 50, as though fully set forth, including all Exhibits.

52. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Cross-Complainants residential property, Cross-Complainant Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused Cross-Complainants full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was

terminated. Cross-Complainants have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

53. Cross-Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

54. Cross-Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

55. Cross-Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

56. Cross-Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Cross-Complainants interest in the Subject Property.

57. By doing the acts described above, the Foreclosing Cross-Defendants have slandered Cross-Complainants title to the Subject Property. Cross-Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Cross-Defendants intentionally violated the law and said conduct and acts were not privileged. The conduct was despicable and designed to intentionally cause severe emotional distress to Cross-Complainants.

58. There was a tender by the Cross-Complainant owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

59. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to Cross-Defendants prior to January 1, 2019. This was long before the Notice of

Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Family Law Code Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Cross-Complainant COLETTE PELISSIER hereby elects to declare it void.

B. Cross-Defendants failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Cross-Defendants did not legally secure the $125,000.00 Note used to foreclose on Cross-Complainants property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee

under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

60. Cross-Defendants knew or should have known that their conduct would cause Cross-Complainants severe emotional distress and mental suffering. This includes but is not limited to Cross-Defendants causing a continuing nuisance, loss of their home through an illegal foreclosure sale, loss of market value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Cross-Complainants general damages, according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

61. As a direct and proximate result of the intentional and reckless conduct of Cross-Defendants, Cross-Complainants quiet use and enjoyment of their property and living conditions were significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint Cross-Complainants have suffered and continue to suffer severe emotional distress and mental suffering, to Cross-Complainants general damage within the unlimited jurisdiction of the Superior Court, according to proof.

62. Cross-Complainants seek general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior Court, according to proof.

**SIXTH CAUSE OF ACTION**

**WRONGFUL FORECLOSURE AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO CROSS-COMPLAINANTS TITLE, OR ANY CLOUD ON CROSS-COMPLAINANTS TITLE THERETO, AND ROES 1 THROUGH 20, INCLUSIVE.**

63. Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 62, as though fully set forth, including all Exhibits.

64. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. A separate Deed of trust for the $125,000.00 note was contemplated, was not attached nor recorded, and was not signed by Cross-Complainant Colette Pelissier.

65. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Cross-Complainants residential property, Cross-Complainant Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused Cross-Complainants full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Cross-Complainants have been wrongfully deprived of title to the property and potentially of its

beneficial use and enjoyment.

66. Cross-Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

67. Cross-Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

68. Cross-Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

69. Cross-Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Cross-Complainants interest in the Subject Property.

70. Cross-Complainants further allege on information and belief that none of the Foreclosing Cross-Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Cross-Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

71. If the Cross-Complainant Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Cross-Complainants did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Cross-Defendants agent on site, there was no sale. An effective redemption occurred.

72. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings,

and is entitled to a reconveyance of the lien securing the debt.

73. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to Cross-Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Cross-Complainant, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Family Law Code Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Cross-Complainant COLETTE PELISSIER hereby elects to declare it void.

B. Cross-Defendants failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Cross-Defendants did not legally secure the $125,000.00 Note used to foreclose on Cross-Complainants property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee

under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

74.    The Foreclosing Cross-Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to accept the full tender by Cross-Complainants.

75.    Cross-Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Cross-Defendants intentionally violated the law and said conduct and acts were not privileged. The conduct was despicable and designed to intentionally cause severe emotional distress to Cross-Complainants.

76.    Cross-Defendants knew or should have known that their conduct would cause Cross-Complainants severe emotional distress and mental suffering. This includes but is not limited to Cross-Defendants causing a continuing nuisance, loss of their home through an illegal foreclosure sale, loss of market value, and causing Cross-Complainants to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Cross-Complainants general damages, according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

77.    As a direct and proximate result of the conduct of Cross-Defendants, Cross-Complainants quiet use and enjoyment of their property and living conditions have been significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Cross-Complainants have suffered and continue to suffer severe emotional distress and mental suffering, to Cross-Complainants general damage in an amount within

the unlimited jurisdiction of the Superior Court, according to proof.

78. Cross-Complainants seek general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior Court, according to proof.

## SEVENTH CAUSE OF ACTION

## BREACH OF CONTRACT AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION AND ROES 1 THROUGH 20, INCLUSIVE

79. Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 78, as though fully set forth, including all Exhibits.

80. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. A separate Deed of trust for the $125,000.00 note was contemplated, was not attached nor recorded and not signed by Cross-Complainant Colette Pelissier. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

81. Notice of breach and rights pursuant to paragraph 5 of the Note was not given, notice of default was not served under paragraph 10, notice of default and trustee's sale were not served as required by paragraph 40 of the Deed of Trust, if said Deed of Trust is applicable. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Cross-Complainants residential property, Cross-Complainant Colette Pelissier is not a borrower on the Note, Cross-Complainant Colette Pelissier did not sign a separate deed of trust for this note, no breach of the obligation for which the deed of trust is security has occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, Cross-Defendants refused Cross-

Complainants full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Cross-Complainants have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

82. Cross-Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

83. Cross-Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

84. Cross-Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

85.. Cross-Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Cross-Complainants interest in the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

86. Cross-Complainants further allege on information and belief that the Cross-Defendants did not produce the original note to prove that they are in fact the party authorized to conduct the foreclosure.

87. The Foreclosing Cross-Defendants breached the note and deed of trust by failing to apply the payments made by Cross-Complainants through the date the Notice of Default was recorded, April 15, 2019, the result of which led to the Foreclosing Cross-Defendants improperly foreclosing on the Subject Property.

88. Cross-Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged.

89. The terms of the note required payments made by Cross-Complainants to be applied properly to the note. A minimum of $128,723.59 was taken and repaid to Genova Capital by Cross-Complainants prior to April 15, 2019.

90. The Cross-Defendants breached the note and deed of trust by failing to apply the payments made before April 15, 2019, and therefore Cross-Defendants intentionally and improperly noticed the incorrect amount due, if any, in the Notice of Default, Demand for Payoff, and eventually wrongfully foreclosing on the Subject Property.

91. As a proximate result of Defendants' breaches, Cross-Complainants have suffered special and compensatory damages in an amount no less than the loss of all equity in the property, loss of use, loss of profits, and additional damages within the unlimited jurisdiction of the Superior Court, according to proof.

**EIGHTH CAUSE OF ACTION**

**UNJUST ENRICHMENT AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION AND ROES 1 THROUGH 20, INCLUSIVE**

92. Cross-Defendants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 91, as though fully set forth, including all Exhibits.

93. By their wrongful acts and omissions, the Cross-Defendants have been extremely unjustly enriched at the expense of Cross-Complainants, and Cross-Complainants have been unjustly deprived of ownership of their home and equity loss of over $8,000,000.00. A minimum of $128,723.59 was taken from Cross-Complainants by Genova Capital, Inc. and repaid to Defendants by Cross-Complainants prior to April 15, 2019. This was before the Notice of Default was recorded.

94.     By reason of the foregoing, Cross-Complainants seek restitution from the Cross-Defendants of all equity lost, and an order of this Court requiring Cross-Defendants to disgorge all profits, benefits, and other compensation obtained by the Cross-Defendants from their wrongful conduct, within the unlimited jurisdiction of the Superior Court, according to proof.

## NINTH CAUSE OF ACTION

**RESCISSION AND RESTITUTION AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO CROSS-COMPLAINANTS TITLE, OR ANY CLOUD ON CROSS-COMPLAINANTS TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE.**

95.     Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 94, as though fully set forth, including all Exhibits.

96.     This shall serve as NOTICE OF RESCISSION and request that the alleged Buyer and new Trustor (Genova Capital Inc., a California Corporation ) return the purchase price, cancel and rescind the Trustees Deed, and return all benefits conference conferred upon the Cross-Defendants as result of the Trustee Sale and Deed, transaction, consequential damages, costs and all additional relief available, as provided by law.

97.     This Request for Restitution is made pursuant to Civil Code, Section 1689, 1691 and 1692, based on the following grounds:

1.     The consent was given by mistake caused by the non-disclosure of material defects by the Cross-Defendants, who had knowledge of the defects;

2. The consideration bargain for has failed in whole or in part, through the fault of the Cross-Defendants;

3. The consent was induced by fraud and deceit exercised by and with the connivance of the Cross-Defendants, their agents and the non-disclosure of material defects by the Cross-Defendants;

4. The contract was unlawful because of the non-disclosures, the illegal foreclosure sale;

5. Public interest will be prejudiced by permitting the sale and Trustees Deed to stand;

6. Other acts or omissions engaged in by the Cross-Defendants, according to proof.

98. Pursuant to Civil Code, Section 1691, the Cross-Complainants are requesting the return of title to their property, with no lien and rescission of the Trustees Deed, and requires the Cross-Defendants to offer to restore everything of value which BUYER received from Cross-Defendants, upon the condition that the BUYER restore all consideration. This shall also serve as additional Notice of Rescission pursuant to Civil Code, Section 1691 and the terms are incorporated herein by reference.

99. Pursuant to Civil Code, Section 1692, the Cross-Complainants will also seek relief in this action to recover money paid to the Cross-Defendants, including restitution of benefits conferred upon the Cross-Defendants and all other parties, as result of the transaction, trustee's sale, consequential damages, costs and all additional relief available, as provided by law.

100. This Notice requires the return of all consideration, and written confirmation of mutual rescission of the Trustees Sale and Deed, within 20 days from the date of this Notice.

**TENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST CROSS-DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, AND ROES 1**

**THROUGH 20, INCLUSIVE**

101. Cross-Complainants reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 100, as though fully set forth, including all Exhibits.

102. Said acts and omissions of Cross-Defendants and each of them were intentional, illegal, void, and were intended to cause severe emotional distress and mental suffering.

103. Cross-Defendants knew or should have known that their conduct would cause Cross-Complainants severe emotional distress and mental suffering. This includes but is not limited to Cross-Defendants causing a continuing nuisance, loss of quiet use and enjoyment of their property, loss of equity, loss of market value, and causing Cross-Complainants to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Cross-Complainants general damages in the sum according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

104. As a direct and proximate result of the intentional and reckless conduct of Cross-Defendants, Cross-Complainants had the quiet use and enjoyment of their property and living conditions significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Cross-Complainants have suffered and continues to suffer severe emotional distress and mental suffering, to Cross-Complainants general damage in an amount to be proven at trial, according to proof.

105. Cross-Complainants seek general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior Court, according to proof.

**PRAYER**

WHEREFORE, Cross-Complainants pray for judgment against Cross-Defendants, and each of them, within the unlimited jurisdiction of the Superior Court, as follows:

1. For a Declaration of the rights, duties and obligations of the parties, TRO and a permanent injunction ordering Cross-Defendants to rescind the Trustee Sale and Deed;

2. For an Order and Judgment setting aside the Trustees Deed;

3. For an Order and Judgment Quieting Title in favor of Cross-Complainants and against all Cross-Defendants;

4. For Damages for loss of market value and equity of $8,000,000.00, according to proof;

5. For Damages for Slander of Title, according to proof;

6. For Damages for Unjust Enrichment;

7. For Rescission & Restitution;

8. For General Damages for severe mental anguish, distress and suffering, including any resulting physical manifestations of injuries, according to proof;

9. For attorney's fees and costs of suit incurred;

10. For such other and further relief as the Court may deem just and proper.

DATED: 9-3-2019

STOCKER & LANCASTER LLP

By: ______________________
Michael J. Lancaster
Attorneys for Cross-Complainants

## DEMAND FOR JURY TRIAL

Cross-Complainants hereby demand this case be tried by a Jury.

DATED: 9-3-2019

STOCKER & LANCASTER LLP

By: ____________________
Michael J. Lancaster
Attorneys for Cross-Complainants

# LEGAL DESCRIPTION
# EXHIBIT - A

# EXHIBIT "A"

All that certain real property situated in the County of Ventura, State of California, described as follows:

Parcel 1:

Lot 6 of Tract No. 4483, in the County of Ventura, State of California, as per map recorded in Book 146, Pages 19 through 22 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT one-eighth of minerals, oil, petroleum, asphaltum, gas, coal and other hydrocarbon substances, as reserved by Marblehead Land Company, in deed recorded November 17, 1940, in Book 628, Page 87 of Official Records.

Parcel 2:

Non-exclusive easements appurtenant to Parcel 1, above, on and over the "Common Area", as defined in the Second Amended and Completely Restated Declaration of Covenants, Conditions and Restrictions and Easements for MariSol, recorded on February 14, 2011 as Instrument No. 2011-24632 of Official Records, for access, use, occupancy, enjoyment, ingress and egress of the amenities located thereon.

Assessor's Parcel No.: 700-0-260-065

**VERIFICATION**

STATE OF CALIFORNIA )
ss. )
COUNTY OF VENTURA )

We, the undersigned, declare:

1. We are named Party's.

2. We each have read the foregoing **UNLIMITED CIVIL CROSS-COMPLAINT** and know its contents.

2. The facts stated in the foregoing document are true of our own knowledge except as to those matters which are stated on information and belief, or obtained from others, and as to those matters, we believe them to be true.

We each declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 3rd day of September 2019 in Malibu, California.

BRIGHAM FIELD

COLETTE PELISSIER

**PROOF OF SERVICE**
(CCP §1013a (1), (3) and 1013(c) CRC Rule 2006(a))

STATE OF CALIFORNIA )

COUNTY OF ORANGE )

I am employed in the County of Orange, State of California, I am over the age of 18, and not a party to the within action or proceeding; my business address is 19200 Von Karman Ave, Suite 600, Irvine, California 92612.

On 9-3-2019, I caused a true copy of the following document(s) to be served in this action upon the persons set forth below, by the method indicated:

DOCUMENT(S): **UNLIMITED CIVIL CROSS-COMPLAINT [VERIFIED]**

**PARTIES SERVED: SEE ATTACHED SERVICE LIST**

(X) **(BY MAIL)** as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice I deposited it with the U.S. Postal Service, first class mail, on that same day with postage thereon fully prepaid in Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in this affidavit.

( ) **(BY CERTIFIED MAIL)** I caused such envelope to be delivered to the address identified herein below via Certified Mail/Return Receipt Requested.

( ) **(BY PERSONAL SERVICE)** I caused such **"documents"** to be personally served on Counsel of Record at court as shown on the attached Service

( ) **(BY FEDEX)** I caused such envelope to be delivered by hand to the address identified herein below via FedEx.

(X) **(BY EMAIL)** I caused such documents to be served on the Parties, delivered by electronic Email to Counsel of Record, per CRC 2.251, to the address identified herein below.

( ) **(BY FACSIMILE)** I caused such document(s) to be transmitted to the addressee(s) facsimile number noted above before noon. The facsimile machine I used complied with Rule 2003 (3) and the transmission was reported and complete and without error.

(X) **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 9-3-2019, at Irvine, California.

MICHAEL J. LANCASTER

**ATTORNEY FOR PLAINTIFF AND CROSS-DEFENDANT:**

**GENOVA CAPITAL INC., A CALIFORNIA CORPORATION**

Timothy Matthew Ryan, Esq.
THE RYAN FIRM
30 Corporate Park, Suite 310
Irvine, CA 92606
(949) 263-1800

Email: tryan@theryanfirm.com

# EXHIBIT 6

EXHIBIT 6

CIV-110

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
MICHAEL J. LANCASTER-92788
STOCKER & LANCASTER LLP
19200 VON KARMAN AVE, SUITE 600
IRVINE, CA 92612

TELEPHONE NO.: 949-622-5575 FAX NO. (Optional):
E-MAIL ADDRESS (Optional): lancasterlaw2020@yahoo.com
ATTORNEY FOR (Name): BRIGHAM FIELD and COLETTE PELISSIER

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** VENTURA
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Ventura, California 93009
BRANCH NAME: HALL OF JUSTICE

PLAINTIFF/PETITIONER: GENOVA CAPITAL INC., A CALIFORNIA CORPORATION
DEFENDANT/RESPONDENT: BRIGHAM FIELD, COLETTE PELISSIER

**REQUEST FOR DISMISSAL**

CASE NUMBER: 56-2019-00532526

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [ ] With prejudice (2) [x] Without prejudice MJL
   b. (1) [ ] Complaint (2) [ ] Petition
   (3) [x] Cross-complaint filed by *(name)*: BRIGHAM FIELD and COLETTE PELISSIER on *(date)*: 9-4-2019
   (4) [ ] Cross-complaint filed by *(name)*: on *(date)*:
   (5) [ ] Entire action of all parties and all causes of action
   (6) [x] Other *(specify)*:* Another action pending.UNLIMITED CIVIL.FIELD v. GENOVA-56-2019-00532393.
2. *(Complete in all cases except family law cases.)*
   The court [ ] did [x] did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: 9-10-2019

MICHAEL J. LANCASTER-92788
(TYPE OR PRINT NAME OF [x] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

(SIGNATURE)
Attorney or party without attorney for: BRIGHAM FIELD and COLETTE PELISSIER
[ ] Plaintiff/Petitioner [ ] Defendant/Respondent
[x] Cross–Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

(SIGNATURE)
Attorney or party without attorney for:
[ ] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Cross–Complainant

*(To be completed by clerk)*

4. [ ] Dismissal entered as requested on *(date)*:
5. [ ] Dismissal entered on *(date)*: as to only *(name)*:
6. [ ] Dismissal **not entered** as requested for the following reasons *(specify)*:

7. a. [ ] Attorney or party without attorney notified on *(date)*:
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
   [ ] a copy to be conformed [ ] means to return conformed copy

Date: Clerk, by ____________________, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Legal Solutions Plus

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390

**PROOF OF SERVICE**
(CCP §1013a (1), (3) and 1013(c) CRC Rule 2006(a))

STATE OF CALIFORNIA )

COUNTY OF ORANGE )

I am employed in the County of Orange, State of California, I am over the age of 18, and not a party to the within action or proceeding; my business address is 19200 Von Karman Ave, Suite 600, Irvine, California 92612.

On 9-9-2019, I caused a true copy of the following document(s) to be served in this action upon the persons set forth below, by the method indicated:

**DOCUMENT(S): REQUEST FOR DISMISSAL OF CROSS-COMPLAINT, WITHOUT PREJUDICE**

**PARTIES SERVED: SEE ATTACHED SERVICE LIST**

(X) (**BY MAIL**) as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice I deposited it with the U.S. Postal Service, first class mail, on that same day with postage thereon fully prepaid in Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in this affidavit.

( ) (**BY CERTIFIED MAIL**) I caused such envelope to be delivered to the address identified herein below via Certified Mail/Return Receipt Requested.

( ) (**BY PERSONAL SERVICE**) I caused such **"documents"** to be personally served on Counsel of Record at court as shown on the attached Service

( ) (**BY FEDEX**) I caused such envelope to be delivered by hand to the address identified herein below via FedEx.

( ) (**BY EMAIL**) I caused such documents to be served on the Parties, delivered by electronic Email to Counsel of Record, per CRC 2.251, to the address identified herein below.

( ) (**BY FACSIMILE**) I caused such document(s) to be transmitted to the addressee(s) facsimile number noted above before noon. The facsimile machine I used complied with Rule 2003 (3) and the transmission was reported and complete and without error.

(X) (**STATE**) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 9-9-2019, at Irvine, California.

MICHAEL J. LANCASTER

**ATTORNEY FOR PLAINTIFF AND CROSS-DEFENDANT:**

**GENOVA CAPITAL INC., A CALIFORNIA CORPORATION**

Timothy Matthew Ryan, Esq.
THE RYAN FIRM
30 Corporate Park, Suite 310
Irvine, CA 92606
(949) 263-1800

Email: tryan@theryanfirm.com

MICHAEL W. GRIFFITH, Agent for Service
**CALIFORNIA TD SPECIALISTS,**
**a California Corporation**
8180 East Kaiser Blvd.
Anaheim Hills, CA 92808

# EXHIBIT 7

EXHIBIT 7

VENTURA SUPERIOR COURT FILED

NOV 19 2019

MICHAEL D. PLANET Executive Officer and Clerk
BY: Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF VENTURA**

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION,

Plaintiff,

vs.

BRIGHAM FIELD, COLETTE PELISSIER; ALL UNNAMED OCCUPANTS, TENANTS, AND SUBTENANTS; AND DOES 1-20,

Defendants.

Case No. 56-2019-00532526-CU-UD-VTA

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

**BACKGROUND**

The parties in this case waived jury on all issues and agreed to have the court determine the "tender" issue first. [1] Any issues regarding alleged irregularities in the nonjudicial foreclosure sale were to be litigated after the court decided the issue of "tender." Therefore, the only issue addressed in the previously issued Statement of Decision was whether unconditional "tender" was made by Defendants Field or Pelisser prior to the nonjudicial foreclosure sale. The

[1] "*MR. LANCASTER: We've met and conferred. We are both waiving jury trial for the case.*
*THE COURT: Okay. For all issues on the unlawful detainer case; is that correct?*
*MR. LANCASTER: Yes. And we want to proceed to try the tender, title issue first.*
*THE COURT: When we say "all issues," they would include, but be not limited to tender, title, any alleged defects in the nonjudicial foreclosure sale, right?*
*MR. LANCASTER: Correct....*
*THE COURT: Okay. So any and all issues regarding the unlawful detainer matter, according the parties' agreement, will be tried by way of court trial and all parties have waived their right to a jury trial on these issues.*"
(R.T. from 9/16/19, pp. 30-31.)

parties dispute whether the resolution of the tender issue adversely to Defendants precludes
further litigation of any alleged irregularities or equitable defenses.  At the reconvened court
trial, the court permitted the Defendants to introduce additional evidence on asserted equitable
defenses and procedural irregularities of the sale.

Genova's claim of right to possession is based on a loan of $125,000.00 secured by a
deed of trust signed by both Defendants encumbering the Subject Property (Exs. 1, 202.)  The
loan became due in full on June 30, 2017 (Ex. 1.)  "When a trustor defaults on the obligation . . .
[the beneficiary] can rely upon the power of sale in the deed of trust and pursue a private sale."
(*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1502.)  Notice of
Field's default under the note was given in writing on March 11, 2019, via email to Field and
Pelissier, and Field acknowledged receipt of the email (Ex. 18, ¶2; 9/17 RT 61:16-19, 64:18-24.)
Notice of Default under the deed of trust was recorded on April 15, 2019 (Ex. 205.)  Notice of
Trustee's Sale was recorded on June 18, 2019 (Ex. 206.)  On August 14, 2019, Plaintiff made a
full credit bid for the Subject Property, through the trustee, at the auction and ownership of the
Subject Property was conveyed to Plaintiff.  (Ex. 214; 9/19 111:23-112:26.)

"There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary
(lender), and the trustee. [Citation.] The trustee holds a power of sale. If the debtor defaults on
the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale.
[Citation.] . . . [¶] *Civil Code* sections 2924 through 2924k . . . govern nonjudicial foreclosure
sales pursuant to a power of sale contained in a deed of trust." (*Biancalana v. T.D. Service Co.*
(2013) 56 Cal.4th 807, 813-814.)  Under *Civil Code* 2924h, subdivision (b), the beneficiary
under a deed of trust or its assignee is entitled to make a credit bid at the trustee's sale up to the
amount of the debt owed. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8

Cal.App.5th 23, 45.) To initiate the foreclosure process, '[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents' must first record a notice of default . . . . After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. [Citations.] [¶] The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11.) The deed of trust granted to Genova in this case allowed Genova to proceed by nonjudicial foreclosure following the Defendants default. (*Civ. Code* § 2924 et seq.; see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830, 30 Cal. Rptr. 2d 777.) The following evidence was introduced at trial: the trustee's deed upon sale (Ex. 214), the notice of trustee's sale (Ex. 206), the notice of default (Ex. 205), the substitution of trustee (Ex. 204), and deed of trust (Ex. 202).

Written notice of the default was provided to both Defendants on March 11, 2019, via e-mail. (Ex. 18 [paragraph 2 in evidence]; 9/17 RT 61:16-20, 64:23-24 .) The email expressly stated that "this loan is 619 days past due" and that it has "a total amount owing of $146,198.62." (Ex. 18.) Defendants argue that they did not actually receive the recorded notice of default, and only received the notice of trustee's sale. (Def. Br. at 1.) *Civil Code* sections 2924 through 2924k do not require actual receipt of any foreclosure notice by a borrower. "*Civil Code* sections 2924–2924h, *do not require actual receipt by a trustor of a notice of default or notice of sale*. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent." (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746–747 .) Also, it is of no legal importance that the note was only signed by Field. (*Civ. Code* §§2928, 2890.) It is undisputed that both Field and Pelissier signed

the deed of trust, which provided for the power of sale, and that the Subject Property was owned by both Field and Pelissier at the time they signed the deed of trust. (9/17 RT 44:2-8 [Field: "Right. Okay. Page 34. This appears to be my signature; and to the best of my knowledge, this appears to be my wife's signature as well."]; *Id.* 44:17-21 [Field: "I put my initials on pages 1 through 33, and it appears that my wife did the same."]; Ex. 202, at 34 of 36; Answer ¶4.)

**LITIGABLE ISSUES IN AN UNLAWFUL DETAINER PROCEEDING FOLLOWING A NONJUDICIAL FORECLOSURE SALE**

The primary issue in an unlawful detainer proceeding such as this one is the Plaintiff's right to possession. (*Old National Financial Services, Inc. v. Seibert, supra,* 194 Cal.App.3d at p. 465.) But where, as here, the unlawful detainer action is brought pursuant to CCP section 1161a, subdivision (b)(3), title is also an issue. This section provides that an unlawful detainer action may be filed "[w]here the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3).) Although issues concerning title are not litigable in a traditional landlord-tenant eviction under section 1161, they are litigable following a nonjudicial foreclosure sale under section 1161a:

> *" 'Historically a cause of action for unlawful detainer was available only to a landlord against his tenant.' " (Gross v. Superior Court (1985) 171 Cal.App.3d 265, 271 [217 Cal. Rptr. 284].) The remedy has been expanded by statute to additional categories of plaintiffs (see § 1161) and defendants (see § 1161a). The purpose of section 1161a was to make clear that one acquiring ownership through foreclosure could also evict by a summary procedure. (See Gross v. Superior Court, supra, 171 Cal.App.3d at p. 271.)*
>
> ***In an unlawful detainer action brought pursuant to section 1161a, subdivision (b)(3), the plaintiff must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" title.*** *(Evans v. Superior Court (1977) 67 Cal.App.3d 162, 169 [136 Cal.Rptr. 596]; see Stephens v. Hollis (1987) 196 Cal.App.3d 948, 952 [242 Cal.Rptr. 251].) "[W]here the*

*plaintiff in the unlawful detainer action is the purchaser at a trustee's sale, he or she 'need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title.'" (Old National Financial Services, Inc. v. Seibert (1987) 194 Cal.App.3d 460, 465 [239 Cal.Rptr. 728], italics omitted.)* ***"The statute" with which a postforeclosure plaintiff must prove compliance is Civil Code section 2924.*** *(Seidell v. Anglo-California Trust Co. (1942) 55 Cal.App.2d 913, 920 [132 P.2d 12].)"*

(*The Bank of New York Mellon v. Preciado* (2013) 224 Cal.App.4th Supp. 1, 9 (Emphasis added.)

A plaintiff pursuing a postforeclosure action under section 1161a(b)(3) must "prove a sale in compliance with the statute [*Civ. Code*, § 2924] and deed of trust, followed by purchase at such sale." (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474; *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160, 69 P.2d 832; see also *Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465, 239 Cal. Rptr. 728.) "[A]n unlawful detainer action must be brought to evict the trustor (§ 1161a, subd. (b)(3)). The purchaser must show that he/she acquired the property at a regularly conducted sale in accordance with *Civil Code* section 2924 "and that title under such sale was duly perfected. [Citation.]" (*Lyons v. Santa Barbara County Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1505 [181 Cal.Rptr.3d 186].)

**TENDER MUST BE UNCONDITIONAL AND ABSOLUTE IN ORDER TO FORESTALL A NONJUDICIAL FORECLOSURE**

A debtor may forestall a foreclosure sale by tendering the amount owed. The rules applying to tender apply in the post-foreclosure unlawful detainer context when the defendant seeks to challenge Plaintiff's title. (*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972) 27 Cal.App.3d 170, 177 [post-foreclosure unlawful detainer case holding that "[D]efendant's assertion of plaintiff's noncompliance with Civil Code section 2924 did not raise a triable issue 'because we do not find in the record any offer on the part of [defendant] to pay the full amount

of the debt for which the property was given as security.'"]; *Kartheiser v. Superior Court of Los Angeles County* (1959) 174 Cal.App.2d 617, 620 ["in *Bisno* v. *Sax* (Code Civ. Proc., §1908 subd. 2); one of the major issues in that case and in the unlawful detainer action is the sufficiency of the tender made by Bisno, an issue upon which Sax prevailed below."].)

Under *Civil Code* section 2924c, subdivision (a)(1), the trustor or mortgagor may satisfy a loan once foreclosure proceedings have begun by paying the entire amount due, including principal, interest, taxes, assessments, and costs incurred in enforcing the obligation—at any time before entry of the decree of foreclosure. Defendants claim that they made a valid tender offer prior to the nonjudicial foreclosure sale. In order for Defendants to prove their affirmative defense of tender, Defendants must show be a preponderance of the evidence that their alleged tenders were unconditional and absolute. The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445–446 [129 Cal. Rptr. 2d 436].)

"A tender is an unconditional offer to perform an order to extinguish an obligation." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 783 [222 Cal.Rptr.3d 1, citing *Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [98 Cal.Rptr. 414].) Merely stating one is ready, willing, and able to tender payment upon learning what is owed is insufficient tender where the notice of default informs debtor of a minimum amount owed and debtor tendered no payment of at least that amount. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra.)* In *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, the court held that tender conditioned on the creditor relinquishing its claim to a prepayment premium on mortgage which was to be paid by the trustor only if the bankruptcy court determined creditor was entitled to claim the premium, was

not a valid tender. It is a foundational principal in nonjudicial foreclosure law that in order to redeem a property through a valid tender, that "the tender must be absolute," which has been the law of California for over 150 years. (*McMillan v. Richards* (1858) 9 Cal. 365, 405.) "[A] tender to be valid must be of full performance (Civ. Code, §1486), and it must be unconditional." (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [citing Civ. Code §1494].)

"[A] tender to be valid must be of full performance [citation], and it must be unconditional." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385; Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra, at p. 783; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15; *Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 782, 78 Cal.Rptr. 761 ["It is well established that a tender must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a refusal to perform"].) Additionally, """where the rules [concerning tender] are prescribed by statute . . . , the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction.""" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439, 129 Cal. Rptr. 2d 436.) "[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." (Id. at p. 439.)

Thus, a defendant's purported tender, filed simultaneously with a counterclaim, was held insufficient where the defendant stated it was "willing to pay [plaintiffs] the amount of our tender" and "if it turns out, after a trial, that we were entitled to a set off, we will seek from their

assets to get it back." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385.) The defendant's offer in *Still* was "qualified and conditional by reason of the counterclaim." (*Ibid.*) Similarly, a tender was held invalid where a defendant deposited funds in an escrow account "pending entry of a final District Court order or judgment directing the escrow agent to pay the tendered funds to [plaintiff] . . . and dismissing this action as moot." (See *Chen v. Allstate Ins. Co.*, 819 F.3d at p. 1146.)

**TENDER, INADEQUACY OF PURCHASE PRICE & PROCEDURAL IRREGULARITES**

This court stands by its Tentative and Proposed Statement of Decision which concluded that the Defendants did not make a valid tender before the foreclosure sale. However, the additional text message exchange between Mr. Filed and Mr. Hunter introduced in the second phase of the trial as exhibit 224, sheds further light on the negotiations between the parties. On August 13, the afternoon before the non-judicial foreclosure sale, Defendants were prepared to drive to the trustee's office in Anaheim to pay the debt. At 3:05 p.m., Hunter communicated to Field in a manner which could reasonably lead Field to believe that the sale is being postponed when he stated: "I will email you the confirmation. You will also be able to call and verify." Thirty minutes later, at 3:37 p.m., Hunter requests that Field sign a "simple term sheet" before he postpones. Recognizing how close the deadline is to paying off the loan, Field states: "What will it say? The TD guys are leaving at 5pm." This and other exchanges between the parties' leads the court to believe that absent these last minute negotiations on the afternoon prior to the foreclosure sale, Defendants would have paid the loan off. The fact that they were able to obtain a cashier's check for the full indebtedness shortly after the foreclosure sale confirms funds were available.

The financial dealings between the parties was complex and involved much more than the note at issue. The parties were involved in good faith last minute negotiations regarding these complex matters. It is not as though Mr. Hunter was refusing to engage in last minute negotiations. In fact, it was Mr. Hunter on behalf of Plaintiff who was proposing a last minute alternative to foreclosure. This understandably delayed Defendants in paying off the note the day prior to the sale. The court does not believe that Mr. Hunter intentionally led the Defendants to believe a settlement was imminent in order to purchase the property at foreclosure. However, the effect of Mr. Hunter engaging in these last minute negotiations and sending a complex written counter offer, likely resulted in the Defendants not paying off the note on the day prior to the foreclosure sale. Under these circumstances, it would be unjust to remove the Defendants from the premises. Given that the Defendants had sufficient funds to pay the note off on the date of the judicial foreclosure sale, it makes no sense that they would allow their property to be foreclosed upon and thereby lose millions of dollars of equity. What makes sense is that they got caught up in last minute negotiations and time ran out to pay off the notre.

"Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062, 162 Cal. Rptr. 3d 382.) The parties dispute whether the above noted exceptions apply in an unlawful detainer proceeding as opposed to a quiet title action or unlimited case. There is some authority which suggests that inadequacy of purchase price coupled with procedural irregularity and/or unfairness can be raised in an unlawful detainer action. (*Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 266; *Harth v.*

*Baum* (1935) 7 Cal.App.2d 114, 116; *Whitman v. Transtate Title Co.* (1985) 165 Cal. App. 3d 312.) Given the unique circumstances of this case, this court is persuaded that inadequacy of purchase price coupled with procedural irregularity can be raised in this trial.

It is the general rule that a court has the power to vacate a foreclosure sale "where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." (*Bank of America etc. v. Reidy* (1940) 15 Cal.2d 243, 248, 101 P.2d 77.) But "mere inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made. There must in addition be proof of some element of fraud, unfairness, or oppression before the court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief." (*Sargent v. Shumaker* (1924) 193 Cal. 122, 129, 223 P. 464; *BFP v. Resolution Trust Corporation* (1994) 511 U.S. 531, 542, 114 S. Ct. 1757, 128 L. Ed. 2d 556 . . . ['[M]ere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside . . . if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness."'].) As recently stated by one court:

> *Inadequate price, even coupled with procedural irregularity, does not automatically render a trustee's sale subject to attack. "[M]ere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" (6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1284 [102 Cal. Rptr. 2d 711], italics added (6 Angels); see also Sargent v. Shumaker (1924) 193 Cal. 122, 129–130 [223 P. 464] [gross inadequacy in price must be coupled with unfairness or advantage " 'resulting in such gross inadequacy and consequent injury' " to borrower]; Crofoot v. Tarman (1957) 147 Cal. App. 2d 443, 446 [305 P.2d 56] [same].)"*
>
> (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93 [20 Cal.Rptr.3d 1].)

At the foreclosure sale, Genova paid approximately $ 160,000.00 for the subject property which is valued between 14 million and 20 million dollars. Plaintiff presented evidence and argument that the property was worth 14 million despite the Defendants having purchased the property in 2013 for 16 million. Of course, liens on the property must be considered in determining what if any windfall equity Genova obtained. The only liens on the property are a $9 million first deed of trust, a $2.5 million second deed of trust, and a $500,000 abstract recorded against the property. Using the $14 million valuation offered by Plaintiffs, that leaves $2 million of equity in the property, rendering the purchase price a mere 8% of the value of the property. In *Whitman*, 175 Cal. at 276, the court found that a $12,960 payment for a $65,000 (i.e., paying 20% the value of the property) was grossly inadequate. Similarly, in *Winbigler*, 175 Cal. at 276, a payment of 10% of the value of the property was found to be grossly inadequate. Even assuming Genova's valuation of 14 million, the purchase price was grossly inadequate. Moreover, the court is persuaded that the value of the home is between 15 and 18 million, meaning that Plaintiff acquired between 2 and 6 million by way of a purchase for approximately $ 160,000.00. The court finds that the purchase price of the subject property was grossly inadequate, upholding the foreclosure sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a procedural irregularity within the meaning of the above case law.

## CONCLUSION

The court finds that the purchase price at the non-judicial foreclosure sale of the subject property was grossly inadequate and that an injustice would result to enforce said sale and evict the Defendants. The court is satisfied that the last minute negotiations between the parties resulted in a procedural irregularity sufficient to deny Plaintiff possession of the premises at this

time. The issues addressed in this ruling are better flushed out and addressed in the unlimited quiet title action. The court hereby conditionally rules in favor of the Defendants on the issue of possession of the premises, contingent upon the Defendants paying off the subject note in its entirety, plus costs. Said payment and costs to be paid by Defendants to Plaintiff by no later than December 4, 2019, in order for Defendants to remain in possession of the subject premises. For the benefit of any reviewing court, if this court's conditional ruling were reversed, this court's intent would be to consolidate the unlawful detainer and unlimited quiet title cases and stay entry of judgment in the unlawful detainer matter until resolution of the unlimited quiet title action. Counsel for Defendants to submit a proposed judgment consistent with this ruling.

Dated: November 18, 2019

KEVIN G. DENOCE
Judge of the Superior Court

**PROOF OF SERVICE**
*CCP § 1012, 1013a (1), (3) & (4)*

STATE OF CALIFORNIA )
) ss.
COUNTY OF VENTURA )

Case Number: 56-2019-00532526-CU-UD-VTA
Case Title: Genova Capital Inc. vs. Field

I am employed in the County of Ventura, State of California. I am over the age of 18 years and not a party to the above-entitled action. My business address is 800 S. Victoria Avenue, Ventura, CA 93009. On the date set forth below, I served the within:

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

On the following named party(ies)

Timothy Matthew Ryan
E-Mail: tryan@theryanfirm.com
30 Corporate Park, Suite 310
Irvine, California 92606

David Rosen
E-Mail: drosen@murphyrosen.com
100 Wilshire Boulevard, Suite 1300
Santa Monica, California 90401-1142

Cristian Arrieta
E-Mail: carrieta@lrmmt.com
300 Esplanade Drive, Suite 850
Oxnard, California 93036

_____ **BY PERSONAL SERVICE**: I caused a copy of said document(s) to be hand delivered to the interested party at the address set forth above on ________at ___________a.m./p.m.

__x___ **BY MAIL**: I caused such envelope to be deposited in the mail at Ventura, California. I am readily familiar with the court's practice for collection and processing of mail. It is deposited with the U.S. Postal Service on the dated listed below.

and__**BY FACSIMILE**: I caused a *courtesy copy* of said documents to be sent via facsimile to the interested party at the facsimile number set forth above at ________ from telephone number ______.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on **November 19, 2019**, at Ventura, California.

By: ______________________________
H. McIntyre, Judicial Secretary

# EXHIBIT 8

EXHIBIT 8

# EXHIBIT 9

EXHIBIT 9

COPY

APP-002

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: 178059
NAME: Timothy M. Ryan Andrew J. Mase (SBN 300680)
FIRM NAME: The Ryan Firm, APC
STREET ADDRESS: 30 Corporate Park, Suite 310
CITY: Irvine STATE: CA ZIP CODE: 92606
TELEPHONE NO.: (949) 263-1800 FAX NO.: (949) 872-2211
E-MAIL ADDRESS: amase@theryanfirm.com
ATTORNEY FOR (name): Plaintiff Genova Capital, Inc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 S. Victoria Ave.,
MAILING ADDRESS: 800 S. Victoria, Ave.,
CITY AND ZIP CODE: Ventura, 93009
BRANCH NAME:

PLAINTIFF/PETITIONER: Genova Capital, Inc.
DEFENDANT/RESPONDENT: Brigham Field, et al.

FOR COURT USE ONLY

VENTURA SUPERIOR COURT
FILED
JAN 15 2020
MICHAEL D. PLANET
Executive Officer and Clerk
BY: ____________, Deputy

BY FAX

[x] NOTICE OF APPEAL [ ] CROSS-APPEAL
(UNLIMITED CIVIL CASE)

CASE NUMBER: 56-2019-00532526-CU-UD-VTA

**Notice: Please read *Information on Appeal Procedures for Unlimited Civil Cases* (Judicial Council form APP-001) before completing this form. This form must be filed in the superior court, not in the Court of Appeal. A copy of this form must also be served on the other party or parties to this appeal. You may use an applicable Judicial Council form (such as APP-009 or APP-009E) for the proof of service. When this document has been completed and a copy served, the original may then be filed with the court with proof of service.**

1. NOTICE IS HEREBY GIVEN that (name): Genova Capital
appeals from the following judgment or order in this case, which was entered on *(date)*: Dec 13, 2019

PM — ok to change date per Andrew

- [ ] Judgment after jury trial
- [x] Judgment after court trial
- [ ] Default judgment
- [ ] Judgment after an order granting a summary judgment motion
- [ ] Judgment of dismissal under Code of Civil Procedure, §§ 581d, 583.250, 583.360, or 583.430
- [ ] Judgment of dismissal after an order sustaining a demurrer
- [ ] An order after judgment under Code of Civil Procedure, § 904.1(a)(2)
- [ ] An order or judgment under Code of Civil Procedure, § 904.1(a)(3)–(13)
- [ ] Other *(describe and specify code section that authorizes this appeal)*:

2. For cross-appeals only:
   a. Date notice of appeal was filed in original appeal:
   b. Date superior court clerk mailed notice of original appeal:
   c. Court of Appeal case number *(if known)*:

Date: January 14, 2020

Timothy M. Ryan
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY)

Form Approved for Optional Use
Judicial Council of California
APP-002 [Rev. January 1, 2017]

NOTICE OF APPEAL/CROSS-APPEAL (UNLIMITED CIVIL CASE)
(Appellate)

Cal. Rules of Court, rule 8.100
www.courts.ca.gov

# ATTACHMENT

VENTURA
SUPERIOR COURT
FILED

NOV 19 2019

MICHAEL D. PLANET
Executive Officer and Clerk
BY: ________ Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF VENTURA**

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION,

Plaintiff,

vs.

BRIGHAM FIELD, COLETTE PELISSIER; ALL UNNAMED OCCUPANTS, TENANTS, AND SUBTENANTS; AND DOES 1-20,

Defendants.

Case No. 56-2019-00532526-CU-UD-VTA

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

## BACKGROUND

The parties in this case waived jury on all issues and agreed to have the court determine the "tender" issue first. [1] Any issues regarding alleged irregularities in the nonjudicial foreclosure sale were to be litigated after the court decided the issue of "tender." Therefore, the only issue addressed in the previously issued Statement of Decision was whether unconditional "tender" was made by Defendants Field or Pelisser prior to the nonjudicial foreclosure sale. The

---

[1] "*MR. LANCASTER: We've met and conferred. We are both waiving jury trial for the case.*
*THE COURT: Okay. For all issues on the unlawful detainer case; is that correct?*
*MR. LANCASTER: Yes. And we want to proceed to try the tender, title issue first.*
*THE COURT: When we say "all issues," they would include, but be not limited to tender, title, any alleged defects in the nonjudicial foreclosure sale, right?*
*MR. LANCASTER: Correct....*
*THE COURT: Okay. So any and all issues regarding the unlawful detainer matter, according the parties' agreement, will be tried by way of court trial and all parties have waived their right to a jury trial on these issues."*
(R.T. from 9/16/19, pp. 30-31.)

parties dispute whether the resolution of the tender issue adversely to Defendants precludes further litigation of any alleged irregularities or equitable defenses. At the reconvened court trial, the court permitted the Defendants to introduce additional evidence on asserted equitable defenses and procedural irregularities of the sale.

Genova's claim of right to possession is based on a loan of $125,000.00 secured by a deed of trust signed by both Defendants encumbering the Subject Property (Exs. 1, 202.) The loan became due in full on June 30, 2017 (Ex. 1.) "When a trustor defaults on the obligation . . . [the beneficiary] can rely upon the power of sale in the deed of trust and pursue a private sale." (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1502.) Notice of Field's default under the note was given in writing on March 11, 2019, via email to Field and Pelissier, and Field acknowledged receipt of the email (Ex. 18, ¶2; 9/17 RT 61:16-19, 64:18-24.) Notice of Default under the deed of trust was recorded on April 15, 2019 (Ex. 205.) Notice of Trustee's Sale was recorded on June 18, 2019 (Ex. 206.) On August 14, 2019, Plaintiff made a full credit bid for the Subject Property, through the trustee, at the auction and ownership of the Subject Property was conveyed to Plaintiff. (Ex. 214; 9/19 111:23-112:26.)

"There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee. [Citation.] The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale. [Citation.] . . . [¶] *Civil Code* sections 2924 through 2924k . . . govern nonjudicial foreclosure sales pursuant to a power of sale contained in a deed of trust." (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813-814.) Under *Civil Code* 2924h, subdivision (b), the beneficiary under a deed of trust or its assignee is entitled to make a credit bid at the trustee's sale up to the amount of the debt owed. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8

Cal.App.5th 23, 45.) To initiate the foreclosure process, '[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents' must first record a notice of default . . . . After three months, a notice of sale must then be published, posted, mailed, and recorded in accordance with the time limits prescribed by the statute. [Citations.] [¶] The 'traditional method' to challenge a nonjudicial foreclosure sale 'is a suit in equity . . . to have the sale set aside and to have the title restored." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10-11.) The deed of trust granted to Genova in this case allowed Genova to proceed by nonjudicial foreclosure following the Defendants default. (*Civ. Code* § 2924 et seq.; see *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830, 30 Cal. Rptr. 2d 777.) The following evidence was introduced at trial: the trustee's deed upon sale (Ex. 214), the notice of trustee's sale (Ex. 206), the notice of default (Ex. 205), the substitution of trustee (Ex. 204), and deed of trust (Ex. 202).

Written notice of the default was provided to both Defendants on March 11, 2019, via e-mail. (Ex. 18 [paragraph 2 in evidence]; 9/17 RT 61:16-20, 64:23-24 .) The email expressly stated that "this loan is 619 days past due" and that it has "a total amount owing of $146,198.62." (Ex. 18.) Defendants argue that they did not actually receive the recorded notice of default, and only received the notice of trustee's sale. (Def. Br. at 1.) *Civil Code* sections 2924 through 2924k do not require actual receipt of any foreclosure notice by a borrower. "*Civil Code* sections 2924–2924h, *do not require actual receipt by a trustor of a notice of default or notice of sale*. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent." (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746–747 .) Also, it is of no legal importance that the note was only signed by Field. (*Civ. Code* §§2928, 2890.) It is undisputed that both Field and Pelissier signed

the deed of trust, which provided for the power of sale, and that the Subject Property was owned by both Field and Pelissier at the time they signed the deed of trust. (9/17 RT 44:2-8 [Field: "Right. Okay. Page 34. This appears to be my signature; and to the best of my knowledge, this appears to be my wife's signature as well."]; *Id.* 44:17-21 [Field: "I put my initials on pages 1 through 33, and it appears that my wife did the same."]; Ex. 202, at 34 of 36; Answer ¶4.)

**LITIGABLE ISSUES IN AN UNLAWFUL DETAINER PROCEEDING FOLLOWING A NONJUDICIAL FORECLOSURE SALE**

The primary issue in an unlawful detainer proceeding such as this one is the Plaintiff's right to possession. (*Old National Financial Services, Inc. v. Seibert, supra,* 194 Cal.App.3d at p. 465.) But where, as here, the unlawful detainer action is brought pursuant to CCP section 1161a, subdivision (b)(3), title is also an issue. This section provides that an unlawful detainer action may be filed "[w]here the property has been sold in accordance with Section 2924 of the Civil Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3).) Although issues concerning title are not litigable in a traditional landlord-tenant eviction under section 1161, they are litigable following a nonjudicial foreclosure sale under section 1161a:

> *" 'Historically a cause of action for unlawful detainer was available only to a landlord against his tenant.' " (Gross v. Superior Court (1985) 171 Cal.App.3d 265, 271 [217 Cal. Rptr. 284].) The remedy has been expanded by statute to additional categories of plaintiffs (see § 1161) and defendants (see § 1161a). The purpose of section 1161a was to make clear that one acquiring ownership through foreclosure could also evict by a summary procedure. (See Gross v. Superior Court, supra, 171 Cal.App.3d at p. 271.)*
>
> ***In an unlawful detainer action brought pursuant to section 1161a, subdivision (b)(3), the plaintiff must show that he or she acquired the property at a regularly conducted sale and thereafter "duly perfected" title.*** *(Evans v. Superior Court (1977) 67 Cal.App.3d 162, 169 [136 Cal.Rptr. 596]; see Stephens v. Hollis (1987) 196 Cal.App.3d 948, 952 [242 Cal.Rptr. 251].) "[W]here the*

*plaintiff in the unlawful detainer action is the purchaser at a trustee's sale, he or she 'need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title.'" (Old National Financial Services, Inc. v. Seibert (1987) 194 Cal.App.3d 460, 465 [239 Cal.Rptr. 728], italics omitted.)* ***"The statute" with which a postforeclosure plaintiff must prove compliance is Civil Code section 2924.*** *(Seidell v. Anglo-California Trust Co. (1942) 55 Cal.App.2d 913, 920 [132 P.2d 12].)"*

(*The Bank of New York Mellon v. Preciado* (2013) 224 Cal.App.4th Supp. 1, 9 (Emphasis added.)

A plaintiff pursuing a postforeclosure action under section 1161a(b)(3) must "prove a sale in compliance with the statute [*Civ. Code*, § 2924] and deed of trust, followed by purchase at such sale." (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474; *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, 160, 69 P.2d 832; see also *Old National Financial Services, Inc. v. Seibert* (1987) 194 Cal.App.3d 460, 465, 239 Cal. Rptr. 728.) "[A]n unlawful detainer action must be brought to evict the trustor (§ 1161a, subd. (b)(3)). The purchaser must show that he/she acquired the property at a regularly conducted sale in accordance with *Civil Code* section 2924 "and that title under such sale was duly perfected. [Citation.]" (*Lyons v. Santa Barbara County Sheriff's Office* (2014) 231 Cal.App.4th 1499, 1505 [181 Cal.Rptr.3d 186].)

**TENDER MUST BE UNCONDITIONAL AND ABSOLUTE IN ORDER TO FORESTALL A NONJUDICIAL FORECLOSURE**

A debtor may forestall a foreclosure sale by tendering the amount owed. The rules applying to tender apply in the post-foreclosure unlawful detainer context when the defendant seeks to challenge Plaintiff's title. (*MCA, Inc. v. Universal Diversified Enterprises Corp.* (1972) 27 Cal.App.3d 170, 177 [post-foreclosure unlawful detainer case holding that "[D]efendant's assertion of plaintiff's noncompliance with Civil Code section 2924 did not raise a triable issue 'because we do not find in the record any offer on the part of [defendant] to pay the full amount

of the debt for which the property was given as security.'"]; *Kartheiser v. Superior Court of Los Angeles County* (1959) 174 Cal.App.2d 617, 620 ["in *Bisno* v. *Sax* (Code Civ. Proc., §1908 subd. 2); one of the major issues in that case and in the unlawful detainer action is the sufficiency of the tender made by Bisno, an issue upon which Sax prevailed below."].)

Under *Civil Code* section 2924c, subdivision (a)(1), the trustor or mortgagor may satisfy a loan once foreclosure proceedings have begun by paying the entire amount due, including principal, interest, taxes, assessments, and costs incurred in enforcing the obligation—at any time before entry of the decree of foreclosure. Defendants claim that they made a valid tender offer prior to the nonjudicial foreclosure sale. In order for Defendants to prove their affirmative defense of tender, Defendants must show be a preponderance of the evidence that their alleged tenders were unconditional and absolute. The tender rules are strictly applied and it is a debtor's obligation to make an unambiguous tender of the entire amount of the debt. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 445–446 [129 Cal. Rptr. 2d 436].)

"A tender is an unconditional offer to perform an order to extinguish an obligation." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 783 [222 Cal.Rptr.3d 1, citing *Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [98 Cal.Rptr. 414].) Merely stating one is ready, willing, and able to tender payment upon learning what is owed is insufficient tender where the notice of default informs debtor of a minimum amount owed and debtor tendered no payment of at least that amount. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra.)* In *Crossroads Investors, L.P. v. Federal National Mortgage Assn.*, the court held that tender conditioned on the creditor relinquishing its claim to a prepayment premium on mortgage which was to be paid by the trustor only if the bankruptcy court determined creditor was entitled to claim the premium, was

not a valid tender. It is a foundational principal in nonjudicial foreclosure law that in order to redeem a property through a valid tender, that "the tender must be absolute," which has been the law of California for over 150 years. (*McMillan v. Richards* (1858) 9 Cal. 365, 405.) "[A] tender to be valid must be of full performance (Civ. Code, §1486), and it must be unconditional." (*Still v. Plaza Marina Commercial Corp.* (1971) 21 Cal.App.3d 378, 385 [citing Civ. Code §1494].)

"[A] tender to be valid must be of full performance [citation], and it must be unconditional." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385; Crossroads Investors, L.P. v. Federal National Mortgage Assn., supra, at p. 783; *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15; *Wiener v. Van Winkle* (1969) 273 Cal.App.2d 774, 782, 78 Cal.Rptr. 761 ["It is well established that a tender must be unconditional, and an unwarranted condition annexed to an offer to pay is in effect a refusal to perform"].) Additionally, """where the rules [concerning tender] are prescribed by statute . . . , the tender must be in such form as to comply therewith. The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction."" (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439, 129 Cal. Rptr. 2d 436.) "[I]t is a debtor's responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." (Id. at p. 439.)

Thus, a defendant's purported tender, filed simultaneously with a counterclaim, was held insufficient where the defendant stated it was "willing to pay [plaintiffs] the amount of our tender" and "if it turns out, after a trial, that we were entitled to a set off, we will seek from their

assets to get it back." (*Still v. Plaza Marina Commercial Corp., supra*, 21 Cal.App.3d at p. 385.) The defendant's offer in *Still* was "qualified and conditional by reason of the counterclaim." (*Ibid.*) Similarly, a tender was held invalid where a defendant deposited funds in an escrow account "pending entry of a final District Court order or judgment directing the escrow agent to pay the tendered funds to [plaintiff] . . . and dismissing this action as moot." (See *Chen v. Allstate Ins. Co.*, 819 F.3d at p. 1146.)

**TENDER, INADEQUACY OF PURCHASE PRICE & PROCEDURAL IRREGULARITES**

This court stands by its Tentative and Proposed Statement of Decision which concluded that the Defendants did not make a valid tender before the foreclosure sale. However, the additional text message exchange between Mr. Filed and Mr. Hunter introduced in the second phase of the trial as exhibit 224, sheds further light on the negotiations between the parties. On August 13, the afternoon before the non-judicial foreclosure sale, Defendants were prepared to drive to the trustee's office in Anaheim to pay the debt. At 3:05 p.m., Hunter communicated to Field in a manner which could reasonably lead Field to believe that the sale is being postponed when he stated: "I will email you the confirmation. You will also be able to call and verify." Thirty minutes later, at 3:37 p.m., Hunter requests that Field sign a "simple term sheet" before he postpones. Recognizing how close the deadline is to paying off the loan, Field states: "What will it say? The TD guys are leaving at 5pm." This and other exchanges between the parties' leads the court to believe that absent these last minute negotiations on the afternoon prior to the foreclosure sale, Defendants would have paid the loan off. The fact that they were able to obtain a cashier's check for the full indebtedness shortly after the foreclosure sale confirms funds were available.

The financial dealings between the parties was complex and involved much more than the note at issue. The parties were involved in good faith last minute negotiations regarding these complex matters. It is not as though Mr. Hunter was refusing to engage in last minute negotiations. In fact, it was Mr. Hunter on behalf of Plaintiff who was proposing a last minute alternative to foreclosure. This understandably delayed Defendants in paying off the note the day prior to the sale. The court does not believe that Mr. Hunter intentionally led the Defendants to believe a settlement was imminent in order to purchase the property at foreclosure. However, the effect of Mr. Hunter engaging in these last minute negotiations and sending a complex written counter offer, likely resulted in the Defendants not paying off the note on the day prior to the foreclosure sale. Under these circumstances, it would be unjust to remove the Defendants from the premises. Given that the Defendants had sufficient funds to pay the note off on the date of the judicial foreclosure sale, it makes no sense that they would allow their property to be foreclosed upon and thereby lose millions of dollars of equity. What makes sense is that they got caught up in last minute negotiations and time ran out to pay off the notre.

"Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062, 162 Cal. Rptr. 3d 382.) The parties dispute whether the above noted exceptions apply in an unlawful detainer proceeding as opposed to a quiet title action or unlimited case. There is some authority which suggests that inadequacy of purchase price coupled with procedural irregularity and/or unfairness can be raised in an unlawful detainer action. (*Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 266; *Harth v.*

*Baum* (1935) 7 Cal.App.2d 114, 116; *Whitman v. Transtate Title Co.* (1985) 165 Cal. App. 3d 312.) Given the unique circumstances of this case, this court is persuaded that inadequacy of purchase price coupled with procedural irregularity can be raised in this trial.

It is the general rule that a court has the power to vacate a foreclosure sale "where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." (*Bank of America etc. v. Reidy* (1940) 15 Cal.2d 243, 248, 101 P.2d 77.) But "mere inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a sale legally made. There must in addition be proof of some element of fraud, unfairness, or oppression before the court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief." (*Sargent v. Shumaker* (1924) 193 Cal. 122, 129, 223 P. 464; *BFP v. Resolution Trust Corporation* (1994) 511 U.S. 531, 542, 114 S. Ct. 1757, 128 L. Ed. 2d 556 . . . ['[M]ere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside . . . if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness."'].) As recently stated by one court:

> *Inadequate price, even coupled with procedural irregularity, does not automatically render a trustee's sale subject to attack. "[M]ere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale. [Citations.]" (6 Angels, Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1284 [102 Cal. Rptr. 2d 711], italics added (6 Angels); see also Sargent v. Shumaker (1924) 193 Cal. 122, 129–130 [223 P. 464] [gross inadequacy in price must be coupled with unfairness or advantage " 'resulting in such gross inadequacy and consequent injury' " to borrower]; Crofoot v. Tarman (1957) 147 Cal. App. 2d 443, 446 [305 P.2d 56] [same].)"*
>
> (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 93 [20 Cal.Rptr.3d 1].)

At the foreclosure sale, Genova paid approximately $ 160,000.00 for the subject property which is valued between 14 million and 20 million dollars. Plaintiff presented evidence and argument that the property was worth 14 million despite the Defendants having purchased the property in 2013 for 16 million. Of course, liens on the property must be considered in determining what if any windfall equity Genova obtained. The only liens on the property are a $9 million first deed of trust, a $2.5 million second deed of trust, and a $500,000 abstract recorded against the property. Using the $14 million valuation offered by Plaintiffs, that leaves $2 million of equity in the property, rendering the purchase price a mere 8% of the value of the property. In *Whitman*, 175 Cal. at 276, the court found that a $12,960 payment for a $65,000 (i.e., paying 20% the value of the property) was grossly inadequate. Similarly, in *Winbigler*, 175 Cal. at 276, a payment of 10% of the value of the property was found to be grossly inadequate. Even assuming Genova's valuation of 14 million, the purchase price was grossly inadequate. Moreover, the court is persuaded that the value of the home is between 15 and 18 million, meaning that Plaintiff acquired between 2 and 6 million by way of a purchase for approximately $ 160,000.00. The court finds that the purchase price of the subject property was grossly inadequate, upholding the foreclosure sale would be unfair and unjust, and the nature of the last minute negotiations amounts to a procedural irregularity within the meaning of the above case law.

## CONCLUSION

The court finds that the purchase price at the non-judicial foreclosure sale of the subject property was grossly inadequate and that an injustice would result to enforce said sale and evict the Defendants. The court is satisfied that the last minute negotiations between the parties resulted in a procedural irregularity sufficient to deny Plaintiff possession of the premises at this

time. The issues addressed in this ruling are better flushed out and addressed in the unlimited quiet title action. The court hereby conditionally rules in favor of the Defendants on the issue of possession of the premises, contingent upon the Defendants paying off the subject note in its entirety, plus costs. Said payment and costs to be paid by Defendants to Plaintiff by no later than December 4, 2019, in order for Defendants to remain in possession of the subject premises. For the benefit of any reviewing court, if this court's conditional ruling were reversed, this court's intent would be to consolidate the unlawful detainer and unlimited quiet title cases and stay entry of judgment in the unlawful detainer matter until resolution of the unlimited quiet title action. Counsel for Defendants to submit a proposed judgment consistent with this ruling.

Dated: November 18, 2019

KEVIN G. DENOCE
Judge of the Superior Court

9317-0001 TMR

RECEIVED

NOV 22 2019

BY:__________

**PROOF OF SERVICE**
*CCP § 1012, 1013a (1), (3) & (4)*

STATE OF CALIFORNIA )
) ss.
COUNTY OF VENTURA )

Case Number: 56-2019-00532526-CU-UD-VTA
Case Title: Genova Capital Inc. vs. Field

I am employed in the County of Ventura, State of California. I am over the age of 18 years and not a party to the above-entitled action. My business address is 800 S. Victoria Avenue, Ventura, CA 93009. On the date set forth below, I served the within:

**COURT'S STATEMENT OF DECISION FOLLOWING COURT TRIAL**

On the following named party(ies)

Timothy Matthew Ryan
E-Mail: tryan@theryanfirm.com
30 Corporate Park, Suite 310
Irvine, California 92606

David Rosen
E-Mail: drosen@murphyrosen.com
100 Wilshire Boulevard, Suite 1300
Santa Monica, California 90401-1142

Cristian Arrieta
E-Mail: carrieta@lrmmt.com
300 Esplanade Drive, Suite 850
Oxnard, California 93036

_____ **BY PERSONAL SERVICE**: I caused a copy of said document(s) to be hand delivered to the interested party at the address set forth above on ________at ___________a.m./p.m.

__x___ **BY MAIL**: I caused such envelope to be deposited in the mail at Ventura, California. I am readily familiar with the court's practice for collection and processing of mail. It is deposited with the U.S. Postal Service on the dated listed below.

and__**BY FACSIMILE**: I caused a *courtesy copy* of said documents to be sent via facsimile to the interested party at the facsimile number set forth above at ________ from telephone number ______.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on **November 19, 2019**, at Ventura, California.

By: [signature]
H. McIntyre, Judicial Secretary

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within action. I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 30 Corporate Park, Suite 310, Irvine, CA 92606.

On January 14, 2020, I served the within document(s) described as: **NOTICE OF APPEAL** on the interested parties in this action:

☒ by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| Murphy Rosen LLP<br>David E. Rosen, Esq.<br>Nicole Ambrosetti, Esq.<br>100 Wilshire Blvd., Suite 1300<br>Santa Monica, CA 90401 | Tel: (310) 899-3300<br>Fax: (310) 399-7201<br>Email:<br>drosen@murphyrosen.com<br>nambrosetti@murphyrosen.com | Attorney for Defendants' |

☒ **BY MAIL** (Code Civ. Proc. § 1013(a))—I deposited such envelope(s) for processing in the mailroom in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 14, 2020, at Irvine, California.

HEATHER MORRIS

**THE RYAN FIRM**
A Professional Corporation

# EXHIBIT 10

EXHIBIT 10

# Appellate Courts Case Information

## 2nd Appellate District

Change court ▼

*Court data last updated: 06/02/2020 01:42 PM*

## Docket (Register of Actions)

**Genova Capital, Inc. v. Field et al.**
**Division 6**
**Case Number B303697**

| Date | Description | Notes |
|---|---|---|
| 01/17/2020 | Notice of appeal lodged/received. | N/A dtd 1-15-20 by GENOVA CAPITAL, INC.; from judgment after court trial dtd 12-13-19 |
| 01/28/2020 | Received default notice 8.121(a) designation not filed. Dated: | 1/28/20; to cure by 2/12/20 |
| 01/31/2020 | Civil case information statement filed. | Plaintiff and Appellant: Genova Capital, Inc.<br>Attorney: Andrew Jonathan Mase |
| 02/27/2020 | Appellant's notice designating record on appeal filed in trial court on: | CT's & RT's |
| 02/27/2020 | Received copy of document filed in trial court. | dtd 2-19-20 from VCSC; Notice of Rescinding Default: designation filed |
| 03/02/2020 | Notice to reporter to prepare transcript. | dtd 3-2-20 |
| 03/03/2020 | Change of address filed for: | Atty T. Ryan for appellant |
| 03/23/2020 | Order filed. | The Court Reporter's extension to file the transcripts on appeal by 5-20-20 is GRANTED. |

**Click here** to request automatic e-mail notifications about this case.

© 2020 Judicial Council of California

# EXHIBIT 11

EXHIBIT 11

VENTURA SUPERIOR COURT
FILED
AUG 23 2019
MICHAEL D. PLANET
Executive Officer and Clerk
BY:________________, Deputy
GERALYN N. FENWICK

Michael J. Lancaster, Esq. (SBN 92788)
**STOCKER & LANCASTER LLP**
19200 Von Karman Ave, Suite 600
Irvine, CA 92612
Telephone: (949) 622-5575
Lancasterlaw2020@yahoo.com

Attorneys for Plaintiffs,
BRIGHAM FIELD and COLETTE PELISSIER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA, HALL OF JUSTICE**

BRIGHAM FIELD, COLETTE PELISSIER,

Plaintiffs,

v.

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO AND DOES 1 THROUGH 20, INCLUSIVE,

Defendants.

**Case No.** 56-2019-00532393-CU-OR-VTA

**UNLIMITED CIVIL COMPLAINT**

**EXHIBITS 1-10**

**COMES NOW** Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, and submits attached **EXHIBITS 1 through 10**, which are hereby filed concurrently with and made a part of Plaintiffs Verified Unlimited Civil Complaint.

DATED: 8-22-2019

STOCKER & LANCASTER LLP

By: ______________________
Michael J. Lancaster
Attorneys for Plaintiffs

VENTURA SUPERIOR COURT
**FILED**
AUG 23 2019
MICHAEL D. PLANET
Executive Officer and Clerk
BY:________________, Deputy
**GERALYN N. FENWICK**

Michael J. Lancaster, Esq. (SBN 92788)
**STOCKER & LANCASTER LLP**
19200 Von Karman Ave, Suite 600
Irvine, CA 92612
Telephone: (949) 622-5575
Lancasterlaw2020@yahoo.com

Attorneys for Plaintiffs,
BRIGHAM FIELD and COLETTE PELISSIER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA, HALL OF JUSTICE**

| | |
|---|---|
| BRIGHAM FIELD, COLETTE PELISSIER,<br>Plaintiffs,<br><br>v.<br><br>GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO AND DOES 1 THROUGH 20, INCLUSIVE,<br>Defendants. | **Case No.** 56-2019-00532393-CU-OR-VTA<br><br>**UNLIMITED CIVIL COMPLAINT**<br>**EXHIBITS 1-10** |

**COMES NOW** Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, and submits attached **EXHIBITS 1 through 10**, which are hereby filed concurrently with and made a part of Plaintiffs Verified Unlimited Civil Complaint.

DATED: 8-22-2019

STOCKER & LANCASTER LLP

By: ______________________
Michael J. Lancaster
Attorneys for Plaintiffs

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. Many courts encourage or require parties to try ADR before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. You can read more information about these ADR processes and watch videos that demonstrate them at *www.courtinfo.ca.gov/programs/adr/types.htm*. A form for agreeing to use ADR is attached.

### Potential Advantages and Disadvantages

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

### Most Common Types of ADR

**Mediation** – A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences** – A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration** – The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration,* they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration,* any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial, or want an expert in the subject matter of the dispute to make a decision.

### Local ADR Programs for Civil Cases

**Mediation** – The Ventura Superior Court has maintained a mediation program since April 1, 1993. Its goals are to speed resolution of cases by bringing the parties together before they have made a major economic and emotional investment in litigation, and to increase awareness of this effective method of alternative dispute resolution.

Mediators need not be attorneys, but must have 25 hours of formal mediation training by a recognized mediation training/education provider. Mediator duties include a brief review/preparation time and three hours of hearing time on a pro bono basis and pursuant to such rules as may be designated for mediators by the Ventura Superior Court.

Party Pay Mediation Panel – The court has a second mediation panel where mediators are paid by the parties rather than offering their services pro bono. Mediators on the "party pay" panel must have completed 25 hours of formal mediation training and have participated as mediator a minimum of 25 court assigned mediations with a minimum hearing time of two hours each from any California Superior Court. All mediators on the "party pay" panel will provide three hours of mediation services per case at the rate of $150 per hour to be shared equally by all participating parties.

**Arbitration** – Arbitration is normally an informal process in which a neutral person (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or nonbinding arbitration. Binding arbitration is designed to give each side a resolution of their dispute when they cannot agree between themselves or with a mediator. If the arbitration is nonbinding, any party can reject the arbitrator's decision and request a trial.

**Mandatory Early Settlement Conference** – The MESC program was implemented through joint efforts of the Superior Court and the Ventura County Bar Association working primarily through the Bench/Bar Subcommittee. Cases that are appropriate for the program are identified and referred to a settlement officer to conduct a settlement conference. The parties have the opportunity for a serious exchange of facts, theories, and evaluations at the earliest possible time with an impartial attorney volunteer conducting the conference. The basic difference between cases assigned to the MESC and Mediation programs is the nature of the case and the relief sought. If the injury or damage is compensable in money damages and there is no emotional component or "hidden agenda" on the part of one or more of the parties, as is frequently the case in mediation cases, then the case is sent to the MESC program. MESC may be appropriate when negotiations between the parties have not proven successful.

**Settlement Conference** – Settlement Conferences may be mandatory or voluntary. In general, if the settlement conference is mandatory, ordered by the judge, the parties to the dispute and their attorneys will meet with a judge who conducts conference aimed at negotiating an agreement to settle the dispute rather than doing through the formal trial process.

**More Information about Court-Connected ADR:** Visit the court's webpage at www.ventura.courts.ca.gov.

**Dispute Resolution Programs Act (DRPA) funded ADR Program** - The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code 465 et seq.):

- Ventura Center for Dispute Settlement, 4001 Mission Oaks Blvd., #L, Camarillo, CA 93012
  805-384-1313
- Ventura County District Attorney's Consumer Mediation Unit
  805-654-3110

**Private ADR** – To find a private ADR program or neutral, search the internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice** – To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California Courts Website at www.courtinfo.ca.gov/selfhelp/lowcost.

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
MICHAEL J. LANCASTER-92788
STOCKER & LANCASTER LLP
19200 VON KARMAN AVE, SUITE 600
IRVINE, CA 92612

TELEPHONE NO.: 949-622-5575 FAX NO.:
ATTORNEY FOR (Name): BRIGHAM FIELD and COLETTE PELISSIER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Ventura, California 93009
BRANCH NAME: HALL OF JUSTICE

CASE NAME: FIELD v GENOVA CAPITAL

FOR COURT USE ONLY
VENTURA SUPERIOR COURT
FILED
AUG 23 2019
MICHAEL D. PLANET
Executive Officer and Clerk
BY: ________, Deputy
GERALYN N. FENWICK

## CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 56-2019-00532393-CU-OR-VTA
JUDGE:
DEPT:

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[X] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (*check all that apply*): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive

4. Number of causes of action (*specify*): 10

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: 8-22-2019
MICHAEL J. LANCASTER-92788
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

VENTURA
SUPERIOR COURT
FILED
AUG 23 2019
MICHAEL D. PLANET
Executive Officer and Clerk
BY:________________, Deputy
GERALYN N. FENWICK

Michael J. Lancaster, Esq. (SBN 92788)
**STOCKER & LANCASTER LLP**
19200 Von Karman Ave, Suite 600
Irvine, CA 92612
Telephone: (949) 622-5575
Lancasterlaw2020@yahoo.com

Attorneys for Plaintiffs,
BRIGHAM FIELD and COLETTE PELISSIER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA, HALL OF JUSTICE**

BRIGHAM FIELD, COLETTE PELISSIER,

Plaintiffs,

v.

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO AND DOES 1 THROUGH 20, INCLUSIVE,

Defendants.

**Case No.** 56-2019-00532393-CU-OR-VTA

**UNLIMITED CIVIL COMPLAINT FOR:**

1. **INJUNCTIVE & DECLARATORY RELIEF;**
2. **ORDER AND JUDGMENT SETTING ASIDE SALE;**
3. **CANCELLATION OF TRUSTEES DEED;**
4. **QUIET TITLE;**
5. **SLANDER OF TITLE;**
6. **WRONGFUL FORECLOSURE;**
7. **BREACH OF CONTRACT;**
8. **UNJUST ENRICHMENT;**
9. **RESCISSION & RESTITUTION;**
10. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**EXHIBITS 1-10**

**COMES NOW** Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, who complains of causes of action against Defendants and each of them as follows:

## FIRST CAUSE OF ACTION

**FOR INJUNCTIVE & DECLARATORY RELIEF AGAINST DEFENDANTS, GENOVA
CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A
CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE.**

1.      Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, are and at all times
mentioned in this complaint were residents of VENTURA COUNTY, California, and are the legal
owners of the residential real property located at 11802 Ellice Street, Malibu, CA 90265. Attached as
**Exhibit A** is a true and correct copy of the **Legal Description**. Plaintiffs purchased the residential
property in June of 2013. PLAINTIFFS own the property as "Brigham Field and Colette Pelissier,
husband and wife, as joint tenants." It is Plaintiffs opinion, as owners, that the property has a current
fair market value of $20,000,000.00.

2.      Defendant GENOVA CAPITAL INC., a California corporation, is now and at all
times mentioned in this complaint was, a corporation organized and existing under the laws of the
State of California, with its principal place of business at 555 Corporate Drive, Suite 120, Ladera
Ranch, California 92694, Orange County, California. GENOVA CAPITAL INC. is a lender and
beneficiary under a deed of trust used to initiate and complete the foreclosure on Plaintiffs
residential property.

3.      Defendant CALIFORNIA TD SPECIALISTS, a California corporation, a California
corporation, is now and at all times mentioned in this complaint was, a corporation organized and
existing under the laws of the State of California, with its principal place of business at 8190 and
8180 East Kaiser Blvd, Anaheim Hills, California 92808, Orange County, California.
CALIFORNIA TD SPECIALISTS was the **Trustee** appointed by GENOVA CAPITAL INC. to
initiate and complete the foreclosure on Plaintiffs residential property. **Attached as Exhibit 1** is a
true and correct copy of the recorded **Substitution of Trustee** recorded 4-15-2019.

4. Defendants contend that on or about November 28, 2016, a Promissory Note Secured by Deed of Trust for $2.5 million was executed by Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER in favor of Genova Capital and that said note was secured by a deed of trust on the residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property") This $2.5 million note was **not** the note and nor amount used for the foreclosure. **Attached as Exhibit 2** is a true and correct copy of Deed of Trust used for foreclosure, recorded 3-25-2019, which does not identify the $125,000.00 note. The last page includes a legal description that was pulled and attached in 2019 by Defendants. It was not attached to the original deed.

5. Defendants next contend that on or about April 11, 2017, a Straight Note for $125,000 was executed by Pelissier and Field, in favor of Genova Capital, and that said note was secured by a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice (the "Deed"), that was just recorded in April of 2019 on the Property. **This is false.** Both Plaintiffs, husband and wife, did not sign said note. This note was not intended as a Deed of Trust on Plaintiffs residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property"). That would require both spouses to be named and sign the note. That never occurred. **Attached as Exhibit 3** is a true and correct copy of is a copy of the Straight Note signed only by Brigham Field, **not signed by Genova, not signed by COLETTE PELISSIER, not in the name of COLETTE PELISSIER, with no Deed of Trust attached for the $125,000.00.** Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

6. Without serving Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, Notice of breach of the alleged **promissory note, according to its terms,** Defendants and each of them, initiated foreclosure proceedings on the Deed, and recorded a **Notice of Default on April 16, 2019,** claiming the $125,000.00 note, and later set a **Trustee's Sale of the Property on August 14, 2019** at 11 a.m., at the Ventura County Superior Courthouse, alleging some breach of the obligation secured by the deed of trust or note, with no breach and demand before the Notice of Default was recorded, and stating Defendants have elected to sell the property to satisfy that obligation.

**Attached as Exhibit 4** is a true and correct copy of NOTICE OF DEFAULT. **Attached as Exhibit 5** is a true and correct copy of **Notice of Trustee's Sale.** Both were obtained through Lawyers Title. It was not personally served on Plaintiffs. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

**PLAINTIFFS MADE FULL TENDERS BEFORE THE TRUSTEE'S SALE**

7. The day before the Trustees Sale date, August 13, 2019, PLAINTIFFS made a request for the full amount to cure and redeem. A **Demand for Payoff** was served by Defendants in the total sum of $160,122.58 as of 8/13/19 plus 34.25 daily interest. **Attached as Exhibit 6** is a true and correct copy of the **Demand for Payoff**. Shortly after receipt, **on August 13, 2019,** PLAINTIFFS made a full tender of the amount claimed by **offering a wire transfer of $161,000.00. Attached as Exhibit 7** is a true and correct copy of Plaintiff Brigham Field's **text offer** to Josh Hunter, CEO, of Genova Capital, **at 3:41 p.m. on 8-13-2019.** The next day, 8-14-2019, a **CASHIERS CHECK** drawn on Wells Fargo Bank was offered to Defendants in the amount of **$161,000.00. Attached as Exhibit 8,** is a true and correct copy of the CASHIERS CHECK. Both tenders were not accepted by Defendants.

8. Defendants GENOVA CAPITAL INC., and its Trustee CALIFORNIA TD SPECIALISTS, **refused both the tenders**. Instead, **GENOVA CAPITAL INC., required** the full payment for a "**postponement**" of the Trustees Sale, **and required that both Plaintiffs sign a new agreement giving GENOVA CAPITAL INC. fifty percent (50%) of their business, and also correct and ratify the defective $125,000.00 note so that is was security for the Deed of Trust used to foreclose and added that both Plaintiffs were also obligated.** Attached as **Exhibit 9** is a true and correct copy of the texts Plaintiffs received from, Genova Capital's proposed written agreement and email from their attorney. Outrageous! **An unfair, absolute conditional refusal of both full tenders.** There was an effective redemption by Plaintiffs tenders and the power of sale was terminated. Defendants had no legal right to foreclose. Defendants had no legal right to refuse the good faith tenders.

9. Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, personally appeared for the Trustees Sale at the Trustee Sale at 10:45 a.m. There were no bids except Plaintiffs offer of $161,000.00, which was not accepted. No one from Genova Capital, Inc., appeared. No one except Plaintiffs bid for the property. Defendants only had an auctioneer present and he left without accepting Plaintiffs CASHIERS CHECK drawn on Wells Fargo Bank on August 14, 2019 for $161,000.00.

10. Defendants refused to accept full tenders on August 13 and August 14, 2019.

11. If the Plaintiff Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Defendants agent on site, there was no sale. An effective redemption occurred.

12. A tender by the trustor of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

13. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to April 15, 2019. This was repaid before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to

Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered.**" (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

14. Notwithstanding the foregoing, on August 20, 2019, Defendant GENOVA CAPITAL INC. through its legal counsel, is now attempting to serve **Notice for Possession**, unlawful detainer proceedings claiming that there was a Trustee Sale on 8-14-2019. Either GENOVA CAPITAL INC.,

a California Corporation or its agent CALIFORNIA TD SPECIALISTS, a California Corporation, or both, have misled, deceived and defrauded Plaintiffs. Attached as **Exhibit 10** is a true and correct copy of the **Notice for Possession** left outside the property. It was also not served. It states there was a sale but does not identify the alleged new owner.

15. Defendants DOES 1 through 20, inclusive, have, or claim to have, an interest in the property subject to the deed of trust herein described, which interest is senior to the lien created by the GENOVA CAPITAL INC. deed of trust, and these lien holders were not given notice of the Default or Trustee's Sale. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 20, inclusive, being unknown, plaintiffs sue these defendants by these fictitious names and will amend this complaint to show their true names and capacities when they are ascertained.

16. As set forth herein, the default was improperly declared, the proceedings are void and invalid. The alleged breach of the obligation for which the deed of trust is security has not occurred, proper notice of breach under the Note and Deed of Trust was not given, and Defendants have refused plaintiff's tender of all principal and interest owing on the alleged obligation, subject to a full reservation of Plaintiffs rights. Plaintiffs contend the evidence shows there was an effective redemption and the power of sale was terminated, as a matter of law.

17. An actual controversy has arisen and now exists between plaintiffs and defendants GENOVA CAPITAL INC., a California Corporation or CALIFORNIA TD SPECIALISTS, a California Corporation and the unidentified DOE persons or company claiming to have purchased the property at foreclosure, regarding their respective rights and duties. Defendants GENOVA CAPITAL INC., a California Corporation or CALIFORNIA TD SPECIALISTS, a California Corporation contend there was a breach of the obligation secured by the deed of trust and Note, and that plaintiffs failed to make the payments of principal and interest due on and after some unknown date. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. This alone makes the entire foreclosure process

void. Plaintiffs contend there was no notice of breach given according to the terms of a note and deed of trust, the Notices recorded were defective, the amounts were materially inaccurate, not properly served, the alleged default of the obligation for which the deed of trust is security has not occurred, Plaintiffs have in fact tendered the full principal and interest ALLEGED to be owing on the obligation, which tender defendants refused to accept by wire transfer or cashier's check. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption and the power of sale was terminated. A judicial declaration is necessary and appropriate at this time under all the circumstances to unwind and rescind the lien improperly recorded by Defendants, and so that plaintiffs and defendants may determine their rights and duties under the alleged note and deed of trust.

18. Plaintiffs seek a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining all defendants, defendant's agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, encumbering the property, creating more liens on the property, either under the power of sale in the deed of trust or by foreclosure action or in any other manner; a declaration by the court that sale of the property to enforce the deed of trust is improper and void. there was an effective redemption, the power of sale was terminated, and order that all actions and recordings by the Defendants are rescinded and set aside, for costs, attorneys fees and other relief which is just and proper.

**SECOND CAUSE OF ACTION**

**FOR AN ORDER AND JUDGMENT SETTING ASIDE SALE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE.**

19. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 18, as though fully set forth, including all Exhibits.

20. According to Defendant, GENOVA CAPITAL INC., after 8-14-2019, said Defendant now reports the property was sold at the August 14, 2019 Trustees Sale. This cause of action applies to said purchaser and all named Defendants herein.

21. Defendants contend that on or about November 28, 2016, a Promissory Note Secured by Deed of Trust for $2.5 million was executed by Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER in favor of Genova Capital and that said note was secured by a deed of trust on the residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property") This $2.5 million note was not the note and nor amount used for the foreclosure. Attached as Exhibit 2 is a true and correct copy of Deed of Trust used for foreclosure, recorded 3-25-2019, which does not identify the $125,000.00 note. The last page includes a legal description that was pulled and attached in 2019 by Defendants. It was not attached to the original deed.

22. Defendants next contend that on or about April 11, 2017, a Straight Note for $125,000 was executed by Pelissier and Field, in favor of Genova Capital, and that said note was secured by a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice (the "Deed"), that was just recorded in April of 2019 on the Property. This is false. Both Plaintiffs, husband and wife, did not sign said note. This note was not intended as a Deed of Trust on Plaintiffs residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property"). That would require both spouses to be named and sign the note. That never occurred. Attached as Exhibit 3 is a true and correct copy of is a copy of the Straight Note signed only by Brigham Field, not signed by Genova, not signed by COLETTE PELISSIER, not in the name of COLETTE PELISSIER, with no Deed of Trust attached for the $125,000.00. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

23. Without serving Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, Notice of breach of the alleged promissory note, according to its terms, Defendants and each of them, initiated

foreclosure proceedings on the Deed, and recorded a Notice of Default on April 16, 2019, claiming the $125,000.00 note, and later set a Trustee's Sale of the Property on August 14, 2019 at 11 a.m., at the Ventura County Superior Courthouse, alleging some breach of the obligation secured by the deed of trust or note, with no breach and demand before the Notice of Default was recorded, and stating Defendants have elected to sell the property to satisfy that obligation. Attached as Exhibit 4 is a true and correct copy of NOTICE OF DEFAULT. Attached as Exhibit 5 is a true and correct copy of Notice of Trustee's Sale. Both were obtained through Lawyers Title. They were not personally served on Plaintiffs. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

**PLAINTIFFS MADE FULL TENDERS BEFORE THE TRUSTEE'S SALE**

24. The day before the Trustees Sale date, August 13, 2019, PLAINTIFFS made a request for the full amount to cure and redeem. A Demand for Payoff was served by Defendants in the total sum of $160,122.58 as of 8/13/19 plus 34.25 daily interest. Attached as Exhibit 6 is a true and correct copy of the Demand for Payoff. Shortly after receipt, on August 13, 2019, PLAINTIFFS made a full tender of the amount claimed by offering a wire transfer of $161,000.00. Attached as Exhibit 7 is a true and correct copy of Plaintiff Brigham Field's text offer to Josh Hunter, CEO, of Genova Capital, at 3:41 p.m. on 8-13-2019. The next day, 8-14-2019, a CASHIERS CHECK drawn on Wells Fargo Bank was offered to Defendants $161,000.00. Attached as Exhibit 8, is a true and correct copy of the CASHIERS CHECK. Both tenders were not accepted by Defendants and no objections to the tenders were served.

25. Defendants GENOVA CAPITAL INC., and its Trustee CALIFORNIA TD SPECIALISTS, refused both the tenders. Instead, GENOVA CAPITAL INC., required the full payment for a "postponement" of the Trustees Sale, and required that both Plaintiffs sign a new agreement giving GENOVA CAPITAL INC. fifty percent (50%) of their business, and also correct and ratify the defective $125,000.00 note so that is was security for the Deed of Trust used to

foreclose and added that both Plaintiffs were also obligated. Attached as Exhibit 9 is a true and correct copy of the texts Plaintiffs received from, Genova Capital's proposed written agreement and email from their attorney. Outrageous! An unfair, absolute conditional refusal of both full tenders. There was an effective redemption by Plaintiffs tenders and the power of sale was terminated. Defendants had no legal right to foreclose. Defendants had no legal right to refuse the good faith tenders.

26. Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, personally appeared for the Trustees Sale at the Trustee Sale at 10:45 a.m. There were no bids except Plaintiffs offer of $161,000.00, which was not accepted. No one from Genova Capital, Inc., appeared. No one except Plaintiffs bid for the property. Defendants only had an auctioneer present and he left without accepting Plaintiffs CASHIERS CHECK drawn on Wells Fargo Bank on August 14, 2019 for $161,000.00.

27. Defendants refused to accept full tenders on August 13 and August 14, 2019.

28. If the Plaintiff Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Defendants agent on site, there was no sale. An effective redemption occurred.

29. A tender by the trustor of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

30.  A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A.  The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B.  Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C.  The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be

recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

31. Notwithstanding the foregoing, on August 20, 2019, Defendant GENOVA CAPITAL INC. through its legal counsel, is now attempting to serve Notice for Possession, unlawful detainer proceedings claiming that there was a Trustee Sale on 8-14-2019. Either GENOVA CAPITAL INC., a California Corporation or its agent CALIFORNIA TD SPECIALISTS, a California Corporation, or both, have misled, deceived and defrauded Plaintiffs. Attached as Exhibit 10 is a true and correct copy of the Notice for Possession left outside the property. It was also not served. It states there was a sale but does not identify the alleged new owner.

32. Defendants DOES 1 through 20, inclusive, have, or claim to have, an interest in the property subject to the deed of trust herein described, which interest is senior to the lien created by the GENOVA CAPITAL INC. deed of trust, and these lien holders were not given notice of the Default or Trustee's Sale. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 20, inclusive, being unknown, plaintiffs sue these defendants by these fictitious names and will amend this complaint to show their true names and capacities when they are ascertained.

33. As set forth herein, the default was improperly declared, the proceedings are void and invalid. The alleged breach of the obligation for which the deed of trust is security has not occurred, proper notice of breach under the Note and Deed of Trust was not given, and Defendants have

refused plaintiff's tender of all principal and interest owing on the alleged obligation, subject to a full

reservation of Plaintiffs rights. Plaintiffs contend the evidence shows there was an effective

redemption and the power of sale was terminated, as a matter of law.

34.     Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore

owed nothing to Defendants. This alone makes the entire foreclosure process void. Plaintiffs contend

there was no notice of breach given according to the terms of a note and deed of trust, the Notices

recorded were defective, the amounts were materially inaccurate, not properly served, the alleged

default of the obligation for which the deed of trust is security has not occurred, Plaintiffs have in

fact tendered the full principal and interest ALLEGED to be owing on the obligation, which tender

defendants refused to accept by wire transfer or cashier's check. Plaintiffs did, in fact, offer to pay

the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an

effective redemption and the power of sale was terminated. A judicial declaration is necessary and

appropriate at this time under all the circumstances to set aside any sale, and rescind the lien

improperly recorded by Defendants.

35.     Plaintiffs seek a temporary restraining order, a preliminary injunction, and a

permanent injunction, enjoining all defendants, defendant's agents, attorneys, and representatives,

and all persons acting in concert or participating with them, from selling, attempting to sell, or

causing to be sold the property, encumbering the property, creating more liens on the property, either

under the power of sale in the deed of trust or by foreclosure action or in any other manner; a

declaration by the court that sale of the property to enforce the deed of trust is improper and void.

there was an effective redemption, the power of sale was terminated, and order that all actions and

recordings by the Defendants are rescinded and set aside, for costs, attorneys fees and other relief

which is just and proper.

36. As set forth herein, the sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

37. Plaintiff has tendered and offers to Defendant GENOVA CAPITAL INC., all amounts due and owing so that the claimed default may be cured and plaintiffs may be reinstated to their former rights and privileges, in exchange for a deed of reconveyance of said Deed of Trust and cancellation of the Note. This offer is subject to a full reservation of all Plaintiffs rights.

**THIRD CAUSE OF ACTION**

**FOR AN ORDER AND JUDGMENT CANCELLING THE TRUSTEE'S DEED AND ALL OTHER DEEDS RECORDED ON AND AFTER 8-14-2019, AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE**

38. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 37, as though fully set forth, including all Exhibits.

39. Defendant, GENOVA CAPITAL INC. and DOES 5-20 claims an estate or interest in the property based on a trustee's deed.

40. The claims of Defendant, GENOVA CAPITAL INC. and DOES 5-20 to the property are without any legal right or merit. Although the trustee's deed appears valid on its face, it is void, invalid, and of no force and effect, for the reasons set forth in the FIRST & SECOND CAUSES OF ACTION. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

41. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B.    Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C.    The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

42.    The estate or interest claimed in the property by Defendant, GENOVA CAPITAL INC. and DOES 5-20 under the trustee's deed is a cloud on the Plaintiff's title to the property in that it tends to depreciate its market value, restricts plaintiff's use and enjoyment of the property, and hinders plaintiff's right to unrestricted alienation of the property. If the trustee's deed is not delivered and canceled, serious irreparable injury will result to plaintiff. The real property is unique.

43.    PLANITFFS requests judgment against defendants, and each of them, including an order setting aside the sale of the property and declaring that sale to be null and void and of no force and effect; and an order that defendant GENOVA CAPITAL INC. and DOES 5-20 deliver the

trustee's deed to the court, and cancellation of that deed; and for an award of all costs and attorney's fees incurred in this action, according to proof.

**FOURTH CAUSE OF ACTION**

**QUIET TITLE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE**

44. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 43, as though fully set forth, including all Exhibits.

45. Plaintiffs are the legal and equitable owners of the Subject Property which has the following legal description: EXHIBT A, attached hereto.

46. Plaintiffs seek to quiet title against the claims of DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 20 (collectively referred to herein as the "Title Defendants") as the Title Defendants hold themselves out as entitled to fee simple ownership of the Subject Property by and through their purchase of the property at the trustee's sale held on or about 8-14-2019. In fact, the Title Defendants had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including no right to foreclosure, no right to offer the Subject Property for sale at a trustee's sale, demanding possession or filing cases for unlawful detainer. Nevertheless, the Title Defendants proceeded with a non-judicial foreclosure sale, through

CALIFORNIA TD SPECIALISTS as trustee, illegally and with unclean hands. Plaintiffs are willing to tender the amount received subject to equitable adjustment for the damage caused to the Plaintiffs by the Title Defendants' activities.

47.   The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

48.   As the Notice of Default must be signed by the trustee, either original or substituted, and the beneficiary or trustee, either original or substituted, must comply with California Civil Code Section 2923.5, the trustee's sale is void because CALIFORNIA TD SPECIALISTS was not the trustee at the time that it signed the Notice of Default on 4-11-2019. The NOTICE OF DEFAULT was recorded 4-15-2019, and allegedly complied with Section 2923.5. Thus, the trustee and beneficiary failed to follow the statutory rules for a valid foreclosure under the California Civil Code and it is, therefore, void.

49.   A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered.**" (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under

the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

50. Plaintiffs seek to quiet title as of 8-13-2019. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Title Defendants and each of them be declared to have no interest estate, right, title or interest in the subject property and that the Title Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

**FIFTH CAUSE OF ACTION**

**SLANDER OF TITLE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE**

51. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 50, as though fully set forth, including all Exhibits.

52. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not

occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

53. Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

54. Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

55. Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

56. Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property.

57. By doing the acts described above, the Foreclosing Defendants have slandered Plaintiffs' title to the Subject Property. Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged. The conduct was despicable and designed to intentionally cause severe emotional distress to Plaintiffs.

58. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

59.  A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A.  The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B.  Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C.  The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be

recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest

under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of

trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the

beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under

the deed of trust may record a notice of default or otherwise commence the foreclosure process

except when acting within the scope of authority designated by the holder of the beneficial interest.

[Civil Code, Section 2924 (a)(6)].

60.    Defendants knew or should have known that their conduct would cause Plaintiffs

severe emotional distress and mental suffering. This includes but is not limited to Defendants

causing a continuing nuisance, loss of their home through an illegal foreclosure sale, loss of market

value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and

suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment,

anger, disappointment and other general damages all to Plaintiff's general damages, according to

proof. Said conduct is outrageous and would cause an average member of the community to

immediately react in outrage.

61.    As a direct and proximate result of the intentional and reckless conduct of

Defendants, Plaintiffs quiet use and enjoyment of their property and living conditions were

significantly interfered with and interrupted. As a further direct and legal result of the acts and

omissions alleged in this Complaint, Plaintiffs have suffered and continue to suffer severe emotional

distress and mental suffering, to Plaintiff's general damage within the unlimited jurisdiction of the

Superior Court, according to proof.

62.    Plaintiff seeks general damages for severe emotional distress, mental anguish and

suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior

Court, according to proof.

## SIXTH CAUSE OF ACTION

**WRONGFUL FORECLOSURE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE.**

63.    Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 62, as though fully set forth, including all Exhibits.

64.    Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. A separate Deed of trust for the $125,000.00 note was contemplated, was not attached nor recorded, and was not signed by Plaintiff Colette Pelissier.

65.    The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated.  Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

66.    Defendants wrongfully and without privilege, caused a Notice of Default to be

recorded against the Subject Property.

67. Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

68. Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

69. Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property.

70. Plaintiffs further allege on information and belief that none of the Foreclosing Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

71. If the Plaintiff Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Defendants agent on site, there was no sale. An effective redemption occurred.

72. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

73. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was

recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process

except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

74. The Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to accept the full tender by Plaintiffs.

75. Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged. The conduct was despicable and designed to intentionally cause severe emotional distress to Plaintiffs.

76. Defendants knew or should have known that their conduct would cause Plaintiffs severe emotional distress and mental suffering. This includes but is not limited to Defendants causing a continuing nuisance, loss of their home through an illegal foreclosure sale, loss of market value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Plaintiff's general damages, according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

77. As a direct and proximate result of the conduct of Defendants, Plaintiffs quiet use and enjoyment of their property and living conditions have been significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Plaintiffs have suffered and continue to suffer severe emotional distress and mental suffering, to Plaintiff's general damage in an amount within the unlimited jurisdiction of the Superior Court, according to proof.

78. Plaintiff seeks general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior

Court, according to proof.

SEVENTH CAUSE OF ACTION

**BREACH OF CONTRACT AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE**

79. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 78, as though fully set forth, including all Exhibits. This cause of action is by Plaintiff Brigham Field.

80. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. A separate Deed of trust for the $125,000.00 note was contemplated, was not attached nor recorded and not signed by Plaintiff Colette Pelissier. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

81. Notice of breach and rights pursuant to paragraph 5 of the Note was not given, notice of default was not served under paragraph 10, notice of default and trustee's sale were not served as required by paragraph 40 of the Deed of Trust, if said Deed of Trust is applicable. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, Plaintiff Colette Pelissier did not sign a separate deed of trust for this note, no breach of the obligation for which the deed of trust is security has occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use

and enjoyment. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

82. Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

83. Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

84. Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

85.. Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

86. Plaintiffs further allege on information and belief that the Defendants do not produce the original note to prove that they are in fact the party authorized to conduct the foreclosure.

87. The Foreclosing Defendants breached the note and deed of trust by failing to apply the payments made by Plaintiffs through the date the Notice of Default was recorded, April 15, 2019, the result of which led to the Foreclosing Defendants improperly foreclosing on the Subject Property.

88. Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged.

89. The terms of the note required payments made by Plaintiffs to be applied properly to the note. A minimum of $128,723.59 was taken and repaid to Genova Capital prior to April 15, 2019.

90. The Defendants breached the note and deed of trust by failing to apply the payments made before April 15, 2019, and therefore Defendants intentional and improperly noticed the incorrect amount due, if any, in the Notice of Default, Demand for Payoff, and eventually wrongfully foreclosing on the Subject Property.

91. As a proximate result of Defendants' breaches, Plaintiffs have suffered special and compensatory damages in an amount no less than the loss of all equity in the property, loss of use, loss of profits, and additional damages within the unlimited jurisdiction of the Superior Court, according to proof.

**EIGHTH CAUSE OF ACTION**

**UNJUST ENRICHMENT AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE**

92. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 91, as though fully set forth, including all Exhibits.

93. By their wrongful acts and omissions, the Defendants have been extremely unjustly enriched at the expense of Plaintiffs, and Plaintiffs have been unjustly deprived of ownership of their home and equity loss of over $8,000,000.00. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to April 15, 2019. This was before the Notice of Default was recorded.

94. By reason of the foregoing, Plaintiffs seek restitution from the Defendants of all equity lost, and an order of this Court requiring Defendants to disgorge all profits, benefits, and other compensation obtained by the Defendants from their wrongful conduct, within the unlimited jurisdiction of the Superior Court, according to proof.

## NINTH CAUSE OF ACTION

**RESCISSION AND RESTITUTION AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE.**

95. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 94, as though fully set forth, including all Exhibits.

96. This shall serve as NOTICE OF RESCISSION and request that the alleged Buyer and new Trustor return the purchase price, cancel and rescind the Trustees Deed, and return all benefits conference conferred upon the Defendant as result of the Trustee Sale and Deed, transaction, consequential damages, costs and all additional relief available, as provided by law.

97. This Request for Restitution is made pursuant to Civil Code, Section 1689, 1691 and 1692, based on the following grounds:

1. The consent was given by mistake caused by the non-disclosure of material defects by the Defendants, who had knowledge of the defects;
2. The consideration bargain for has failed in whole or in part, through the fault of the Defendants;
3. The consent was induced by fraud and deceit exercised by and with the connivance of the Defendants, their agents and the non-disclosure of material defects by the Defendants;
4. The contract was unlawful because of the non-disclosures, the illegal foreclosure sale;
5. Public interest will be prejudiced by permitting the sale and Trustees Deed to stand;

6. Other acts or omissions engaged in by the Defendants, according to proof.

98. Pursuant to Civil Code, Section 1691, the PLAINTIFFS are requesting the return of title to their property, with no lien and rescission of the Trustees Deed, and requires the Defendants to offer to restore everything of value which BUYER received from Defendants, upon the condition that the BUYER restore all consideration to the Plaintiffs. This shall also serve as additional Notice of Rescission pursuant to Civil Code, Section 1691 and the terms are incorporated herein by reference.

99. Pursuant to Civil Code, Section 1692, the Plaintiffs will also seek relief in this action to recover money paid to the Defendants, including restitution of benefits conferred upon the Defendants and all other parties, as result of the transaction, trustee's sale, consequential damages, costs and all additional relief available, as provided by law.

100. This Notice requires the return of all consideration, and written confirmation of mutual rescission of the Trustees Sale and Deed, within 20 days from the date of this Notice.

**TENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, AND DOES 1 THROUGH 20, INCLUSIVE**

101. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 100, as though fully set forth, including all Exhibits.

102. Said acts and omissions of Defendants and each of them were intentional, illegal, void, and were intended to cause severe emotional distress and mental suffering.

103. Defendants knew or should have known that their conduct would cause Plaintiffs severe emotional distress and mental suffering. This includes but is not limited to Defendants

causing a continuing nuisance, loss of quiet use and enjoyment of their property, loss of equity, loss of market value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Plaintiff's general damages in the sum according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

104. As a direct and proximate result of the intentional and reckless conduct of Defendants, Plaintiffs, had the quiet use and enjoyment of their property and living conditions significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Plaintiffs have suffered and continues to suffer severe emotional distress and mental suffering, to Plaintiff's general damage in an amount to be proven at trial, according to proof.

105. Plaintiffs seek general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior Court, according to proof.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, within the unlimited jurisdiction of the Superior Court, as follows:

1. For a Declaration of the rights, duties and obligations of the parties, TRO and a permanent injunction ordering Defendants to rescind the Trustee Sale and Deed;

2. For an Order and Judgment setting aside the Trustees Deed;

3. For an Order and Judgment Quieting Title in favor of Plaintiffs and against all Defendants;

4. For Damages for loss of market value and equity of $8,000,000.00, according to proof;

5. For Damages for Slander of Title, according to proof;

6. For Damages for Unjust Enrichment;

7. For Rescission & Restitution;

8. For General Damages for severe mental anguish, distress and suffering, including any resulting physical manifestations of injuries, according to proof;

9. For attorney's fees and costs of suit incurred;

10. For such other and further relief as the Court may deem just and proper.

DATED: 8-22-2019

STOCKER & LANCASTER LLP

By: ______________________
Michael J. Lancaster
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand this case be tried by a Jury.

DATED: 8-22-2019

STOCKER & LANCASTER LLP

By: ______________________
Michael J. Lancaster
Attorneys for Plaintiffs

**VERIFICATION**

STATE OF CALIFORNIA )
ss. )
COUNTY OF VENTURA )

We, the undersigned, declare:

1. We are the Plaintiffs, named Party's.

2. We each have read the foregoing **UNLIMITED CIVIL COMPLAINT** and know its contents.

2. The facts stated in the foregoing document are true of our own knowledge except as to those matters which are stated on information and belief, or obtained from others, and as to those matters, we believe them to be true.

We each declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 22th day of August 2019 in Malibu, California.

BRIGHAM FIELD

COLETTE PELISSIER

# LEGAL DESCRIPTION
# EXHIBIT - A

# EXHIBIT "A"

All that certain real property situated in the County of Ventura, State of California, described as follows:

Parcel 1:

Lot 6 of Tract No. 4483, in the County of Ventura, State of California, as per map recorded in Book 146, Pages 19 through 22 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT one-eighth of minerals, oil, petroleum, asphaltum, gas, coal and other hydrocarbon substances, as reserved by Marblehead Land Company, in deed recorded November 17, 1940, in Book 628, Page 87 of Official Records.

Parcel 2:

Non-exclusive easements appurtenant to Parcel 1, above, on and over the "Common Area", as defined in the Second Amended and Completely Restated Declaration of Covenants, Conditions and Restrictions and Easements for MariSol, recorded on February 14, 2011 as Instrument No. 2011-24632 of Official Records, for access, use, occupancy, enjoyment, ingress and egress of the amenities located thereon.

Assessor's Parcel No.:   700-0-260-065

VENTURA SUPERIOR COURT FILED

AUG 23 2019

MICHAEL D. PLANET
Executive Officer and Clerk
BY:________________, Deputy
GERALYN N. FENWICK

Michael J. Lancaster, Esq. (SBN 92788)
**STOCKER & LANCASTER LLP**
19200 Von Karman Ave, Suite 600
Irvine, CA 92612
Telephone: (949) 622-5575
Lancasterlaw2020@yahoo.com

Attorneys for Plaintiffs,
BRIGHAM FIELD and COLETTE PELISSIER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA, HALL OF JUSTICE**

BRIGHAM FIELD, COLETTE PELISSIER,

Plaintiffs,

v.

GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO AND DOES 1 THROUGH 20, INCLUSIVE,

Defendants.

**Case No.** 56-2019-00532393-CU-OR-VTA

**UNLIMITED CIVIL COMPLAINT FOR:**

1. **INJUNCTIVE & DECLARATORY RELIEF;**
2. **ORDER AND JUDGMENT SETTING ASIDE SALE;**
3. **CANCELLATION OF TRUSTEES DEED;**
4. **QUIET TITLE;**
5. **SLANDER OF TITLE;**
6. **WRONGFUL FORECLOSURE;**
7. **BREACH OF CONTRACT;**
8. **UNJUST ENRICHMENT;**
9. **RESCISSION & RESTITUTION;**
10. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**EXHIBITS 1-10**

**COMES NOW** Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, who complains of causes of action against Defendants and each of them as follows:

## FIRST CAUSE OF ACTION

**FOR INJUNCTIVE & DECLARATORY RELIEF AGAINST DEFENDANTS, GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE.**

1. Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, are and at all times mentioned in this complaint were residents of VENTURA COUNTY, California, and are the legal owners of the residential real property located at 11802 Ellice Street, Malibu, CA 90265. Attached as **Exhibit A** is a true and correct copy of the **Legal Description**. Plaintiffs purchased the residential property in June of 2013. PLAINTIFFS own the property as "Brigham Field and Colette Pelissier, husband and wife, as joint tenants." It is Plaintiffs opinion, as owners, that the property has a current fair market value of $20,000,000.00.

2. Defendant GENOVA CAPITAL INC., a California corporation, is now and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of California, with its principal place of business at 555 Corporate Drive, Suite 120, Ladera Ranch, California 92694, Orange County, California. GENOVA CAPITAL INC. is a lender and beneficiary under a deed of trust used to initiate and complete the foreclosure on Plaintiffs residential property.

3. Defendant CALIFORNIA TD SPECIALISTS, a California corporation, a California corporation, is now and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of California, with its principal place of business at 8190 and 8180 East Kaiser Blvd, Anaheim Hills, California 92808, Orange County, California. CALIFORNIA TD SPECIALISTS was the **Trustee** appointed by GENOVA CAPITAL INC. to initiate and complete the foreclosure on Plaintiffs residential property. **Attached as Exhibit 1** is a true and correct copy of the recorded **Substitution of Trustee** recorded 4-15-2019.

4. Defendants contend that on or about November 28, 2016, a Promissory Note Secured by Deed of Trust for $2.5 million was executed by Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER in favor of Genova Capital and that said note was secured by a deed of trust on the residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property") This $2.5 million note was **not** the note and nor amount used for the foreclosure. **Attached as Exhibit 2** is a true and correct copy of Deed of Trust used for foreclosure, recorded 3-25-2019, which does not identify the $125,000.00 note. The last page includes a legal description that was pulled and attached in 2019 by Defendants. It was not attached to the original deed.

5. Defendants next contend that on or about April 11, 2017, a Straight Note for $125,000 was executed by Pelissier and Field, in favor of Genova Capital, and that said note was secured by a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice (the "Deed"), that was just recorded in April of 2019 on the Property. **This is false.** Both Plaintiffs, husband and wife, did not sign said note. This note was not intended as a Deed of Trust on Plaintiffs residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property"). That would require both spouses to be named and sign the note. That never occurred. **Attached as Exhibit 3** is a true and correct copy of is a copy of the Straight Note signed only by Brigham Field, **not signed by Genova, not signed by COLETTE PELISSIER, not in the name of COLETTE PELISSIER, with no Deed of Trust attached for the $125,000.00.** Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

6. Without serving Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, Notice of breach of the alleged **promissory note, according to its terms,** Defendants and each of them, initiated foreclosure proceedings on the Deed, and recorded a **Notice of Default on April 16, 2019,** claiming the $125,000.00 note, and later set a **Trustee's Sale of the Property on August 14, 2019** at 11 a.m., at the Ventura County Superior Courthouse, alleging some breach of the obligation secured by the deed of trust or note, with no breach and demand before the Notice of Default was recorded, and stating Defendants have elected to sell the property to satisfy that obligation.

**Attached as Exhibit 4** is a true and correct copy of NOTICE OF DEFAULT. **Attached as Exhibit 5** is a true and correct copy of **Notice of Trustee's Sale.** Both were obtained through Lawyers Title. It was not personally served on Plaintiffs. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

**PLAINTIFFS MADE FULL TENDERS BEFORE THE TRUSTEE'S SALE**

7. The day before the Trustees Sale date, August 13, 2019, PLAINTIFFS made a request for the full amount to cure and redeem. A **Demand for Payoff** was served by Defendants in the total sum of $160,122.58 as of 8/13/19 plus 34.25 daily interest. **Attached as Exhibit 6** is a true and correct copy of the **Demand for Payoff.** Shortly after receipt, **on August 13, 2019,** PLAINTIFFS made a full tender of the amount claimed by **offering a wire transfer of $161,000.00. Attached as Exhibit 7** is a true and correct copy of Plaintiff Brigham Field's **text offer** to Josh Hunter, CEO, of Genova Capital, **at 3:41 p.m. on 8-13-2019.** The next day, 8-14-2019, a **CASHIERS CHECK** drawn on Wells Fargo Bank was offered to Defendants in the amount of **$161,000.00. Attached as Exhibit 8,** is a true and correct copy of the CASHIERS CHECK. Both tenders were not accepted by Defendants.

8. Defendants GENOVA CAPITAL INC., and its Trustee CALIFORNIA TD SPECIALISTS, **refused both the tenders**. Instead, **GENOVA CAPITAL INC., required** the full payment for a **"postponement"** of the Trustees Sale, **and required that both Plaintiffs sign a new agreement giving GENOVA CAPITAL INC. fifty percent (50%) of their business, and also correct and ratify the defective $125,000.00 note so that is was security for the Deed of Trust used to foreclose and added that both Plaintiffs were also obligated.** Attached as **Exhibit 9** is a true and correct copy of the texts Plaintiffs received from, Genova Capital's proposed written agreement and email from their attorney. Outrageous! **An unfair, absolute conditional refusal of both full tenders.** There was an effective redemption by Plaintiffs tenders and the power of sale was terminated. Defendants had no legal right to foreclose. Defendants had no legal right to refuse the good faith tenders.

9. Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, personally appeared for the Trustees Sale at the Trustee Sale at 10:45 a.m. There were no bids except Plaintiffs offer of $161,000.00, which was not accepted. No one from Genova Capital, Inc., appeared. No one except Plaintiffs bid for the property. Defendants only had an auctioneer present and he left without accepting Plaintiffs CASHIERS CHECK drawn on Wells Fargo Bank on August 14, 2019 for $161,000.00.

10. Defendants refused to accept full tenders on August 13 and August 14, 2019.

11. If the Plaintiff Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Defendants agent on site, there was no sale. An effective redemption occurred.

12. A tender by the trustor of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

13. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to April 15, 2019. This was repaid before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to

Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered.**" (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

14. Notwithstanding the foregoing, on August 20, 2019, Defendant GENOVA CAPITAL INC. through its legal counsel, is now attempting to serve **Notice for Possession,** unlawful detainer proceedings claiming that there was a Trustee Sale on 8-14-2019. Either GENOVA CAPITAL INC.,

a California Corporation or its agent CALIFORNIA TD SPECIALISTS, a California Corporation, or both, have misled, deceived and defrauded Plaintiffs. Attached as **Exhibit 10** is a true and correct copy of the **Notice for Possession** left outside the property. It was also not served. It states there was a sale but does not identify the alleged new owner.

15. Defendants DOES 1 through 20, inclusive, have, or claim to have, an interest in the property subject to the deed of trust herein described, which interest is senior to the lien created by the GENOVA CAPITAL INC. deed of trust, and these lien holders were not given notice of the Default or Trustee's Sale. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 20, inclusive, being unknown, plaintiffs sue these defendants by these fictitious names and will amend this complaint to show their true names and capacities when they are ascertained.

16. As set forth herein, the default was improperly declared, the proceedings are void and invalid. The alleged breach of the obligation for which the deed of trust is security has not occurred, proper notice of breach under the Note and Deed of Trust was not given, and Defendants have refused plaintiff's tender of all principal and interest owing on the alleged obligation, subject to a full reservation of Plaintiffs rights. Plaintiffs contend the evidence shows there was an effective redemption and the power of sale was terminated, as a matter of law.

17. An actual controversy has arisen and now exists between plaintiffs and defendants GENOVA CAPITAL INC., a California Corporation or CALIFORNIA TD SPECIALISTS, a California Corporation and the unidentified DOE persons or company claiming to have purchased the property at foreclosure, regarding their respective rights and duties. Defendants GENOVA CAPITAL INC., a California Corporation or CALIFORNIA TD SPECIALISTS, a California Corporation contend there was a breach of the obligation secured by the deed of trust and Note, and that plaintiffs failed to make the payments of principal and interest due on and after some unknown date. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. This alone makes the entire foreclosure process

void. Plaintiffs contend there was no notice of breach given according to the terms of a note and deed of trust, the Notices recorded were defective, the amounts were materially inaccurate, not properly served, the alleged default of the obligation for which the deed of trust is security has not occurred, Plaintiffs have in fact tendered the full principal and interest ALLEGED to be owing on the obligation, which tender defendants refused to accept by wire transfer or cashier's check. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption and the power of sale was terminated. A judicial declaration is necessary and appropriate at this time under all the circumstances to unwind and rescind the lien improperly recorded by Defendants, and so that plaintiffs and defendants may determine their rights and duties under the alleged note and deed of trust.

18. Plaintiffs seek a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining all defendants, defendant's agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, encumbering the property, creating more liens on the property, either under the power of sale in the deed of trust or by foreclosure action or in any other manner; a declaration by the court that sale of the property to enforce the deed of trust is improper and void. there was an effective redemption, the power of sale was terminated, and order that all actions and recordings by the Defendants are rescinded and set aside, for costs, attorneys fees and other relief which is just and proper.

**<u>SECOND CAUSE OF ACTION</u>**

**FOR AN ORDER AND JUDGMENT SETTING ASIDE SALE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE.**

19. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 18, as though fully set forth, including all Exhibits.

20. According to Defendant, GENOVA CAPITAL INC., after 8-14-2019, said Defendant now reports the property was sold at the August 14, 2019 Trustees Sale. This cause of action applies to said purchaser and all named Defendants herein.

21. Defendants contend that on or about November 28, 2016, a Promissory Note Secured by Deed of Trust for $2.5 million was executed by Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER in favor of Genova Capital and that said note was secured by a deed of trust on the residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property") This $2.5 million note was not the note and nor amount used for the foreclosure. Attached as Exhibit 2 is a true and correct copy of Deed of Trust used for foreclosure, recorded 3-25-2019, which does not identify the $125,000.00 note. The last page includes a legal description that was pulled and attached in 2019 by Defendants. It was not attached to the original deed.

22. Defendants next contend that on or about April 11, 2017, a Straight Note for $125,000 was executed by Pelissier and Field, in favor of Genova Capital, and that said note was secured by a Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement; Request for Notice (the "Deed"), that was just recorded in April of 2019 on the Property. This is false. Both Plaintiffs, husband and wife, did not sign said note. This note was not intended as a Deed of Trust on Plaintiffs residential property located at 11802 Ellice Street, Malibu, California, 90265 (the "Property"). That would require both spouses to be named and sign the note. That never occurred. Attached as Exhibit 3 is a true and correct copy of is a copy of the Straight Note signed only by Brigham Field, not signed by Genova, not signed by COLETTE PELISSIER, not in the name of COLETTE PELISSIER, with no Deed of Trust attached for the $125,000.00. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

23. Without serving Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, Notice of breach of the alleged promissory note, according to its terms, Defendants and each of them, initiated

foreclosure proceedings on the Deed, and recorded a Notice of Default on April 16, 2019, claiming the $125,000.00 note, and later set a Trustee's Sale of the Property on August 14, 2019 at 11 a.m., at the Ventura County Superior Courthouse, alleging some breach of the obligation secured by the deed of trust or note, with no breach and demand before the Notice of Default was recorded, and stating Defendants have elected to sell the property to satisfy that obligation. Attached as Exhibit 4 is a true and correct copy of NOTICE OF DEFAULT. Attached as Exhibit 5 is a true and correct copy of Notice of Trustee's Sale. Both were obtained through Lawyers Title. They were not personally served on Plaintiffs. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note.

**PLAINTIFFS MADE FULL TENDERS BEFORE THE TRUSTEE'S SALE**

24. The day before the Trustees Sale date, August 13, 2019, PLAINTIFFS made a request for the full amount to cure and redeem. A Demand for Payoff was served by Defendants in the total sum of $160,122.58 as of 8/13/19 plus 34.25 daily interest. Attached as Exhibit 6 is a true and correct copy of the Demand for Payoff. Shortly after receipt, on August 13, 2019, PLAINTIFFS made a full tender of the amount claimed by offering a wire transfer of $161,000.00. Attached as Exhibit 7 is a true and correct copy of Plaintiff Brigham Field's text offer to Josh Hunter, CEO, of Genova Capital, at 3:41 p.m. on 8-13-2019. The next day, 8-14-2019, a CASHIERS CHECK drawn on Wells Fargo Bank was offered to Defendants $161,000.00. Attached as Exhibit 8, is a true and correct copy of the CASHIERS CHECK. Both tenders were not accepted by Defendants and no objections to the tenders were served.

25. Defendants GENOVA CAPITAL INC., and its Trustee CALIFORNIA TD SPECIALISTS, refused both the tenders. Instead, GENOVA CAPITAL INC., required the full payment for a "postponement" of the Trustees Sale, and required that both Plaintiffs sign a new agreement giving GENOVA CAPITAL INC. fifty percent (50%) of their business, and also correct and ratify the defective $125,000.00 note so that is was security for the Deed of Trust used to

foreclose and added that both Plaintiffs were also obligated. Attached as Exhibit 9 is a true and correct copy of the texts Plaintiffs received from, Genova Capital's proposed written agreement and email from their attorney. Outrageous! An unfair, absolute conditional refusal of both full tenders. There was an effective redemption by Plaintiffs tenders and the power of sale was terminated. Defendants had no legal right to foreclose. Defendants had no legal right to refuse the good faith tenders.

26. Plaintiffs, BRIGHAM FIELD and COLETTE PELISSIER, personally appeared for the Trustees Sale at the Trustee Sale at 10:45 a.m. There were no bids except Plaintiffs offer of $161,000.00, which was not accepted. No one from Genova Capital, Inc., appeared. No one except Plaintiffs bid for the property. Defendants only had an auctioneer present and he left without accepting Plaintiffs CASHIERS CHECK drawn on Wells Fargo Bank on August 14, 2019 for $161,000.00.

27. Defendants refused to accept full tenders on August 13 and August 14, 2019.

28. If the Plaintiff Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Defendants agent on site, there was no sale. An effective redemption occurred.

29. A tender by the trustor of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

30.     A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A.     The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B.     Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C.     The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be

recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

31. Notwithstanding the foregoing, on August 20, 2019, Defendant GENOVA CAPITAL INC. through its legal counsel, is now attempting to serve Notice for Possession, unlawful detainer proceedings claiming that there was a Trustee Sale on 8-14-2019. Either GENOVA CAPITAL INC., a California Corporation or its agent CALIFORNIA TD SPECIALISTS, a California Corporation, or both, have misled, deceived and defrauded Plaintiffs. Attached as Exhibit 10 is a true and correct copy of the Notice for Possession left outside the property. It was also not served. It states there was a sale but does not identify the alleged new owner.

32. Defendants DOES 1 through 20, inclusive, have, or claim to have, an interest in the property subject to the deed of trust herein described, which interest is senior to the lien created by the GENOVA CAPITAL INC. deed of trust, and these lien holders were not given notice of the Default or Trustee's Sale. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 20, inclusive, being unknown, plaintiffs sue these defendants by these fictitious names and will amend this complaint to show their true names and capacities when they are ascertained.

33. As set forth herein, the default was improperly declared, the proceedings are void and invalid. The alleged breach of the obligation for which the deed of trust is security has not occurred, proper notice of breach under the Note and Deed of Trust was not given, and Defendants have

refused plaintiff's tender of all principal and interest owing on the alleged obligation, subject to a full reservation of Plaintiffs rights. Plaintiffs contend the evidence shows there was an effective redemption and the power of sale was terminated, as a matter of law.

34. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. This alone makes the entire foreclosure process void. Plaintiffs contend there was no notice of breach given according to the terms of a note and deed of trust, the Notices recorded were defective, the amounts were materially inaccurate, not properly served, the alleged default of the obligation for which the deed of trust is security has not occurred, Plaintiffs have in fact tendered the full principal and interest ALLEGED to be owing on the obligation, which tender defendants refused to accept by wire transfer or cashier's check. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption and the power of sale was terminated. A judicial declaration is necessary and appropriate at this time under all the circumstances to set aside any sale, and rescind the lien improperly recorded by Defendants.

35. Plaintiffs seek a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining all defendants, defendant's agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold the property, encumbering the property, creating more liens on the property, either under the power of sale in the deed of trust or by foreclosure action or in any other manner; a declaration by the court that sale of the property to enforce the deed of trust is improper and void. there was an effective redemption, the power of sale was terminated, and order that all actions and recordings by the Defendants are rescinded and set aside, for costs, attorneys fees and other relief which is just and proper.

36. As set forth herein, the sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

37. Plaintiff has tendered and offers to Defendant GENOVA CAPITAL INC., all amounts due and owing so that the claimed default may be cured and plaintiffs may be reinstated to their former rights and privileges, in exchange for a deed of reconveyance of said Deed of Trust and cancellation of the Note. This offer is subject to a full reservation of all Plaintiffs rights.

**THIRD CAUSE OF ACTION**

**FOR AN ORDER AND JUDGMENT CANCELLING THE TRUSTEE'S DEED AND ALL OTHER DEEDS RECORDED ON AND AFTER 8-14-2019, AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE**

38. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 37, as though fully set forth, including all Exhibits.

39. Defendant, GENOVA CAPITAL INC. and DOES 5-20 claims an estate or interest in the property based on a trustee's deed.

40. The claims of Defendant, GENOVA CAPITAL INC. and DOES 5-20 to the property are without any legal right or merit. Although the trustee's deed appears valid on its face, it is void, invalid, and of no force and effect, for the reasons set forth in the FIRST & SECOND CAUSES OF ACTION. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

41. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

42. The estate or interest claimed in the property by Defendant, GENOVA CAPITAL INC. and DOES 5-20 under the trustee's deed is a cloud on the Plaintiff's title to the property in that it tends to depreciate its market value, restricts plaintiff's use and enjoyment of the property, and hinders plaintiff's right to unrestricted alienation of the property. If the trustee's deed is not delivered and canceled, serious irreparable injury will result to plaintiff. The real property is unique.

43. PLANITFFS requests judgment against defendants, and each of them, including an order setting aside the sale of the property and declaring that sale to be null and void and of no force and effect; and an order that defendant GENOVA CAPITAL INC. and DOES 5-20 deliver the

trustee's deed to the court, and cancellation of that deed; and for an award of all costs and attorney's fees incurred in this action, according to proof.

## FOURTH CAUSE OF ACTION

**QUIET TITLE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE**

44. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 43, as though fully set forth, including all Exhibits.

45. Plaintiffs are the legal and equitable owners of the Subject Property which has the following legal description: EXHIBT A, attached hereto.

46. Plaintiffs seek to quiet title against the claims of DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 20 (collectively referred to herein as the "Title Defendants") as the Title Defendants hold themselves out as entitled to fee simple ownership of the Subject Property by and through their purchase of the property at the trustee's sale held on or about 8-14-2019. In fact, the Title Defendants had no right to title or interest in the Subject Property and no right to entertain any rights of ownership including no right to foreclosure, no right to offer the Subject Property for sale at a trustee's sale, demanding possession or filing cases for unlawful detainer. Nevertheless, the Title Defendants proceeded with a non-judicial foreclosure sale, through

CALIFORNIA TD SPECIALISTS as trustee, illegally and with unclean hands. Plaintiffs are willing to tender the amount received subject to equitable adjustment for the damage caused to the Plaintiffs by the Title Defendants' activities.

47. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

48. As the Notice of Default must be signed by the trustee, either original or substituted, and the beneficiary or trustee, either original or substituted, must comply with California Civil Code Section 2923.5, the trustee's sale is void because CALIFORNIA TD SPECIALISTS was not the trustee at the time that it signed the Notice of Default on 4-11-2019. The NOTICE OF DEFAULT was recorded 4-15-2019, and allegedly complied with Section 2923.5. Thus, the trustee and beneficiary failed to follow the statutory rules for a valid foreclosure under the California Civil Code and it is, therefore, void.

49. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered.**" (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under

the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

50. Plaintiffs seek to quiet title as of 8-13-2019. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Title Defendants and each of them be declared to have no interest estate, right, title or interest in the subject property and that the Title Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

**FIFTH CAUSE OF ACTION**

**SLANDER OF TITLE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE**

51. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 50, as though fully set forth, including all Exhibits.

52. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not

occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

53. Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property.

54. Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

55. Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

56. Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property.

57. By doing the acts described above, the Foreclosing Defendants have slandered Plaintiffs' title to the Subject Property. Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged. The conduct was despicable and designed to intentionally cause severe emotional distress to Plaintiffs.

58. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

59. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be

recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

60. Defendants knew or should have known that their conduct would cause Plaintiffs severe emotional distress and mental suffering. This includes but is not limited to Defendants causing a continuing nuisance, loss of their home through an illegal foreclosure sale, loss of market value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Plaintiff's general damages, according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

61. As a direct and proximate result of the intentional and reckless conduct of Defendants, Plaintiffs quiet use and enjoyment of their property and living conditions were significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Plaintiffs have suffered and continue to suffer severe emotional distress and mental suffering, to Plaintiff's general damage within the unlimited jurisdiction of the Superior Court, according to proof.

62. Plaintiff seeks general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior Court, according to proof.

**SIXTH CAUSE OF ACTION**

**WRONGFUL FORECLOSURE AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE.**

63. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 62, as though fully set forth, including all Exhibits.

64. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. A separate Deed of trust for the $125,000.00 note was contemplated, was not attached nor recorded, and was not signed by Plaintiff Colette Pelissier.

65. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, a breach of the obligation for which the deed of trust is security has not occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use and enjoyment.

66. Defendants wrongfully and without privilege, caused a Notice of Default to be

recorded against the Subject Property.

67. Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property.

68. Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

69. Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property.

70. Plaintiffs further allege on information and belief that none of the Foreclosing Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

71. If the Plaintiff Trustors offer to pay the amount of the debt being foreclosed before the foreclosure sale, there is an effective redemption and the power of sale is terminated. [Lichty v. Whitney, 80 Cal. App. 2d 696, 700–703 (1947); Civil Code, Sections 1485 and 1504.]. Plaintiffs did, in fact, offer to pay the full amount of the debt being foreclosed before the foreclosure sale, and therefore there was an effective redemption, and the power of sale was terminated. According to Defendants agent on site, there was no sale. An effective redemption occurred.

72. There was a tender by the owners of the full amount due on a loan secured by a deed of trust extinguishes the lien on the property and, thereafter, the beneficiary cannot proceed to foreclose. A trustor who has made adequate tender is released from any subsequent liability for interest, costs, and attorney's fees incurred thereafter in connection with the foreclosure proceedings, and is entitled to a reconveyance of the lien securing the debt.

73. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to January 1, 2019. This was long before the Notice of Default was

recorded. Therefore, the amount stated in the Notice of Default was grossly inaccurate, void and procedurally defective.

A. The notice must contain a statement of the total amount of the unpaid balance of the secured obligation and a reasonable estimate of the costs, expenses, and advances as of the initial publication of the notice of sale. (C.C. 2924f(b)(7).) The Notice did not comply. Plaintiff, COLETTE PELISSIER is not a borrower on the Straight Note and therefore owed nothing to Defendants. Section 1102, subdivision (a) prohibits one spouse from making a transfer or **encumbrance** of community real property without the written consent of the other spouse. It provides in pertinent part that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, **or encumbered**." (§ 1102 (a).) This alone makes the entire foreclosure process void and Plaintiff COLETTE PELISSIER hereby elects to declare it void.

B. Defendants Failed to identify the **applicable** mortgage or **deed of trust** and the correct names of the trustor or trustors obligated by the Note and applicable deed of trust. [Civil Code, Section 2924 (a)(1)(A)]. Failed to include a statement setting forth a reasonably accurate statement of the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default. [Civil Code, Section 2924 (a)(1)(C)]. This includes failure to acknowledge credits for payments received.

C. The deed of trust used by Defendants did not legally secure the $125,000.00 Note used to foreclose on Plaintiffs property. No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process

except when acting within the scope of authority designated by the holder of the beneficial interest. [Civil Code, Section 2924 (a)(6)].

74. The Foreclosing Defendants engaged in a fraudulent foreclosure of the Subject Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to accept the full tender by Plaintiffs.

75. Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged. The conduct was despicable and designed to intentionally cause severe emotional distress to Plaintiffs.

76. Defendants knew or should have known that their conduct would cause Plaintiffs severe emotional distress and mental suffering. This includes but is not limited to Defendants causing a continuing nuisance, loss of their home through an illegal foreclosure sale, loss of market value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Plaintiff's general damages, according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

77. As a direct and proximate result of the conduct of Defendants, Plaintiffs quiet use and enjoyment of their property and living conditions have been significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Plaintiffs have suffered and continue to suffer severe emotional distress and mental suffering, to Plaintiff's general damage in an amount within the unlimited jurisdiction of the Superior Court, according to proof.

78. Plaintiff seeks general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior

Court, according to proof.

**SEVENTH CAUSE OF ACTION**

**BREACH OF CONTRACT AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE**

79. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 78, as though fully set forth, including all Exhibits. This cause of action is by Plaintiff Brigham Field.

80. Pursuant to, among others, California Civil Code section 2924(a)(1)(C), only the beneficiary of a Deed of Trust or the agent of a beneficiary may cause to be recorded against real property either a Notice of Default or a Notice of Trustee's Sale. The subject deed of trust did not apply to the NOTE foreclosed upon. A separate Deed of trust for the $125,000.00 note was contemplated, was not attached nor recorded and not signed by Plaintiff Colette Pelissier. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

81. Notice of breach and rights pursuant to paragraph 5 of the Note was not given, notice of default was not served under paragraph 10, notice of default and trustee's sale were not served as required by paragraph 40 of the Deed of Trust, if said Deed of Trust is applicable. The sale was not properly noticed, the amount of alleged debt was not accurate, the trustee sale was improperly held, the trustee's deed was wrongfully altered to add the legal description of the Plaintiffs residential property, Plaintiff Colette Pelissier is not a borrower on the Note, Plaintiff Colette Pelissier did not sign a separate deed of trust for this note, no breach of the obligation for which the deed of trust is security has occurred, the Straight Note does not apply to the Deed of Trust used, the deed of trust is not secured by the property, defendants refused plaintiff's full tender of principal and interest allegedly owing on said obligation, all in violation of the terms and conditions of the note and any deed of trust, and the law. There was an effective redemption and the power of sale was terminated. Plaintiffs have been wrongfully deprived of title to the property and potentially of its beneficial use

and enjoyment. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

82. Defendants wrongfully and without privilege, caused a Notice of Default to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

83. Defendants wrongfully and without privilege, caused a Notice of Trustee's Sale to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

84. Defendants wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

85.. Defendants wrongfully and without privilege, have published matters or caused matters to be published that they are the current owners of the Subject Property which is untrue and disparaging to Plaintiffs' interest in the Subject Property. This conduct was a material breach of the Note and the implied obligation of good faith and fair dealing.

86. Plaintiffs further allege on information and belief that the Defendants do not produce the original note to prove that they are in fact the party authorized to conduct the foreclosure.

87. The Foreclosing Defendants breached the note and deed of trust by failing to apply the payments made by Plaintiffs through the date the Notice of Default was recorded, April 15, 2019, the result of which led to the Foreclosing Defendants improperly foreclosing on the Subject Property.

88. Defendants and each of them knew the Trustees Sale was illegal, void and improper. In reckless disregard, the Foreclosing Defendants intentionally violated the law and said conduct and acts were not privileged.

89. The terms of the note required payments made by Plaintiffs to be applied properly to the note. A minimum of $128,723.59 was taken and repaid to Genova Capital prior to April 15, 2019.

90. The Defendants breached the note and deed of trust by failing to apply the payments made before April 15, 2019, and therefore Defendants intentional and improperly noticed the incorrect amount due, if any, in the Notice of Default, Demand for Payoff, and eventually wrongfully foreclosing on the Subject Property.

91. As a proximate result of Defendants' breaches, Plaintiffs have suffered special and compensatory damages in an amount no less than the loss of all equity in the property, loss of use, loss of profits, and additional damages within the unlimited jurisdiction of the Superior Court, according to proof.

**EIGHTH CAUSE OF ACTION**

**UNJUST ENRICHMENT AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION AND DOES 1 THROUGH 20, INCLUSIVE**

92. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 91, as though fully set forth, including all Exhibits.

93. By their wrongful acts and omissions, the Defendants have been extremely unjustly enriched at the expense of Plaintiffs, and Plaintiffs have been unjustly deprived of ownership of their home and equity loss of over $8,000,000.00. A minimum of $128,723.59 was taken from Plaintiffs by Genova Capital, Inc. and repaid to Defendants prior to April 15, 2019. This was before the Notice of Default was recorded.

94. By reason of the foregoing, Plaintiffs seek restitution from the Defendants of all equity lost, and an order of this Court requiring Defendants to disgorge all profits, benefits, and other compensation obtained by the Defendants from their wrongful conduct, within the unlimited jurisdiction of the Superior Court, according to proof.

## NINTH CAUSE OF ACTION

**RESCISSION AND RESTITUTION AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, AND DOES 1 THROUGH 20, INCLUSIVE.**

95. Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 94, as though fully set forth, including all Exhibits.

96. This shall serve as NOTICE OF RESCISSION and request that the alleged Buyer and new Trustor return the purchase price, cancel and rescind the Trustees Deed, and return all benefits conference conferred upon the Defendant as result of the Trustee Sale and Deed, transaction, consequential damages, costs and all additional relief available, as provided by law.

97. This Request for Restitution is made pursuant to Civil Code, Section 1689, 1691 and 1692, based on the following grounds:

1. The consent was given by mistake caused by the non-disclosure of material defects by the Defendants, who had knowledge of the defects;
2. The consideration bargain for has failed in whole or in part, through the fault of the Defendants;
3. The consent was induced by fraud and deceit exercised by and with the connivance of the Defendants, their agents and the non-disclosure of material defects by the Defendants;
4. The contract was unlawful because of the non-disclosures, the illegal foreclosure sale;
5. Public interest will be prejudiced by permitting the sale and Trustees Deed to stand;

6.     Other acts or omissions engaged in by the Defendants, according to proof.

98.     Pursuant to Civil Code, Section 1691, the PLAINTIFFS are requesting the return of title to their property, with no lien and rescission of the Trustees Deed, and requires the Defendants to offer to restore everything of value which BUYER received from Defendants, upon the condition that the BUYER restore all consideration to the Plaintiffs. This shall also serve as additional Notice of Rescission pursuant to Civil Code, Section 1691 and the terms are incorporated herein by reference.

99.     Pursuant to Civil Code, Section 1692, the Plaintiffs will also seek relief in this action to recover money paid to the Defendants, including restitution of benefits conferred upon the Defendants and all other parties, as result of the transaction, trustee's sale, consequential damages, costs and all additional relief available, as provided by law.

100.     This Notice requires the return of all consideration, and written confirmation of mutual rescission of the Trustees Sale and Deed, within 20 days from the date of this Notice.

## TENTH CAUSE OF ACTION

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS GENOVA CAPITAL INC., A CALIFORNIA CORPORATION; CALIFORNIA TD SPECIALISTS, A CALIFORNIA CORPORATION, AND DOES 1 THROUGH 20, INCLUSIVE**

101.     Plaintiffs reallege and incorporate herein by this reference, each and every allegation contained in paragraphs 1 through 100, as though fully set forth, including all Exhibits.

102.     Said acts and omissions of Defendants and each of them were intentional, illegal, void, and were intended to cause severe emotional distress and mental suffering.

103.     Defendants knew or should have known that their conduct would cause Plaintiffs severe emotional distress and mental suffering. This includes but is not limited to Defendants

causing a continuing nuisance, loss of quiet use and enjoyment of their property, loss of equity, loss of market value, and causing Plaintiffs to suffer annoyance and discomfort, severe emotional distress and suffering including anxiety, worry, mental and emotional distress, humiliation, grief, embarrassment, anger, disappointment and other general damages all to Plaintiff's general damages in the sum according to proof. Said conduct is outrageous and would cause an average member of the community to immediately react in outrage.

104. As a direct and proximate result of the intentional and reckless conduct of Defendants, Plaintiffs, had the quiet use and enjoyment of their property and living conditions significantly interfered with and interrupted. As a further direct and legal result of the acts and omissions alleged in this Complaint, Plaintiffs have suffered and continues to suffer severe emotional distress and mental suffering, to Plaintiff's general damage in an amount to be proven at trial, according to proof.

105. Plaintiffs seek general damages for severe emotional distress, mental anguish and suffering, including any physical manifestations, within the unlimited jurisdiction of the Superior Court, according to proof.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, within the unlimited jurisdiction of the Superior Court, as follows:

1. For a Declaration of the rights, duties and obligations of the parties, TRO and a permanent injunction ordering Defendants to rescind the Trustee Sale and Deed;

2. For an Order and Judgment setting aside the Trustees Deed;

3. For an Order and Judgment Quieting Title in favor of Plaintiffs and against all Defendants;

4. For Damages for loss of market value and equity of $8,000,000.00, according to proof;

5. For Damages for Slander of Title, according to proof;

6. For Damages for Unjust Enrichment;

7. For Rescission & Restitution;

8. For General Damages for severe mental anguish, distress and suffering, including any resulting physical manifestations of injuries, according to proof;

9. For attorney's fees and costs of suit incurred;

10. For such other and further relief as the Court may deem just and proper.

DATED: 8-22-2019

STOCKER & LANCASTER LLP

By: ______________________

Michael J. Lancaster
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand this case be tried by a Jury.

DATED: 8-22-2019

STOCKER & LANCASTER LLP

By: ______________________

Michael J. Lancaster
Attorneys for Plaintiffs

**VERIFICATION**

STATE OF CALIFORNIA )
ss. )
COUNTY OF VENTURA )

We, the undersigned, declare:

1. We are the Plaintiffs, named Party's.

2. We each have read the foregoing **UNLIMITED CIVIL COMPLAINT** and know its contents.

2. The facts stated in the foregoing document are true of our own knowledge except as to those matters which are stated on information and belief, or obtained from others, and as to those matters, we believe them to be true.

We each declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 22th day of August 2019 in Malibu, California.

BRIGHAM FIELD

COLETTE PELISSIER

# LEGAL DESCRIPTION
# EXHIBIT - A

# EXHIBIT "A"

All that certain real property situated in the County of Ventura, State of California, described as follows:

Parcel 1:

Lot 6 of Tract No. 4483, in the County of Ventura, State of California, as per map recorded in Book 146, Pages 19 through 22 inclusive of Maps, in the Office of the County Recorder of said County.

EXCEPT one-eighth of minerals, oil, petroleum, asphaltum, gas, coal and other hydrocarbon substances, as reserved by Marblehead Land Company, in deed recorded November 17, 1940, in Book 628, Page 87 of Official Records.

Parcel 2:

Non-exclusive easements appurtenant to Parcel 1, above, on and over the "Common Area", as defined in the Second Amended and Completely Restated Declaration of Covenants, Conditions and Restrictions and Easements for MariSol, recorded on February 14, 2011 as Instrument No. 2011-24632 of Official Records, for access, use, occupancy, enjoyment, ingress and egress of the amenities located thereon.

Assessor's Parcel No.: 700-0-260-065

THE RYAN FIRM
A Professional Corporation

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within action. I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On June 2, 2020, I served the within document(s) described as: **SECURED CREDITOR GENOVA CAPITAL, INC.'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO THE MOTION TO EMPLOY REAL ESTATE AGENT** on the interested parties in this action:

☒ by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| D. Edward Hays | Tel: *<br>Fax: *<br>Email: ehays@marshackshay.com | Attorney for debtor |
| United States Trustee (LA) | Tel: *<br>Fax: *<br>Email: ustpregion16.la.ecf@usdoj.gov | |
| Brian D. Fottopaldi | Tel: *<br>Fax: *<br>Email: brian.fittipaldi@usdoj.gov | |

☒ **CM/ECF** (U.S. Bankruptcy Court, Central District of California, Electronic Case Filing Procedures § 3-8)—Whenever a pleading, document or court order is filed electronically in accordance with ECF Procedures, the system will automatically generate the Notification of Electronic Filing, which will be emailed to all Registered Participants who have consented to electronic service and have appeared in the case or adversary proceeding in which the document is filed. This transmission of the Notification of Electronic Filing to a Registered Participant shall constitute effective service in accordance with L.B.R. 9036-1. All parties who are not registered, if any, were served in the manner set forth above.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 2, 2020, at Irvine, California.

/S/ Nasya Chou
NASYA CHOU

THE RYAN FIRM
A Professional Corporation

**PROOF OF SERVICE**

I am over the age of eighteen years and not a party to the within action. I am employed by The Ryan Firm, A Professional Corporation, whose business address is: 2603 Main St, Suite 1225, Irvine, CA 92614.

On June 3, 2020, I served the within document(s) described as: **NOTICE OF OPPOSITION AND REQUEST FOR A HEARING** on the interested parties in this action:

☒ by transmitting via electronic mail the document(s) listed above to the email addresses provided by counsel.

| Name & Address | Telephone / Fax / E-mail | Role |
|---|---|---|
| D. Edward Hays | Tel: *<br>Fax: *<br>Email: ehays@marshackshay.com | Attorney for debtor |
| United States Trustee (LA) | Tel: *<br>Fax: *<br>Email: ustpregion16.la.ecf@usdoj.gov | |
| Brian D. Fottopaldi | Tel: *<br>Fax: *<br>Email: brian.fittipaldi@usdoj.gov | |

☒ **CM/ECF** (U.S. Bankruptcy Court, Central District of California, Electronic Case Filing Procedures § 3-8)—Whenever a pleading, document or court order is filed electronically in accordance with ECF Procedures, the system will automatically generate the Notification of Electronic Filing, which will be emailed to all Registered Participants who have consented to electronic service and have appeared in the case or adversary proceeding in which the document is filed. This transmission of the Notification of Electronic Filing to a Registered Participant shall constitute effective service in accordance with L.B.R. 9036-1. All parties who are not registered, if any, were served in the manner set forth above.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 3, 2020, at Irvine, California.

/s/ Heather Morris
HEATHER MORRIS